Index No. 22-cv-1445 (LAK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA RODNEY,

Plaintiff,

-against-

CITY OF NEW YORK, et al.,

Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' PARTIAL MOTION TO DISMISS
THE AMENDED COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(B)(6)**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
   *Attorney for Defendants City of New York, Sgt.*
   *Hernandez, and Officer Clement*
   *100 Church Street*
   *New York, N.Y.  10007*

*Of Counsel:  John Schemitsch*
*Tel:  (212) 356-3539*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ........................................................................................ 1

STANDARD OF REVIEW ....................................................................................... 4

ARGUMENT ............................................................................................................. 5

      POINT I ............................................................................................................. 5

      ANY CLAIM FOR FALSE ARREST FAILS AS
      DEFENDANTS HAD PROBABLE CAUSE TO
      ARREST PLAINTIFF ....................................................................................... 5

          A. Plaintiff's False Arrest Claim Fails As
          Officers Had Probable Cause To Arrest Plaintiff
          For Trespass, Criminal Trespass In The Third
          Degree, And Obstruction Of Government
          Administration ......................................................................................... 5

          B. Defendants Hernandez And Clement Are
          Entitled To Qualified Immunity............................................................10

      POINT II ........................................................................................................... 11

      PLAINTIFF'S DENIAL OF RIGHT TO A FAIR
      TRIAL CLAIM FAILS AS A MATTER OF LAW .................................12

      POINT III.......................................................................................................... 14

      PLAINTIFF'S FIRST AMENDMENT
      RETALIATION CLAIM FAILS AS A MATTER
      OF LAW ............................................................................................................15

          A. Plaintiff's First Amendment Retaliation
          Claim Should Be Dismissed As There Was
          Probable Cause For Plaintiff's Arrest....................................................15

**Page**

      B. Defendants Hernandez And Clement Are
Entitled To Qualified Immunity............................................................16

POINT IV..............................................................................................17

    PLAINTIFF'S CLAIM UNDER NEW YORK
CIVIL RIGHTS LAW SECTION 79-P FAILS AS
A MATTER OF LAW ............................................................................17

POINT V ...............................................................................................18

    PLAINTIFF'S MUNICIPAL LIABILITY CLAIMS
AGAINST DEFENDANT CITY OF NEW YORK
SHOULD BE DISMISSED .....................................................................18

      A. Plaintiff's Municipal Liability Claim of an
Illegal Policy Fails as the Policy Provided
Reasonable Restrictions .......................................................................15

      B. Plaintiff's Municipal Liability Claim of
Improper Training Is Insufficiently Pled ............................................21

CONCLUSION.......................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Adekoya v. Fed. Bureau of Prisons, 375 Fed. Appx. 119 (2d Cir. 2010).....................................13

Amron v. Moran Stanley Inv. Advisors Inc., 464 F.3d 338 (2d Cir. 2006)....................................4

Ashley v. City of N.Y., No. 14-CV-5559 (NGG), 2017 U.S. Dist. LEXIS 59201
(E.D.N.Y. Apr. 17, 2017)................................................................................................. 13-14

Atwater v. City of Lago Vista, 532 U.S. 318 (2001) ........................................................................6

Baez v. Jetblue Airways Corp., No. 09-CV-596, 2009 U.S. Dist. LEXIS 67020,
2009 WL 2447990 (E.D.N.Y. Aug. 3, 2009)..........................................................................12

Baraschi v. Silverwear, Inc., 01-cv-11263, 2002 U.S. Dist. LEXIS 24515
(S.D.N.Y. Dec. 18, 2002)...........................................................................................................8

Bertuglia v. Schaffler, 672 F. App'x 96 (2d Cir. 2016)..................................................................13

Blue v. Koren 72 F.3d 1075 (2d Cir. 1995) ...................................................................................16

Bradway v. Gonzales, 26 F.3d 313 (2d Cir. 1994) ........................................................................10

Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411 (S.D.N.Y. 2002)....................................21

Brown v. City of New York, No. 14-CV-5372 (BMC), 2014 U.S. Dist. LEXIS
181736 (E.D.N.Y. Dec. 23, 2014) ..........................................................................................14

Buie v. City of New York, 2015 U.S. Dist. LEXIS 147642, 2015 WL 6620230
(E.D.N.Y. Oct. 30, 2015)..........................................................................................................14

Caldarola v. Calabrese, 298 F.3d 156 (2d Cir. 2002) ...................................................................11

Caravalho v. City of N.Y., 732 Fed. Appx. 18 (2d Cir. Apr. 25, 2018) .........................................15

City of Canton v. Harris, 489 U.S. 378 (1989) ....................................................................... 18-19

City of St. Louis v. Praprotnik, 485 U.S. 112 (1985) ....................................................................18

Codrington v. City of New York, No. 12 CV 01650 (SLT) (SMG), 2015 U.S.
Dist. LEXIS 24905 (E.D.N.Y. Feb. 27, 2015)..........................................................................5

Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998)..................................................................16

Conopco Inc. v. Roll International, 231 F.3d 82 (2d Cir. 2000).......................................................4

**<u>Cases</u>**                                                                                                                      **<u>Pages</u>**

<u>Cornelius v. NAACP Legal Def. & Ed. Fund, Inc.</u>, 473 U.S. 788 (1985).....................................19

<u>Curley v. Village</u> 268 F.3d 65 (2d 2001).......................................................................................15

<u>Daniels v. Williams</u>, 474 U.S. 327 (1986)...................................................................................13

<u>Davis v. City of New York</u>, 15 Civ. 5900 (LGS), 2017 U.S. Dist. LEXIS 46717
    (Mar. 28, 2017) ...........................................................................................................10

<u>Dunkelberger v. Dunkelberger</u>, No. 14-CV-3877, 2015 U.S. Dist. LEXIS 133814,
    2015 WL 5730605 (S.D.N.Y. Sept. 30, 2015).............................................................. 4-5

<u>Dwares v. City of New York</u>, 985 F.2d 94 (2d Cir. 1993) .........................................................21

<u>Escalera v. Lunn</u>, 361 F.3d 737 (2d Cir. 2004)...........................................................................11

