UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

PATRICIA RODNEY,

                      Plaintiff,

v.

THE CITY OF NEW YORK, ET AL.,

                      Defendants.

22-cv-1445 (LAK)

**DECLARATION OF
J. REMY GREEN**

STATE OF NEW YORK    )
                                 ) ss.:
COUNTY OF KINGS        )

I, Remy Green, being duly sworn, depose and say:

1. I am a partner at Cohen&Green P.L.L.C., co-counsel for Plaintiff Patricia Rodney in this case.

2. I make this declaration in opposition to Defendants' partial motion to dismiss.

***Videos and Related Facts.*** [1]

3. Attached as Exhibit 1 is a true copy of the Body Worn Camera video of one of the Doe Defendants, produced to our firm under FOIL as "2_Extraction_1_1__AXON_Body_2_Video_2020-12-02_1803.mp4".

4. As seen in Green Ex. 1, at no point does Ms. Rodney block any door in the police station.

---

[1] For videos, "attached" means that a placeholder PDF is being submitted on ECF, while hard copy will be delivered to the Court. And for public access, since the documents are plainly "judicial documents" to which there is "a potent and fundamental presumptive right of public access" (*Olson v. Major League Baseball*, 29 F.4th 59, 87 (2d Cir. 2022)), the placeholder has a permanent link to the relevant video — hosted on our firm's public DropBox.

1

5. As seen in the first seconds of Green Ex. 1 (0:00-0:29), two apparent members of the public are able to go through the door with no issues whatsoever, during the time that Defendants claim Plaintiff was "blocking entry and exit to the stationhouse" (DMOL at 17):



Green Ex. 1 at 0:02;



Green Ex. 1 at 0:18.

2

6. As seen throughout Green Ex. 1, multiple members of the NYPD — including the officer whose BWC the video is from — are able to go through the door precinct door with no issues whatsoever, both to join the large group surrounding Plaintiff and apparently to leave the precinct to engage in other tasks:






Green Ex. 1 at 0:20-1:15.[2]

---

[2] Indeed, as seen in the final screenshot here, the greatest obstacle to entry and exit was the crowd of police preparing to assault Plaintiff — and even that crowd posed no obstacle at all.

3

7.      As seen in Green Ex. 1, the most Plaintiff did to block the door was, at one point, to have her hand very briefly cross the plane of the door's path — which did not stop the door from being able to open in any way, and did not even take place during a moment someone was attempting to use the door:





Green Ex. 1 at 0:38; 1:03.

8.      Otherwise, as seen throughout Green Ex. 1, at the absolute most, Plaintiff's hand briefly crosses into the plane of the door, and the door is able to open completely and effectively the entire time.  In other words, there is no good

4

faith claim that, in the light most favorable to Plaintiff, the video unambiguously establishes — such that the Court can ignore well-pled facts in the FAC — that Plaintiff's mere presence was "an *insurmountable* obstacle or impediment" to using the door. *People v. Arbeiter*, 169 Misc.2d 771, 773-4 (1st Dept. 1996)

9. Relatedly, Defendants claim, "Plaintiff begins exclaiming loudly prior to being touched by officers." DMOL 3. That an objective misstatement of what the video shows, nor is it what the FAC pleads. Rather, the person filming grabs at Plaintiff while yelling, and grabs Plaintiff's wrist before anything else happens. Green Ex. 1 at 1:19-1:24:



Green Ex. 1 at 1:24 (red circle added). In the audio track, what sounds like it is the impact from the person filming grabbing Plaintiff's arm is audible at the same moment (that is, 1:24). Plaintiff first begins screaming — or "exclaiming loudly" — when multiple Defendants begin to take her to the floor:

5







6

Green Ex. 1 at 1:25-27.  Plaintiff's first scream is audible at 1:26 — two seconds after the grab at 1:24 depicted above (and audible in the audio).  There does not appear to be a good faith basis in the video for Defendants' claim otherwise.