<u>Fabrikant v. French</u>, 691 F.3d 193 (2d Cir. 2012) .....................................................................15

<u>Figueroa v. Mazza</u>, 825 F.3d 89 (2d Cir. 2016)...........................................................................6

<u>Food Employees v. Logan Valley Plaza, Inc.</u>, 391 U.S. 308 (1968) .............................................7

<u>Grandon v. Merrill Lynch & Co.</u>, 147 F.3d 184 (2d Cir. 1998) ...................................................4

<u>Garcia v. Doe</u>, 779 F.3d 84 (2d Cir. 2015) .................................................................................10

<u>Garnett v. Undercover Officer C0039</u>, 838 F.3d 265, 279 (2d Cir. 2016) ..................................13

<u>Gericke v. Begin</u>, 753 F.3d 1 (1st Cir. 2014)..............................................................................16

<u>Gilk v. Cunniffe</u>, 655 F.3d 78 (1st Cir. 2011)..............................................................................19

<u>Hayden v. City of New York</u>, 2019 U.S. Dist. LEXIS 234778 (S.D.N.Y. Mar. 31,
    2019) ...........................................................................................................................12

<u>Hoyos v. City of N.Y.</u>, 999 F. Supp. 2d 375 (E.D.N.Y. 2013).....................................................14

<u>Hunter v. Bryant</u>, 502 U.S. 224 (1991)................................................................................ 10-11

<u>International Society for Krishna Consciousness, Inc. v. Lee</u>, 505 U.S. 672 (1992) ............. 19-20

<u>Jaegly v. Couch</u>, 439 F.3d 149 (2d Cir. 2006)..............................................................................6

<u>Jenkins v. City of New York</u>, 478 F.3d 76 (2d Cir. 2007).........................................................19

<u>Jocks v. Tavernier</u>, 316 F.3d 128 (2d Cir. 2003) .......................................................................13

**Cases**                                                                                                          **Pages**

Johnson v. City of New York, No. 05-cv-7519, 2008 WL 4450270 (S.D.N.Y. Sept. 29, 2008) ........................................................................................................9

Jovanovic v. City of N.Y., 2010 U.S. Dist. LEXIS 144388 (S.D.N.Y. Sep. 28, 2010) ......................................................................................................................14

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993)........................................................................................................22

Lehal v. Cent. Falls. Dept. Facility Corp., 2016 U.S. Dist. 177587 (S.D.N.Y.)............................19

Lennon v. Miller, 66 F.3d 416 (2d Cir. 1995) ...............................................................................9

Malley v. Briggs, 475 U.S. 335 (1986) ......................................................................................11

Marcavage v. City of New York, No. 05-CV-4949 (RJS), 2010 U.S. Dist. LEXIS 107724 (S.D.N.Y. Sept. 29, 2010), aff'd, 689 F.3d 98, 110 (2d Cir. 2012) ............................9

Martinez v. California, 444 U.S. 277 (1980) ...............................................................................13

Matthews v. City of New York, 2016 U.S. Dist. LEXIS 136907 (S.D.N.Y.) ...............................19

McGhie v. Main, 2011 U.S. Dist. LEXIS 117606 (E.D.N.Y. 2011) ............................................13

Mocek v. City of Albuquerque, 3 F. Supp. 3d 1002 (N.M.D.C. Feb. 28, 2014) ................... 20-21

Monell v. Dep't of Social Services, 436 U.S. 658 (1978) .......................................................18, 21

Nieves v. Bartlett, 139 S. Ct. 1715 (May 28, 2019) ....................................................................15

Nnodimele v. Derienzo, No. 13-CV-3461 (ARR)(RLM), 2016 U.S. Dist. LEXIS 83357 (E.D.N.Y. June 27, 2016) ...........................................................................................14

Paycom Billing Servs. v. Mastercard Intl, Inc., 467 F.3d 283 (2d Cir. 2006) ...............................4

Pearson v. Callahan, 555 U.S. 223 (2009) ............................................................................ 10-11

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)...................................................................18

People v. Brown, 925 NY2d 374 (1969) ............................................................................... 6-7, 21

People v. Jackson, 46 Misc. 3d 142 (2015) ...............................................................................7, 16

People v. Pennisi, 2018 N.Y. Misc. LEXIS 5585 (2018) ...............................................................7

People v. Reape, 22 Misc. 3d 615 (2008) .............................................................................. 7-8, 20

**Cases**                                                                                              **Pages**

Powers v. Coe, 728 F.2d 97 (2d Cir. 1984) .................................................................13

Randolph v. Metro. Transp. Auth., No. 17-CV-1433 (DLC), 2018 U.S. Dist.
    LEXIS 98603 (S.D.N.Y. June 12, 2018) .........................................................13

Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997) .............................. 12-13

Saimels v. Air Transp. Local 504, 992 F.2d 12 (2d Cir. 1993) ...................................4

Sazerac Co., Inc. v. Falk, 861 F.Supp. 253 (S.D.N.Y. 1994) ......................................8

Smith v. City of Cumming, 212 F.3d 1332 (11th Cir. 2000)........................................19

Sorlucco v. New York City Police Dep't, 971 F.2d 864 (2d Cir. 1992)........................19

Stewart v. Riviana Foods Inc., No. 16-CV-6157, 2017 U.S. Dist. LEXIS 146665,
    2017 WL 4045952 (S.D.N.Y. Sept. 11, 2017)................................................ 4-5

Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129 (2d Cir. 2010)...............................5

Turley v. New York City Police Dep't, 93-cv-8748,  1996 U.S. Dist. LEXIS 2582
    (S.D.N.Y. Mar. 5, 1996) .................................................................................20

Turner v. Driver, 848 F.3d 678 (5th Cir. 2017) ..........................................................19

Ward v. Rock Against Racism, 491 U.S. 781 (1989) .................................................20

Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996)...............................................................5

Wiles v. City of New York, 2016 U.S. Dist. LEXIS 148024 (S.D.N.Y. Oct. 25,
    2016) ........................................................................................................ 16-17

Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000) ..........................................................13

Zellner v. Summerlin, 494 F.3d 344 (2d Cir. 2007) .........................................5-6, 10-11