10.     Not incorporated in the FAC, and therefore not included in full,[3] Defendants produced a number of other BWCs in response to Plaintiff's FOIL request.  In one of those videos, Plaintiff's legs can clearly be seen shackled.  On a review of the video, I have not found an unambiguous moment showing when the shackles were applied.  Below is a true and correct screengrab from one video:



***Legislative Materials for § 79-P.***

11.     Attached as Exhibit 2 is a true copy of the full bill jacket for N.Y. Civ. R. L. § 79-P.

---

[3] Rather, it is only included because Defendants seem to suggest because they believe at "no point during the body worn camera footage are plaintiff's ankles shackled" on screen, the Court should assume it never happened. DMOL at 3.  Defendants are, of course, aware of all videos and I brought this fact to Defendants' counsel's attention.

7

12. Attached as Exhibit 3 is a true copy of the relevant portion of the session of the New York State Assembly on June 8, 2020, during which the Assembly debated N.Y. Civ. R. L. § 79-P (collected for our firm by the New York Legislative Service).

13. Attached collectively as Exhibit 4 are true copies of the various official statements made by Senators, Assembly Members, and former-Governor Cuomo about the passage of § 79-P.

***Legislative Materials for § 14-189.***

14. Attached as Exhibit 5 is a true copy of the transcript of the June 9, 2020 Council Meeting and Hearing on the New York City Right to Record Act.

15. Attached as Exhibit 6 is a true copy of May 18, 2022 letter (the "PA Letter") from Public Advocate Jumaane Williams to NYPD Commissioner Sewell and NYPD Asst. Dep. Commissioner Chernayavsky about the Right to Record Act and the No Recording Policy as applied in this case.

16. Attached as Exhibit 7 is a true copy of the official Bill Summary of Int. No. 721-B (the introduction of the Right to Record Act that ultimately passed and became N.Y. Admin. C. § 14-189).

17. Attached as Exhibit 8 is a true copy of an August 21, 2018 New York Times article titled "Video of Man Berating Officer Opens Debate Over Recording in Police Station."

18. Attached as Exhibit 9 is a true copy of the Committee Report of the Committee on Public Safety covering Int. No. 721-A (later amended to 721-B).

*NYPD's promises to the public about station houses.*

19. Attached as Exhibit 10 is a true and correct copy of an official City transcript of a press conference held by then-Mayor Bill de Blasio and then-Police Commissioner James P. O'Neil, sourced from https://www1.nyc.gov/office-of-the-mayor/news/350-18/transcript-mayor-de-blasio-police-commissioner-o-neill-hold-media-availability-crime-statistics#/0.

*Plaintiff was attempting to record.*

20. As discussed in accompanying memorandum, Defendants seem to be arguing that, if Plaintiff knew she was not *succeeding* at recording, she could have been attempting to do so. And they take a footnote in the complaint that says Plaintiff was not in fact recording to somehow mean Plaintiff admits she was "in no way actually attempting to record." DMOL at 2.

21. If the Court does not believe that the facts in the FAC as written establish an attempt to record (Plaintiff believes they unambiguously do), Plaintiff respectfully requests permission to add the following contextual allegations — or substantially similar allegations — to explain the facts already pled in more depth:

    a. Plaintiff is in her 60s.

    b. She is not, by any means, a technophile.

    c. When Defendants surrounded her, and began the aggressive process that led to her assault and arrest, Plaintiff was terrified.

    d. Plaintiff, like many grandparents, often relies on her children and grandchildren for help with basic technology tasks.

    e. In the situation she was in, she had every intention to record.

    f. Had she been able to take her time, she would have succeeded at recording.

    g. Plaintiff's actions, in raising her phone and saying "this is my camera" was an overt act in furtherance of that intention.

    h. Plaintiff intended that overt action to give the impression she was recording, and made it in furtherance of her intent to record.

    i. In other words, under the circumstances, Plaintiff made an attempt to record that was reasonable.

I declare, under penalty of perjury, that the statements above are true and correct.

Executed On: October 5, 2022

/s/
_____
J. Remy Green