**Statutes**

Fed. R. Civ. P. 12(b)(6)..............................................................................1, 4, 10, 22

New York Civil Rights Law § 79-P ............................................................ 1, 17-18, 22

New York Penal Law 140.00(5) ...................................................................................6

New York Penal Law 140.05 .................................................................................. 5-6

New York Penal Law 140.10(a) ............................................................................. 5-6

**Cases**                                                              **Pages**

New York Penal Law 195.05 ................................................................................5, 9

42 U.S.C. § 1983 ........................................................................... 1, 12-13, 18

## PRELIMINARY STATEMENT

On December 2, 2020, plaintiff refused to leave the stationhouse of the 62nd NYPD Precinct, after repeatedly being asked to do so and was accordingly placed under arrest. Plaintiff brings this action against defendants City of New York, Sgt. Hernandez, and Officer Clement pursuant to 42 U.S.C. § 1983. Plaintiff alleges she was present at the precinct in order to obtain a copy of a police report for a missing glucometer, which officers were not able to give to her. After plaintiff claimed that she was video recording them on her phone, while she admittedly was not video recording, she was asked to leave and refused to do so, giving the officers probable cause for her arrest. For these reasons and the reasons set forth below, defendants respectfully seek to dismiss plaintiff's claims under Section 1983 of false arrest, denial of right to a fair trial, First Amendment retaliation, municipal liability, claims under New York Civil Rights Law § 79-P, and ensuing state law claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## STATEMENT OF FACTS

On November 30, 2020, plaintiff went to the stationhouse of the 62nd NYPD Precinct to file a police report for a missing glucometer. See Amended Complaint, annexed to the September 7, 2022 Declaration of John Schemitsch in Support of Defendants' Partial Motion to Dismiss the Complaint (hereinafter "Schemitsch Decl.") as Exhibit A, at ¶ 22-24, 27-30. Plaintiff alleges she returned to the stationhouse on December 2, 2020 in order to obtain a copy of the police report. Exhibit A at ¶¶ 21, 31-32.

---

[1] Defendants do not seek to dismiss plaintiff's Section 1983 excessive force and corresponding state law assault/battery claims at this time.

While inside the stationhouse, plaintiff spoke to three officers, including two female Jane Doe officers, and Sgt. Hernandez, who were not able to give plaintiff a copy of the police report. Exhibit A at ¶¶ 33-38.  At some point plaintiff was present in the vestibule inside the stationhouse talking loudly with multiple police officers, standing next to a sign which read in part "MEMBERS OF THE PUBLIC ARE PROHIBITED FROM AUDIO/VIDEO RECORDING OR PHOTOGRAPHY INSIDE THE PRECINCT". Exhibit A at ¶ 40; see generally, Body Worn Camera Footage, annexed to Schemitsch Decl. as Exhibit B; Still Images from Body Worn Camera Footage, annexed to Schemitsch Decl. as Exhibit C.  During the course of the video, plaintiff was standing behind a door to the lobby of the precinct, and, as shown on the video, multiple individuals, who appears to be uniformed officers and plain-clothed officers/civilians are unable to easily or fully open the door to enter and exit due to plaintiff's physical location behind the door entering into the precinct. See generally, Exhibit B.

Multiple officers began recording plaintiff with their body worn cameras. Exhibit A at ¶¶ 39, 47.  Plaintiff was informed by an officer wearing plainclothes that body worn cameras were on and filming. Exhibit A at ¶ 47; Exhibit B at 1:00-1:12.  During this time, plaintiff told officers, while holding up her phone, that she was filming them, saying "…and this is my camera." Exhibit A at ¶ 48, n. 2; Exhibit B at 1:05-1:12.  A uniformed female officer points to the sign on the wall behind plaintiff,  and says, "do you see right there? Do you see that behind you? You can't record." Exhibit B at 1:12-1:16.  Plaintiff repeatedly refuses to stop recording. Id.  However, plaintiff alleges in her complaint at n. 2 that she was not actually video recording while inside the precinct, but acknowledges that she informed the officers she was and gave the appearance that she was – admitting that she was pretending to record and in no way actually attempting to record.

2

The officer whose body worn camera is operating turns to plaintiff and asks "Ma'am, we're asking you to leave, you're not leaving?" Exhibit B at 1:17-1:22.  Plaintiff shakes her no, and says "no" in response. Id.  The officer also reiterates that individuals are not allowed to record, to which plaintiff also shakes her head no in response. Exhibit B at 1:21-1:23.  The officer then instructs plaintiff to turn around and she does not comply. Exhibit B at 1:23-2:05. Plaintiff alleges that officers then "handcuffed [p]laintiff's wrists and shackle [p]laintiff's ankles, pushed [p]laintiff to the ground, and began twisting [p]laintiff's arms, causing plaintiff to cry out in pain." Exhibit A at  ¶ 53.  As documented in the body worn camera footage, plaintiff begins exclaiming loudly prior to being touched by officers, and does not comply with requests for her to cooperate. Exhibit B at 1:23-2:05.  At no point during the body worn camera footage are plaintiff's ankles shackled. See generally Exhibit B.

Plaintiff alleges that as a result of the use of force she received injuries including an avulsion fracture of her left arm, and while her arrest was processed, she was taken to the hospital for treatment. Exhibit A at  ¶¶ 56, 58, 62.  Plaintiff returned to the 62nd Precinct where she was detained until she was taken to Kings County Central Booking. Exhibit A at  ¶¶ 63. Plaintiff alleges that during this time, Officer Clemente swore out a criminal complaint against her and forwarded it to the Kings County District Attorney's Office, alleging that plaintiff did "resist lawful arrest by extending and locking [her] arms and refusing to turn onto [her] stomach while [defendant Clemente] attempted to place [plaintiff] in handcuffs." Exhibit A at  ¶¶ 63-64, 66. As documented in the body worn camera footage, plaintiff did not immediately comply with requests for her to turn onto her stomach while officers are attempting to handcuff her. Exhibit B at 1:23-2:05.

3

At plaintiff's arraignment, she agreed to an adjournment in contemplation of dismissal and her charges were eventually dismissed. Exhibit A at ¶ 67.

## STANDARD OF REVIEW

Defendants move to partially dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court is required to accept the material facts alleged in the amended complaint as true and to construe all reasonable inferences in the nonmoving party's favor. See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).

Conclusory statements cannot "substitute for minimally sufficient factual allegations." Paycom Billing Servs. v. Mastercard Intl, Inc., 467 F.3d 283, 289 (2d Cir. 2006) (internal quotations omitted); see Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 344 (2d Cir. 2006) (noting that "bald assertions and conclusions of law will not suffice" to defeat a motion to dismiss) (internal quotations omitted). A motion under Rule 12(b)(6) should be granted if an affirmative defense, or other reason barring relief, is apparent from the face of the complaint. Conopco, Inc. v. Roll International, 231 F.3d 82, 86-87 (2d Cir. 2000).

In deciding a Rule 12(b)(6) motion, a court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken." Saimels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993). "Generally, a court may incorporate documents referenced where (1) [the] plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, and (3) the document's authenticity or accuracy is undisputed." Stewart v. Riviana Foods Inc., No. 16-CV-6157, 2017 U.S. Dist. LEXIS 146665,

2017 WL 4045952, at *6 (S.D.N.Y. Sept. 11, 2017) (emphasis omitted) (collecting cases); see also Dunkelberger v. Dunkelberger, No. 14-CV-3877, 2015 U.S. Dist. LEXIS 133814, 2015 WL 5730605, at *5 (S.D.N.Y. Sept. 30, 2015) ("To be incorporated by reference, the complaint must make a clear, definite, and substantial reference to the documents, and to be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint.") (citations omitted).

## ARGUMENT

### POINT I

### ANY CLAIM FOR FALSE ARREST FAILS AS DEFENDANTS HAD PROBABLE CAUSE TO ARREST PLAINTIFF

**A.     Plaintiff's False Arrest Claim Fails as Officers Had Probable Cause to Arrest Plaintiff for Trespass, Criminal Trespass in the Third Degree, and Obstruction of Government Administration**

Plaintiff's claim for false arrest[2] is defeated as there was probable cause to arrest plaintiff for violation of New York Penal Law 140.05 (trespass), New York Penal Law 140.10(a) (criminal trespass in the third degree), and New York Penal Law 195.05 (obstruction of governmental administration).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotations and citations omitted).  "Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are

_____

[2] Plaintiff's state law claim for false arrest similarly fails under the same analysis below, as under both New York and federal law, "the existence of probable cause is an absolute defense to a false arrest claim." Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 139 (2d Cir. 2010) (citations omitted).

sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007).  This inquiry is rooted in "whether the facts known by the arresting officer at the time objectively provided probable cause to arrest." Codrington v. City of New York, No. 12 CV 01650 (SLT) (SMG), 2015 U.S. Dist. LEXIS 24905, at *12 (E.D.N.Y. Feb. 27, 2015) (quoting Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006)).  When determining whether actual probable cause existed, we "look to the totality of the circumstances" as to what the officers knew at the time of the arrest; we "must consider those facts available to the officer at the time of the arrest and immediately before it." Figueroa v. Mazza, 825 F.3d 89, 115 (2d Cir. 2016) (internal citation omitted).  Furthermore, officers may effectuate a custodial arrest for even a violation without violating someone's Fourth Amendment rights. Atwater v. City of Lago Vista, 532 U.S. 318 (2001).

    First, officers had probable cause to arrest plaintiff for trespass or criminal trespass in the third degree.  A person is guilty of trespass under New York Penal Law 140.05, when "he knowingly enters or remains unlawfully in or upon premises."  Pursuant to New York Penal Law 140.10(a), a person is guilty of criminal trespass in the third degree "when he knowingly enters or remains unlawfully in a building or upon real property [] which is fenced or otherwise enclosed in a manner designed to exclude intruders[.]"  Pursuant to New York Penal Law 140.00(5) "a person 'enters or remains unlawfully' in or upon premises when he is not licensed or privileged to do so."

    "A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license or privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of the

premises or other authorized person." People v. Brown, 925 NY2d 374 (1969) (holding that a lawful order to not remain vitiated the license or privilege if the person to whom the order is communicated defies it).   New York State Courts have held that trespass can occur in a municipal or state property generally open to the public, specifically a precinct. See People v. Reape, 22 Misc. 3d 615, 618 (2008); see also People v. Jackson, 46 Misc. 3d 142, 142 (2015) (upholding a criminal conviction for trespass when defendant refused to leave a precinct after being asked to do so while he was being disruptive); People v. Pennisi, 2018 N.Y. Misc. LEXIS 5585 (2018) (dismissing a count of criminal trespass in the third degree where there is no evidence of an officer ordering a defendant to leave).   "[T]he license to enter and use the space 'may be regulated so as to prevent interference with the ordinary use of the property by members of the public with an equal right of access to it.   The defendant does not have an absolute right to use all parts of a public building *or its immediate environs* for his unlimited expressive purposes." Id. (emphasis in original) (quoting Food Employees v. Logan Valley Plaza, Inc., 391 U.S. 308, 320-21 (1968)).

Plaintiff concedes in the Amended Complaint as well as the body worn camera footage documenting plaintiff's presence inside the building that she was knowingly present on a premises, namely the police precinct stationhouse.   Likewise, there is no question that, as in Reape, "a New York Police Department officer is clearly the custodian of such premises and its environs." Reape, 22 Misc. 3d at 619 (an officer present "is in the best position to know whether the defendant acted in a way that required him to be asked to leave the premises").   The body worn camera footage incorporated directly into the Amended Complaint shows plaintiff standing immediately behind an entryway door to the precinct and shows multiple uniformed officers and civilians unable to easily step through the door, and unable to fully open it due to plaintiff's

physical location, a fact which plaintiff improperly attempts to circumvent by baldly alleging that "[p]laintiff was not blocking any access to the station." See generally, Exhibit B; Exhibit A at ¶¶ 41-43.  Simply put, the video incorporated into the Amended Complaint directly disproves this allegation by plaintiff, and the Court can resolve this dispute by reference to the video. See Baraschi v. Silverwear, Inc., 01-cv-11263, 2002 U.S. Dist. LEXIS 24515, at *6-7 (S.D.N.Y. Dec. 18, 2002) ("To the extent that a plaintiff's own exhibit [attached to a complaint] contradicts the numbered allegations in her complaint, the language of the exhibit controls.") (citing Sazerac Co., Inc. v. Falk, 861 F.Supp. 253, 257 (S.D.N.Y. 1994) ("If the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint.")  Similar to Reape, plaintiff's continued presence in the vestibule would block entry and exit to other areas of the stationhouse, and would interfere with the ordinary use of the property by members the Police Department and other members of the public.  Accordingly as documented in the body worn camera footage, while plaintiff was in the vestibule blocking the entrance and exit to the stationhouse, plaintiff was given a lawful order when she was asked to leave the premises.[3]  Plaintiff's response, both orally, by saying "no" and physically, by shaking her head "no," confirms her refusal to comply with this lawful order.  As such, officers had probable cause to arrest plaintiff for trespass or criminal trespass in the third degree.

---

[3] Plaintiff again attempts to circumvent this argument in her Amended Complaint by alleging that "[p]laintiff does not – whether in fact or in the abstract – block, interfere with, or otherwise obstruct any lawful government activity at any point." Exhibit A at ¶ 45.  As discussed above, this unsupported factual allegation is directly contradicted by the body worn camera footage in the Amended Complaint, which shows plaintiff standing in the way of the door to the stationhouse and preventing it from fully opening – limiting officers and members of the public from easily entering and exiting areas of the building. See generally Exhibit B.

Finally, officers had probable cause to arrest plaintiff for a violation of obstruction of governmental administration.   Pursuant to New York Penal Law 195.05, it is a misdemeanor crime when a person "intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference[.]"   As plaintiff concedes in the Amended Complaint, prior to her arrest, she was present in the vestibule entranceway of the stationhouse.   As documented in the body worn camera footage appended to the Amended Complaint, plaintiff's presence and conversation with officers was blocking other officers and potential members of the public from being able to enter or exit other areas of the stationhouse.   "An officer has probable cause to arrest for obstructing governmental  administration where a person refuses to comply with an order from a police officer." Marcavage v. City of New York, No. 05-CV-4949 (RJS), 2010 U.S. Dist. LEXIS 107724, at **29-30 (S.D.N.Y. Sept. 29, 2010), aff'd, 689 F.3d 98, 110 (2d Cir. 2012) (quoting Johnson v. City of New York, No. 05-cv-7519, 2008 WL 4450270 (S.D.N.Y. Sept. 29, 2008), and citing Lennon v. Miller, 66 F.3d 416 (2d Cir. 1995)).   Given plaintiff's continued arguing with the officers, and her location behind the door to the precinct blocking the entry and exit to other areas, as discussed supra, officers gave plaintiff a lawful order to leave the premises. Plaintiff's refusal to comply with this clear and direct order to leave the premises, interfered with officers performing their official functions.   Accordingly the officers had probable cause to effectuate plaintiff's arrest for obstruction of governmental administration.

**B.      Defendants Hernandez and Clement Are Entitled to Qualified Immunity**

Even if the Court were to find that defendants  did not have probable cause for the arrest of plaintiff, defendants Hernandez and Clement are nevertheless entitled to qualified immunity with respect to this claim.[4]

Although "motions to dismiss a plaintiff's complaint under Rule 12(b)(6) on the basis of an affirmative defense will generally face a difficult road, [...] that does not mean that qualified immunity can never be established at the pleading state." Garcia v. Doe, 779 F.3d 84, 97 (2d Cir. 2015).   The Supreme Court has "repeatedly stressed the importance of resolving [qualified] immunity questions at the earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).  The "doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted).   Qualified immunity is a complete defense to § 1983 claims for false arrest. See Davis v. City of New York, 15 Civ. 5900 (LGS), 2017 U.S. Dist. LEXIS 46717, at *9-11 (Mar. 28, 2017).   "Where there is no dispute as to the relevant facts, the applicability of qualified immunity is a question of law for the court to decide." Id. at *9.  A police officer is entitled to qualified immunity from a claim for

---

[4] Plaintiff appears to concede that defendants Hernandez and Clement would be entitled to qualified immunity in her letter to the Court, dated July 8, 2022, noting "if the City concedes that there was a no recording policy, and the individual officers were trained on it, Plaintiff even agrees the individual officers likely have qualified immunity for her arrest itself (though not their use of excessive force)." ECF No. 24.  Defendants do not dispute that the existence of this NYPD policy. See ECF No. 26.

arrest without probable cause if: (1) it was objectively reasonable for the officer to believe that probable cause existed; or (2) officers of reasonable competence could disagree on whether there was probable cause. <u>See</u> <u>Zellner v. Summerlin</u>, 494 F.3d 344, 369 (2d Cir. 2007).

"[I]n situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity." <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 162 (2d Cir. 2002). Qualified immunity is applicable regardless of "whether a government actor's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." <u>Pearson</u>, 555 U.S. at 231 (citations omitted). The Supreme Court has noted time and again that "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Hunter</u>, 502 U.S. at 229 (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).

In the context of a false arrest claim, an officer making an arrest without probable cause is nonetheless entitled to qualified immunity if he can establish that there was "arguable probable cause" for the arrest, found by the Second Circuit to exist "'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" <u>Escalera v. Lunn</u>, 361 F.3d 737, 743 (2d Cir. 2004).

Here, as set forth in Point I(A), <u>supra</u>, Sgt. Hernandez and Officer Clement had probable cause to arrest plaintiff. At a minimum, however, it was objectively reasonable for the individually named defendants to believe that there was probable cause to arrest plaintiff, and/or reasonable officers could disagree, based upon the facts alleged in the Complaint. As stated above, given plaintiff's presence blocking the doorway and refusing to leave the premises when given an order to do so, it was objectively reasonable for defendants to believe there was

11

probable cause to arrest plaintiff for obstruction of governmental administration, trespass, and criminal trespass in the third degree.  Further, while plaintiff alleges the NYPD was engaging in an illegal policy prohibiting the public from filming inside of a precinct, it was objectively reasonable for defendants to believe that plaintiff was not permitted to film inside of a precinct. See e.g. Hayden v. City of New York, 2019 U.S. Dist. LEXIS 234778, at *13-14 (S.D.N.Y. Mar. 31, 2019) (finding defendants were entitled to qualified immunity where plaintiff was obstructing a sidewalk filming officers and plaintiff refused to comply with an order to "move back").  Notably, plaintiff was informed that she was not permitted to record, and indeed was standing in front of a sign in the stationhouse, which referenced that the public could not film in that location.  As such defendants had probable cause to arrest plaintiff, and in the alternative, reasonable officers could disagree as to the existence of probable cause.  Thus defendants Hernandez and Clement are entitled to qualified immunity on plaintiff's claim for false arrest.

## POINT II

## PLAINTIFF'S DENIAL OF RIGHT TO A FAIR TRIAL CLAIM FAILS AS A MATTER OF LAW

Plaintiff's denial of fair trial claim fails as plaintiff does not meet the prima facie elements of the claim.[5]  A denial of right to fair trial claim (*i.e.* fabrication of evidence) comes about when "a police officer creates false information likely to influence a jury's decision and [then] forwards that information to prosecutors, he violates the accused's constitutional right to a

---

[5] Plaintiff's state law claim for fabrication of evidence fails under the same analysis below, as under both New York and federal law, it contains the same elements.  See Baez v. Jetblue Airways Corp., No. 09-CV-596, 2009 U.S. Dist. LEXIS 67020, 2009 WL 2447990, at *8 & n.19 (E.D.N.Y. Aug. 3, 2009) (noting that a fabrication of evidence claim does not appear viable under New York State law even though a claim based on the same facts could be viable under federal law if properly alleged).

fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." Ricciuti v. New York City Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997); accord Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003); see also Zahrey v. Coffey, 221 F.3d 342, 355-56 (2d Cir. 2000) (recognizing long-established right against use of false evidence by governmental officials to obtain a conviction). Indeed, to prevail on a fabrication of evidence claim, a plaintiff must show that "an (1) investigating official (2) fabricates information (3) of a material nature that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." Garnett v. Undercover Officer C0039, 838 F.3d 265, 279 (2d Cir. 2016). Additionally, it is the Plaintiff's burden to show that he "was deprived of a fair trial [and to do so] he has to show that such deprivation was not 'too remote a consequence' of the improper [alleged act]." Powers v. Coe, 728 F.2d 97, 105-106 (2d Cir. 1984) (quoting Martinez v. California, 444 U.S. 277, 279 (1980)).

       With regard to fabricated evidence, paperwork errors, or a mere mistake, or mistakes, by a police officer in making a written record is not a basis for finding a constitutional violation. McGhie v. Main, 2011 U.S. Dist. LEXIS 117606, at *5-6 (E.D.N.Y. 2011) (citing Adekoya v. Fed. Bureau of Prisons, 375 Fed. Appx. 119, 121 (2d Cir. 2010)); Daniels v. Williams, 474 U.S. 327, 329-30 (1986)). Similarly, an officer's opinions, conclusions or qualitative assessments are also not a basis for finding a constitutional violation. Bertuglia v. Schaffler, 672 F. App'x 96, 101 (2d Cir. 2016); Randolph v. Metro. Transp. Auth., No. 17cv1433 (DLC), 2018 U.S. Dist. LEXIS 98603, at *20 (S.D.N.Y. June 12, 2018).  To be actionable for the purpose of a denial of fair trial claim, the allegedly fabricated evidence must be "material." Ashley v. City of N.Y., No. 14-CV-5559 (NGG), 2017 U.S. Dist. LEXIS 59201,

at *22 (E.D.N.Y. Apr. 17, 2017); Buie v. City of New York, 2015 U.S. Dist. LEXIS 147642, 2015 WL 6620230, at *9-11 (E.D.N.Y. Oct. 30, 2015).  As a practical matter, most courts appear to use the terms "material" and "likely to influence a jury's decision" to define each other, *i.e.* that evidence is material if it is likely to influence a jury's verdict, and evidence is likely to influence a jury's verdict if it is material.  See e.g. Nnodimele v. Derienzo, No. 13-CV-3461 (ARR)(RLM), 2016 U.S. Dist. LEXIS 83357, at *19 (E.D.N.Y. June 27, 2016); Hoyos v. City of N.Y., 999 F. Supp. 2d 375, 393 (E.D.N.Y. 2013); Jovanovic v. City of N.Y., 2010 U.S. Dist. LEXIS 144388, at *23 (S.D.N.Y. Sep. 28, 2010).

        Plaintiff's Amended Complaint contains only bare assertions of false statements, at most alleging that defendant Clement swore out a criminal complaint against plaintiff "which contained false allegations […] including but not limited to, alleging that plaintiff did 'resist lawful arrest by extending and locking [her] arms and refusing to turn onto [her] stomach while [defendant Clemente] attempted to place plaintiff in handcuffs.'"  As depicted in the body worn camera footage, multiple officers are instructing plaintiff to comply with directions so they can handcuff her, while plaintiff is not doing so, including refusing to turn onto her stomach. Moreover, there is insufficient showing that any of these statements would be material – namely, as discussed supra, officers had probable cause to arrest plaintiff for obstruction of governmental administration, trespass, and criminal trespass.  Moreover, the criminal court complaint could not be found to be material and have been able to influence a jury's decision as it would have constituted inadmissible hearsay. See e.g. Brown v. City of New York, No. 14-CV-5372 (BMC), 2014 U.S. Dist. LEXIS 181736, at *9-10 (E.D.N.Y. Dec. 23, 2014) (dismissing fair trial claim because the false statements, including those made in a criminal complaint, were inadmissible hearsay).

14

**POINT III**

**PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM FAILS AS A MATTER OF LAW**

**A.  Plaintiff's First Amendment Retaliation Claim Should be Dismissed as There Was Probable Cause For Plaintiff's Arrest**

Plaintiff's First Amendment retaliation claim fails as officers had probable cause for plaintiff's arrest and plaintiff can present no objective evidence that she was arrested when similarly situated individuals would not have been.  With a narrow exception, a plaintiff must show the absence of probable cause in order to prove her claim. Nieves v. Bartlett, 139 S. Ct. 1715, 1729 (May 28, 2019); see also Caravalho v. City of N.Y., 732 Fed. Appx. 18, 23 (2d Cir. Apr. 25, 2018) ("The existence of probable cause defeats a First Amendment claim premised on the allegation that defendants arrested a plaintiff based on a retaliatory motive.") (citing Fabrikant v. French, 691 F.3d 193, 215 (2d Cir. 2012).  Where probable cause for an arrest exists, the arresting "officer's state of mind is simply 'irrelevant.'" Nieves, 139 S. Ct. at 1731 (citation omitted).  Further, an "inquiry into the underlying motive of the arrest need not be undertaken." Curley v. Village 268 F.3d 65, 73 (2d 2001).

Only when the "plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been" arrested can this claim survive. Nieves, 139 S. Ct. at 1727 (citation omitted). Absent this, there is no need to look into any motive for the arrest.  Here, plaintiff does not allege any objective evidence in her Amended Complaint that similarly situated individuals who were blocking an entryway to a precinct and refused a request to leave were not also arrested.  As there was probable cause for plaintiff's arrest as  discussed in Point I, supra, this claim should be dismissed.

15

Even absent probable cause for the arrests, plaintiff's claim fails.  In order to succeed on a retaliation claim, plaintiff must show that "(1) he has an interest protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions effectively chilled the exercise of the plaintiff's First Amendment rights." Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998) (citation omitted).  Here, plaintiff's First Amendment retaliation claim cannot be supported as plaintiff admitted was not exercising her First Amendment rights – she admittedly was not filming officers at the time she was asked to leave the precinct and there is no First Amendment right to pretend to record. See e.g. Gericke v. Begin, 753 F.3d 1, 3 n.2 (1ˢᵗ Cir. 2014) (noting in *dicta* that an attempt to record that is frustrated may implicate a First Amendment right, but not discussing whether that applies where an individual was pretending to record).  To that extent, plaintiff's First Amendment retaliation claim is a red herring and an attempt to bolster her false arrest claim, which as discussed supra Point I, fails for probable cause.  Even if the Court were to continue the analysis, there is no evidence demonstrating any retaliatory motive or effort to silence plaintiff – indeed, it is not uncommon for officers to arrest individuals for trespass in a police station when they are causing a disturbance. See e.g. People v. Jackson, 46 Misc. 3d 142, 142 (2015).  Finally, the officers' actions cannot have chilled the exercise of plaintiff's First Amendment rights – indeed, she was not exercising them.  Accordingly, this claim should be dismissed.

**B.    Defendants Hernandez and Clement Are Entitled to Qualified Immunity**

In cases involving arrests, qualified immunity or arguable probable cause, is a defense to any related claims for First Amendment retaliation. See Blue v. Koren 72 F.3d 1075, 1083 (2d Cir. 1995) (holding First Amendment retaliation claims are barred where officers have

qualified immunity to arrest); see also Wiles v. City of New York, 2016 U.S. Dist. LEXIS 148024, at *31 (S.D.N.Y. Oct. 25, 2016).  Here, as discussed supra Point I, Officer Clement and Sgt. Hernandez had probable cause or at least arguable probable cause to arrest plaintiff.

### POINT IV

### PLAINTIFF'S CLAIM UNDER NEW YORK CIVIL RIGHTS LAW SECTION 79-P FAILS AS A MATTER OF LAW

New York Civil Rights Law § 79-P provides generally that the public has a right to record law enforcement related activities, or to attempt to do so.  The statue provides for a private right of action for interference with a recording, including arresting an individual. New York Civil Rights Law § 79-P(3).  This right is limited by statute however, notably, "[n]othing in this subdivision shall be construed to permit a person to engage in action that physically interfere with law enforcement activity or otherwise constitute a crime defined in the penal law involving obstructing governmental administration." Id.(2).   The statute further provides that it is an affirmative defense to this civil action if at the time of the conduct, "such officer had probable cause to arrest the person recording such a law enforcement activity for a crime defined in the penal law involving obstructing governmental administration. Id.(3)(v)(b).  As discuss further in Point I, supra, defendants had probable cause to arrest plaintiff for obstruction of governmental administration based, in part, on her blocking entry and exit to the stationhouse while she stood behind a door for an extended period that could not be opened fully.  Additionally, as noted in Point III, supra, plaintiff was not engaging in activity protected by Section 79-P.  While the statute protects capturing or attempting to capture by use of a recording device, law enforcement related activities – plaintiff was neither recording nor attempting to record anything.  As plaintiff concedes in n. 2, plaintiff was not actually recording but was pretending to record, and as such

she was not exercising or attempting to excise the rights established in subsection 2 of the statute.  Accordingly, plaintiff's claim under New York Civil Rights Law § 79-P fails.

**POINT V**

**PLAINTIFF'S   MUNICIPAL   LIABILITY
CLAIMS  AGAINST  DEFENDANT  CITY  OF
<u>NEW YORK SHOULD BE DISMISSED</u>**

Plaintiff's alleged municipal liability claims should be dismissed because it is insufficiently pled.  Namely, plaintiff alleges municipal liability on two theories: (1) that the underlying policy regarding the prohibition of the public to film in a police precinct is an illegal policy and (2) that there was an alleged lack of supervision, specifically a failure to select, train, supervise, investigate, promote, and discipline police officers.

**A.     Plaintiff's Municipal Liability Claim of an Illegal Policy Fails as the Policy Provided Reasonable Restrictions**

In order to state a Section 1983 claim against a municipality, a plaintiff must allege that the municipality itself caused the alleged constitutional deprivation. <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989).  To state a claim for municipal liability, a plaintiff must alleged at least one of the following: (1) the existence of a formal policy, officially promulgated or adopted by a municipality, <u>see</u> <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 690 (1978); (2) the official responsible for establishing policy, with respect to the subject matter in question to the specific action, caused the alleged violation of the plaintiff's rights, <u>see</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 482-84 (1986) (plurality opinion); (3) the existence of an unlawful practice by subordinate officials so permanent and well settled to constitute "custom or usage," with proof that this practice was so manifest as to imply the acquiescence of policy-making officials, <u>see</u> <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127-30 (1985) (plurality opinion),

18

Sorlucco v. New York City Police Dep't, 971 F.2d 864, 871 (2d Cir. 1992); or (4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employee's interact, see City of Canton, at 388 (1989); Jenkins v. City of New York, 478 F.3d 76, 94 (2d Cir. 2007). "At the pleading stage, a plaintiff 'must allege facts tending to support, at least circumstantially, an inference that [the alleged] municipal policy or custom exists." Lehal v. Cent. Falls. Dept. Facility Corp., 2016 U.S. Dist. 177587 at *19 (S.D.N.Y.) (quoting Matthews v. City of New York, 2016 U.S. Dist. LEXIS 136907). Conclusory allegations will not satisfy a plaintiff's pleading obligations for a municipal liability claim. Id. at *19-20.

      First, plaintiff's municipal liability claim for the policy of not permitting the public to film in police precincts fails as the policy is constitutional. The First Amendment protects freedom of speech and freedom of the press. Where there is a right to film government officials engaged in their duties in a public place, including police officers, that right, "is not without limitations." See Turner v. Driver, 848 F.3d 678, 689-690 (5th Cir. 2017) (citing Gilk v. Cunniffe, 655 F.3d 78, 84 (1st Cir. 2011)). The right to record the police on public property exists subject only to reasonable time, place, and manner restrictions, which must be narrowly tailored to serve a significant governmental interest. Id. at 688-90; Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000). The Supreme Court has identified that the appropriate test for a reasonable time, place, and manner restriction depends on the nature of the forum, whether traditional public forum, public forum created by governmental designation, and the nonpublic forum. See Cornelius v. NAACP Legal Def. & Ed. Fund, Inc., 473 U.S. 788, 802 (1985). For the first two, Courts look at whether the area is one permitting discourse and public disclosure and the extent to which it is open to assembly and debate. See id. Nonpublic forums are ones which

has not been historically made available for speech activity. See International Society for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 679-83 (1992) (finding that airport terminals are nonpublic forums, in that they have hardly qualified for having 'immemorially… time out of time' been held in the public trust and used for purposes of expressive activity.'); Mocek v. City of Albuquerque, 3 F. Supp. 3d 1002, 1075 (N.M.D.C. Feb. 28, 2014) (finding that a security checkpoint at an airport is a nonpublic forum).   For nonpublic forums, the restriction to time place and manner need only be reasonable, and not the most reasonable or only reasonable limitation.  Id. at 1061 (quoting International Society for Krishna Consciousness, Inc., 505 U.S. at 683).  "[Th]e requirement of narrow tailoring is satisfied so long as the [] regulation promotes *a substantial government interest that would be achieved less effectively absent the regulation*." Turley v. New York City Police Dep't, 93-cv-8748,  1996 U.S. Dist. LEXIS 2582 at * 16-17 (S.D.N.Y. Mar. 5, 1996) (emphasis in original) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 797-99 (1989)).

       In the instant matter, a police stationhouse is a nonpublic forum, in that it is not offered out to the public for use of expressive activity, but rather is an area meant to facilitate policework, including investigations, interviewing suspects and witnesses, and even housing detainees.  Here, there is a substantial government interest in ensuring access to precinct stations by members of the public to permit, protecting witnesses, upholding the sanctity of investigations, and allowing officers to perform essential functions without interference. People v. Reape, 22 Misc. 3d 615, 618-19 (Kings Cty Crim. Ct. 2008).  Moreover, police stationhouses often hold suspects who have been arrested, witnesses to crimes who are being interviewed or giving statements, and a significant amount of private and personal information.  The restriction on filming in police precincts is reasonable in light of this substantial government interest.

While police stationhouses are a generally held open to the public, the privilege to enter and use the space may be regulated to prevent interference with the property's ordinary use. People v. Brown, 925 N.Y.2d 374, 376 (1969).  Permitting members of the public to film in the stationhouse would circumvent those substantial government interests. See Mocek, 3 F. Supp. 3d at *1072 (noting prohibiting filming of TSA agents at an airport security checkpoint is a reasonable restriction in light of the burdensome need for agents to determine if the filming is for legitimate or illicit purposes, which could have a disruptive effect).  Moreover, the section of the policy, which plaintiff alleges is unconstitutional, is limited in terms of time, place, and manner – in that it prohibits specifically photographing and recording police activity and only within Department facilities. See NYPD Patrol Guide, 203-29 ¶ 7 annexed to Schemitsch Decl. as Exhibit D.  Accordingly, plaintiff's municipal liability claim against defendant City of New York for the policy of not permitting filming in a precinct should be dismissed.

**B.      Plaintiff's Municipal Liability Claim of Improper Training Is Insufficiently Pled**

Plaintiff's second basis for a Monell claim is an alleged lack of supervision, specifically a failure to select, train, supervise, investigate, promote, and discipline police officers.  Here plaintiff has only pled a single instance of unconstitutional conduct, detailing her own alleged incident. Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). One occurrence is a far cry from creating a  or "custom," or any repeated failure to train, or supervise. Id.

Moreover, mere allegations, without evidence, will not satisfy the high burden of proof required in municipal liability claims. See Dwares v. City of New York, 985 F.2d 94, 100

(2d Cir.1993) ("The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.") <u>overruled on other grounds by</u> <u>Leatherman v. Tarrant County Narcotics</u> <u>Intelligence & Coordination Unit</u>, 507 U.S. 163 (1993). Likewise, "…the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." <u>Id</u>. Accordingly, plaintiff's municipal liability claim against defendant City of New York for the alleged lack of training should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss plaintiff's claims under Section 1983 of false arrest, denial of right to a fair trial, First Amendment retaliation, municipal liability, claims under New York Civil Rights Law § 79-P, and ensuing state law claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Date:        New York, New York
             September 7, 2022

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the
  City of New York
*Attorney for Defendants City of New York, Sgt.*
*Hernandez, and Officer Clement*
New York, New York 10007
(212) 356-3539
jschemit@law.nyc.gov

By:        _____/s/_____
             John Schemitsch
             *Senior Counsel*

cc:   **BY ECF**
      ALL COUNSEL OF RECORD