Index No. 22-cv-1445 (LAK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA RODNEY,

Plaintiff,

-against-

CITY OF NEW YORK, et al.,

Defendant.

**MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSITION TO AND AMICUS BRIEF IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York,*
*Sgt. Hernandez, and Officer Clement*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  John Schemitsch*
*Tel:  (212) 356-3539*
*Matter No.:  2020-047341*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES......................................................................................III

PRELIMINARY STATEMENT .................................................................................1

ARGUMENT

       POINT I

              PLAINTIFF AND THE OFFICE OF THE PUBLIC ADVOCATE IMPROPERLY RAISE FACTUAL ALLEGATIONS THAT ARE BEYOND THE FOUR CORNERS OF THE AMENDED COMPLAINT, AND WHICH SHOULD NOT BE CONSIDERED ........................................................................2

       POINT II

              PLAINTIFF'S ARGUMENTS DO NOT ABROGATE PROBABLE CAUSE FOR PLAINTIFF'S ARREST ..........................................................4

              A.   Probable Cause Existed for Plaintiff's Arrest ....................................4

              B.   Defendants Hernandez and Clement Are Entitled to Qualified Immunity ..........................................................8

       POINT III

              PLAINTIFF'S ALLEGATIONS OF "MATERIAL OMISSIONS" IN THE CRIMINAL COMPLAINT ARE INSUFFICIENT TO SUPPORT A FAIR TRIAL CLAIM ........................................................................9

       POINT IV

              PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM OF RETALIATORY ARREST FAILS AS A MATTER OF LAW .........................................11

**Page**

POINT V

      PLAINTIFF'S CLAIM UNDER NEW YORK
CIVIL RIGHTS LAW SECTION 79-P FAILS AS
A MATTER OF LAW............................................................................12

POINT VI

      PLAINTIFF'S MUNICIPAL LIABILITY CLAIM
FAILS .................................................................................................13

      A.  Plaintiff's Municipal Liability Claim of an
Illegal Policy Fails...........................................................................13

      B.  Plaintiff's Municipal Liability Claim of
Improper Training Is Insufficiently Pled ..........................................17

CONCLUSION..................................................................................................18

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                   <u>**Pages**</u>

<u>Ashcroft v. Iqbal</u>,
    556 U.S. 662 (2009) .................................................................................6

<u>Basinski v. City of New York</u>,
    706 Fed. Appx. 693 (2d. Cir. 2017) ........................................................8

<u>Bertuglia v. Schaffler</u>,
    672 F. App'x 96 (2d Cir. 2016) ..............................................................10

<u>Blue v. Koren</u>
    72 F.3d 1075 (2d Cir. 1995) ...................................................................12

<u>Bradway v. Gonzales</u>,
    26 F.3d 313 (2d Cir. 1994) .......................................................................9

<u>Breton v. City of N.Y.</u>,
    No. 17-cv-9247 (JGK), 2019 U.S. Dist. LEXIS 150407
    (S.D.N.Y. Sep. 3, 2019)...........................................................................10

<u>Brogdon v. City of New Rochelle</u>,
    200 F. Supp. 2d 411 (S.D.N.Y. 2002) ....................................................17

<u>Capers v. Kirby Forensic Psychiatric Ctr.</u>,
    2016 U.S. Dist. LEXIS 23007
    (S.D.N.Y. Feb. 25, 2016).......................................................................2-3

<u>Car-Freshner Corp. v. Getty Images, Inc.</u>,
    822 F. Supp. 2d 167 (N.D.N.Y. Sep. 28, 2011)........................................2

<u>City of Tahlequah v. Bond</u>,
    142 S. Ct. 9 (2021) ...................................................................................9

<u>Commonwealth v. Bradley</u>,
    232 A.3d 747 (PA Superior Ct. May 5, 2020)..................................5, 16

<u>Connell v. Signoracci</u>,
    153 F.3d 74 (2d Cir. 1998) .................................................................11-12

<u>Donohue v. Marsh</u>,
    2022 U.S. Dist. LEXIS 162285 (E.D.N.Y. Sep. 8, 2022) ........................6

<u>Fields v. City of Philadelphia</u>,
    862 F.3d 353 (3d Cir. 2017) .....................................................................5

**<u>Cases</u>**                                                                                                               **<u>Pages</u>**

<u>Gericke v. Begin</u>,
   753 F.3d 1 (1st Cir. 2014)..................................................................12

<u>Hoyos v. City of N.Y.</u>,
   999 F. Supp. 2d 375 (E.D.N.Y. 2013)..................................................11

<u>Hunter v. Bryant</u>,
   502 U.S. 224 (1991) ...........................................................................8

<u>International Society for Krishna Consciousness, Inc. v. Lee</u>,
   505 U.S. 672 (1992) ...........................................................................5

<u>Jacobson v. Peat, Marwick, Mitchell & Co.</u>,
   445 F. Supp. 518 (S.D.N.Y. 1977)........................................................3

<u>Jovanovic v. City of N.Y.</u>,
   2010 U.S. Dist. LEXIS 144388 (S.D.N.Y. Sep. 28, 2010)....................11

<u>Lee v. Saul</u>,
   2020 U.S. Dist. LEXIS 182261 (S.D.N.Y. Aug. 31, 2020)...............2, 11

<u>Mercado v. City of New York</u>,
   No. 08 Civ. 2855 (BSJ) (HP), 2011 U.S. Dist. LEXIS 140430
   (S.D.N.Y. Dec. 5, 2011) ...............................................................16-17

<u>Mocek v. City of Albuquerque</u>,
   3 F. Supp. 3d 1002 (N.M.D.C. Feb. 28, 2014) ...................................5

<u>Morse v. Fusto</u>,
   804 F.3d 538 (2d Cir. 2015) .............................................................10

<u>Nnodimele v. Derienzo</u>,
   No. 13-CV-3461 (ARR)(RLM), 2016 U.S. Dist. LEXIS 83357
   (E.D.N.Y. June 27, 2016) .................................................................11

<u>Pearson v. Callahan</u>,
   555 U.S. 223 (2009) ...........................................................................8

<u>People v. Brown</u>,
   925 NY2d 374 (1969)...............................................................4, 6, 13

<u>People v. Hedemann</u>,
   107 Misc. 2d 241 (App. Term, 1st Dep't 1981).................................15

**Cases**                                                                                          **Pages**

People v. Jackson,
    46 Misc. 3d 142 (2015) ............................................................................. 5, 13

People v. Munroe,
    18 Misc. 3d 9 (2d Appellate Term 2007) .......................................................... 5-6

People v. Reape,
    22 Misc. 3d 615 (2008) ................................................................. 5, 13, 14, 15

Provost v. Newburgh,
    262 F.3d 146 (2001) ................................................................................. 14, 15

Randolph v. Metro. Transp. Auth.,
    No. 17cv1433 (DLC), 2018 U.S. Dist. LEXIS 98603
    (S.D.N.Y. June 12, 2018) ............................................................................ 10

Rivas-Villegas v. Cortesluna,
    142 S. Ct. 4 (2021) ...................................................................................... 9

Scott v. Harris,
    550 U.S. 372 (2007) ..................................................................................... 7

Vippolis v. Vill. of Haverstraw,
    768 F.2d 40 (2d Cir. 1985) ............................................................................ 16

Ward v. Andrews McMeel Pub., LLC,
    963 F. Supp. 2d 222 (S.D.N.Y. 2013) ................................................................ 2

**Statutes**

42 U.S.C. § 1983 ........................................................................................ 1, 18

Fed. R. Civ. P. 10(c) .......................................................................................... 2

Fed. R. Civ. P. 12(b)(6) ................................................................................ 1, 2, 18

New York Penal Law 195.05 ................................................................................ 7

NY Civil Rights Law § 79-P ....................................................................... 1, 12-13, 18

NYC Admin C. § 14-189 .................................................................................. 13

Penal Law 140.05 ........................................................................................... 15

v

## PRELIMINARY STATEMENT

Plaintiff, through her Opposition to Defendants' Motion to Dismiss, fails to substantively rebut the arguments made in the moving papers of defendants City of New York, Sgt. Hernandez, and Officer Clement.  Instead of responding to these arguments, plaintiff tries to improperly bolster and amend the Amended Complaint by introducing new facts and allegations and inserting arguments that are ancillary to the underlying bases defendants raise for dismissal. Moreover, the amicus brief submitted by the Office of the Public Advocate/Latino Justice, attempts to insert post-facto legislative history for a statute which is not the basis for plaintiff's claim.  Even if the Court takes these additional facts and ancillary and unrelated arguments into account, they do not negate the arguments defendants make for dismissal.  For the reasons set forth in defendants' Motion to Dismiss and the reasons set forth below, defendants respectfully seek to dismiss plaintiff's claims under Section 1983 of false arrest, denial of right to a fair trial, First Amendment retaliation, municipal liability, claims under New York Civil Rights Law § 79-P, and ensuing state law claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

---

[1] As noted in defendants Motion to Dismiss, defendants do not seek to dismiss plaintiff's Section 1983 excessive force and corresponding state law assault/battery claims at this time, including plaintiff's First Amendment retaliation by force claim.

## ARGUMENT

### POINT I

### PLAINTIFF AND THE OFFICE OF THE PUBLIC ADVOCATE IMPROPERLY RAISE FACTUAL ALLEGATIONS THAT ARE BEYOND THE FOUR CORNERS OF THE AMENDED COMPLAINT, AND WHICH SHOULD NOT BE CONSIDERED

Plaintiff and the Office of the Public Advocate/LatinoJustice, in their amicus brief, raise new factual allegations not contained in the Amended Complaint, which the Court should not consider in determining defendants' Motion to Dismiss as they are beyond the four corners of the Amended Complaint.

Generally, when contemplating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court may only consider the four corners of the complaint, with limited exceptions of "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference in the complaint, are "integral" to the complaint (and are provided by the parties), or (4) any matter of which the court can take judicial notice for the factual background of the case." Car-Freshner Corp. v. Getty Images, Inc., 822 F. Supp. 2d 167 (N.D.N.Y. Sep. 28, 2011) (citing Fed. R. Civ. P. 10(c)). "[N]ew facts and allegations, first raised in a Plaintiff's opposition papers may not be considered in deciding a motion to dismiss[.]" Ward v. Andrews McMeel Pub., LLC, 963 F. Supp. 2d 222, 231 (S.D.N.Y. 2013).

"A complaint does not include allegations raised for the first time in opposition to a motion to dismiss and such allegations do not automatically amend the complaint." Lee v. Saul, 2020 U.S. Dist. LEXIS 182261 (S.D.N.Y. Aug. 31, 2020). "[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." Capers v.

Kirby Forensic Psychiatric Ctr., 2016 U.S. Dist. LEXIS 23007 (S.D.N.Y. Feb. 25, 2016); see also Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 526 (S.D.N.Y. 1977) (holding that a party may not amend pleadings through statements in briefs).

Here, plaintiff seeks to raise numerous factual allegations, cited to in a declaration by plaintiff's counsel. Notably, plaintiff alleges that defendants sat on plaintiff while placing her under arrest, which is neither pled in the Amended Complaint, nor shown on the single video which plaintiff incorporated into the Amended Complaint. Plaintiff further claims now that she began crying out after officers used force on her, however, again, this was not as alleged in the Amended Complaint, and indeed, the single video appended to Amended Complaint shows she begins yelling out loudly prior to any physical interaction.

Plaintiff also points out what she believes to be inconsistencies, in a thinly-veiled attempt to cast doubt on defendants' credibility. However, plaintiff is in fact the party picking and choosing her facts to suit her best. For example, plaintiff also attempts to claim that the fact that she was shackled at one point somehow defeats the motion, or casts doubt on defendants' credibility. Defendants noted only that at no point during the video plaintiff incorporated into the Amended Complaint are plaintiff's ankles shackled. Defendants do not contend that plaintiff was never shackled, and indeed, in the sole video plaintiff incorporated into the Amended Complaint, plaintiff is not seen having her feet shackled, and is visibly shown walking after being handcuffed without shackles on her feet, contrary to plaintiff's allegations in the Amended Complaint. Further, defendants note that plaintiff has continually raised allegations that plaintiff broke her arm at her elbow during this interaction, however, while not incorporated into the Amended Complaint, defendants raise for the Court that, per medical records including x-ray reports, plaintiff did not, in fact, break or fracture her elbow as a result of her arrest.

3

As to statements and factual allegations made by the Office of the Public Advocate/LatinoJustice in their amicus brief, the Court should further decline to consider these arguments. The Office of the Public Advocate purports to, through a declaration drafted well after the enactment of the local New York City right to record law, explain the legislative history of the New York City, a law which plaintiff does not file a claim under. This post-facto attempt to define the legislative history of the statute is entirely improper, and moreover, is far beyond the four corners of the Amended Complaint.

**POINT II**

**PLAINTIFF'S ARGUMENTS DO NOT ABROGATE PROBABLE CAUSE FOR PLAINTIFF'S ARREST**

**A.      Probable Cause Existed for Plaintiff's Arrest**

Plaintiff misstates defendants arguments that officers had probable cause for her arrest due solely to the existence of the NYPD policy prohibiting filming in police precinct stationhouses. Indeed, as noted in defendants moving papers, probable cause for plaintiff's arrest existed independently the policy, for trespass and obstruction of governmental administration. Plaintiff's newly raised allegations and arguments do not vitiate probable cause.

First addressing trespass, the body worn camera video appended to the Amended Complaint clearly shows that plaintiff is blocking the door standing behind it and limiting the ability for officers and members of the public to walk through. Plaintiff claims that she entered the premises lawfully, however, even accepting this conclusory statement as true, lawful entry and the right to remain in a police precinct stationhouse is predicated on a license to remain, which can be revoked. See e.g., People v. Brown, 925 NY2d 374 (1969) (recognizing that the right to remain on premises in a location which is open to the public can have the license or

4

privilege to remain revoked if the person violated a lawful order not to remain); People v. Reape, 22 Misc. 3d 615, 618 (2008); see also People v. Jackson, 46 Misc. 3d 142, 142 (2015) (upholding a criminal conviction for trespass when defendant refused to leave a precinct after being asked to do so while he was being disruptive).  Plaintiff's bald claims that only certain areas of police stations are non-public and afforded any protection is not supported by prevailing caselaw.  As discussed in defendants' Motion to Dismiss, a stationhouse is a nonpublic forum – one which historically has not been made available for speech activity.  See International Society for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 679-83 (1992) (discussing the basis for when a location is a nonpublic forum and finding that airport terminals are nonpublic forums, in that they have hardly qualified for having 'immemorially… time out of time' been held in the public trust and used for purposes of expressive activity.'); see also Mocek v. City of Albuquerque, 3 F. Supp. 3d 1002, 1075 (N.M.D.C. Feb. 28, 2014) (finding that a security checkpoint at an airport is a nonpublic forum); Commonwealth v. Bradley, 232 A.3d 747, 756 (PA Superior Ct. May 5, 2020) (holding that the reasonable restriction standard of a nonpublic forum applies to police stationhouses, and finding there is no absolute right to record the police in a police stationhouse).[2]  As such, plaintiff did not have an unlimited right to use a police precinct.  Defendants' request for her to leave in light of her blocking the door is a valid revocation of her license to remain in the location.  Accordingly, the request for plaintiff to leave the station house was a lawful order.  See e.g. People v. Munroe, 18 Misc. 3d 9 (2d Appellate

---

[2] Plaintiff cites to purported statements made that stationhouses could be viewed by members of the public as public spaces.  This is of no moment as prevailing caselaw shows that stationhouses are nonpublic fora, subject to reasonable time, place, and manner First Amendment restrictions.  As highlighted in Commonwealth v. Bradley, "[t]he right to record police is not absolute.  It is subject to reasonable time, place, and manner restrictions." 232 A.3d at 754 (quoting Fields v. City of Philadelphia, 862 F.3d 353, 359 (3d Cir. 2017).

Term 2007) (finding that once a defendant was informed that he could not be given files he requested, there was a legitimate basis and accordingly a lawful order for him to leave, and in his refusal to do so, he committed trespass); Donohue v. Marsh, 2022 U.S. Dist. LEXIS 162285 (E.D.N.Y. Sep. 8, 2022) (noting officers lawfully issued a lawful order to leave a courthouse to plaintiff, by requesting he leave); People v. Brown, 925 NY2d 374 (1969). Plaintiff's allegations in the Amended Complaint that this was an unlawful order are legal conclusions and not factual allegations that the Court need accept as true. See Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (holding that tenet that a court must accept a complaint's allegations as true is inapplicable to legal conclusions, and a court is not bound to accept as true a legal conclusion couched as a factual allegation).

Plaintiff's claim that this was an unlawful order is without merit. Officers observed plaintiff standing the way of a door to enter further into the precinct stationhouse, causing a disturbance that was making it difficult for other officers and member of the public to move through the building, and, thus, in asking plaintiff to leave, issued a lawful order to leave the premise. Plaintiff's claims that she did not understand this to be an order entirely lack merit, as well as irrelevant– plaintiff is documented on video stating that she would not leave.[3] Moreover, as in People v. Munroe, as acknowledged in the Amended Complaint, plaintiff's purpose for being on premises of the police stationhouse was to receive paperwork, which she was informed she could not obtain there, as such there was a legitimate basis and lawful order for her to leave on that basis alone. Accordingly, as further discussed in defendants Motion to Dismiss, probable cause justifiably existed for the arrest of plaintiff for trespass.

---

[3] This is yet another example of plaintiff improperly attempting to add additional factual assertions in her Opposition which are not contained in the Amended Complaint.

Second, defendants had probable cause to arrest plaintiff for obstruction of governmental administration.   As is replete through plaintiff's opposition, plaintiff again mischaracterizes defendants' arguments, claiming defendants solely allege this turns on a factual dispute of whether plaintiff was blocking a door – and that plaintiff pleads that she was not.  The Supreme Court in Scott v. Harris has recognized that Courts can take into account video evidence where it contradicts other factual allegations made. Id. 550 U.S. 372, 280 (2007) (recognizing that the Court can adopt video evidence as true where it contradicts other factual allegations).   Here, the video shows plaintiff was standing behind a door and officers and members of the public were not able to fully open the door to move through.   A police stationhouse is not a nonpublic forum or an agency such as the Department of Motor Vehicles, where someone standing in the way of a door could only have a minor effect on the ability of employees to operate.  Police officers need to be able to respond to radio calls and alerts rapidly, at times needing to quickly leave or enter the precinct.  Here plaintiff was causing a disturbance by her continued presence and in the location where she was.   Moreover, as discussed in defendants' Motion to Dismiss, obstruction of governmental administration, pursuant to New York Penal Law 195.05, is when a person "intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference[.]"   Here plaintiff clearly was interfering with the administration of law and governmental function of the NYPD officers in the area and, as discussed above, was given a lawful order to leave, which she acknowledged and refused.

Plaintiff additionally erroneously claims that obstruction of governmental administration requires persistent physical acts involving actual touching, which is simply untrue

by the plain language of the statute and unsupported by the case law.  See Basinski v. City of New York, 706 Fed. Appx. 693, 698 (2d. Cir. 2017) (noting that New York courts have construed "physical interference" required by obstruction of governmental administration broadly, including inappropriate and disruptive conduct, and that an individual need not make physical contact).

Finally, plaintiff seeks to create a factual dispute where there is none – first by claiming she had no opportunity to comply with the order to leave, and second by arguing that asking someone to leave is not an order and should go to a jury.  As to the first claim, this argument does not hold water as plaintiff was able to verbally respond to this request stating that she would not leave.  As to the second, this is again a frivolous argument.  The officer whose body worn camera is operating turns to plaintiff and asks "Ma'am, we're asking you to leave, you're not leaving?"  Exhibit B at 1:17-1:22.  Plaintiff shakes her no, and says "no" in response. Id.  It is clear that plaintiff understood this to be an order to leave and that her response was a refusal to do so.

**B.   Defendants Hernandez and Clement Are Entitled to Qualified Immunity**

Even if the Court were to find that defendants  did not have probable cause for the arrest of plaintiff, defendants Hernandez and Clement are nevertheless entitled to qualified immunity with respect to this claim, as discussed further in defendants' Motion to Dismiss.

Plaintiff misstates the law on qualified immunity.  Qualified immunity has been long recognized by the Supreme Court.  See e.g., Pearson v. Callahan, 555 U.S. 223, 232 (2009); Hunter v. Bryant, 502 U.S. 224, 227 (1991).  The "doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights."  Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted).  Plaintiff seemingly attempts to challenge qualified immunity as a general concept – apparently asking the Court to ignore the law.  Plaintiff however should be estopped from doing so as plaintiff appears to concede that defendants Hernandez and Clement would be entitled to qualified immunity in her letter to the Court, dated July 8, 2022, noting "if the City concedes that there was a no recording policy, and the individual officers were trained on it, Plaintiff even agrees the individual officers likely have qualified immunity for her arrest itself (though not their use of excessive force)."  ECF No. 24.  Defendants do not dispute that the existence of this NYPD policy.  See ECF No. 26.  Now, however, plaintiff confusingly claims qualified immunity has no support in the law.  See Rivas-Villegas v. Cortesluna, 142 S. Ct. 4, 7 (2021) (noting that qualified immunity is well established and attaches when an official's conduct does not violate clearly established statutory or constitution rights of which a reasonable person would have known); City of Tahlequah v. Bond, 142 S. Ct. 9 (2021).

### POINT III

**PLAINTIFF'S ALLEGATIONS OF "MATERIAL OMISSIONS" IN THE CRIMINAL COMPLAINT ARE INSUFFICIENT TO SUPPORT A FAIR TRIAL CLAIM**

Plaintiff in her opposition claims that there are material omissions in Officer Clemente's criminal complaint sufficient for her fair trial claim.[4]  This is simply not the case and does not rise to the standard required to assert such a claim.  First, plaintiff alleges that officer

---

[4] Defendants do not concede that the criminal court complaint itself is insufficient to meet the standard of material false information as argued in their Motion to Dismiss.

injured plaintiff's arm and that this was missing from the criminal court complaint, however, this is not entirely factually accurate.   While not part of the Amended Complaint, defendants note that medical records received note that plaintiff did not, in fact, break her elbow as alleged in the Amended Complaint, nor did plaintiff go to the hospital for an injury to her elbow.   Regardless, this argument by plaintiff is of no moment, as what plaintiff is alleging does not amount to 'false' information for the purposes of a fair trial claim.   "Information may be 'false' if material omissions render an otherwise true statement false."   Breton v. City of N.Y., No. 17-cv-9247 (JGK), 2019 U.S. Dist. LEXIS 150407, at *29 (S.D.N.Y. Sep. 3, 2019) citing Morse v. Fusto, 804 F.3d 538, 548 (2d Cir. 2015).   Plaintiff simply does not allege what material statements were made by omission.   Indeed, even if the Court considers this as an omission, it is in no way material to the charges, which were for trespass and obstruction of governmental administration.   Plaintiff's injuries and the manner in which she was restrained by the police are simply irrelevant to the crimes with which she was charged.

Moreover, plaintiff's allegations that plaintiff was not struggling or complying with orders are simply not borne out on the video.   An officer's opinions, conclusions or qualitative assessments are also not a basis for finding a constitutional violation. Bertuglia v. Schaffler, 672 F. App'x 96, 101 (2d Cir. 2016); Randolph v. Metro. Transp. Auth., No. 17cv1433 (DLC), 2018 U.S. Dist. LEXIS 98603, at *20 (S.D.N.Y. June 12, 2018).   At most, Officer Clement's statements in the Criminal Court Complaint do not amount to more than opinions, conclusions, and qualitative assessments, which are insufficient to meet the *prima facie* standard for a fair trial claim.

Finally, plaintiff does not make out the claims to be 'material.'   Most courts appear to use the terms "material" and "likely to influence a jury's decision" to define each

10

other, *i.e.* that evidence is material if it is likely to influence a jury's verdict, and evidence is likely to influence a jury's verdict if it is material.  See e.g. Nnodimele v. Derienzo, No. 13-CV-3461 (ARR)(RLM), 2016 U.S. Dist. LEXIS 83357, at *19 (E.D.N.Y. June 27, 2016); Hoyos v. City of N.Y., 999 F. Supp. 2d 375, 393 (E.D.N.Y. 2013); Jovanovic v. City of N.Y., 2010 U.S. Dist. LEXIS 144388, at *23 (S.D.N.Y. Sep. 28, 2010).

**POINT IV**

**PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM OF RETALIATORY ARREST FAILS AS A MATTER OF LAW**

Plaintiff does not rebut the arguments made by defendants that she was not engaging in protected activity under the First Amendment; namely that plaintiff was pretending to record.  Instead, plaintiff argues that her First Amendment rights were infringed for 'attempting to record,' resulting in her arrest.  Despite arguing that her actions of taking out her phone was an attempt to record, plaintiff in no way pleads this in her Amended Complaint.  Indeed, plaintiff made clear in the Amended Complaint that she was not recording at the time and only now claims she was 'attempting' to do so, in a seeming attempt to salvage this claim by improperly attempting to amend her factual allegations in her Opposition to defendants' Motion to Dismiss.  As such, this argument should be handily dismissed by the Court.  See Lee v. Saul, 2020 U.S. Dist. LEXIS 182261 (S.D.N.Y. Aug. 31, 2020).

Moreover, plaintiff does not rebut the arguments made by defendants that officers had probable cause to arrest her for trespass and obstruction of governmental administration. See supra.  Instead plaintiff argues that there would result a chilling effect on the exercise of her First Amendment rights.  While a plaintiff need show a chilling effect to make a prima facie case of First Amendment retaliation, plaintiff cannot do so here.  See Connell v. Signoracci, 153 F.3d

11

74, 79 (2d Cir. 1998) (citation omitted).  Again, plaintiff did not exercise her First Amendment right in 'attempting' to record.  See e.g. Gericke v. Begin, 753 F.3d 1, 3 n.2 (1ˢᵗ Cir. 2014).  As such, the officers' action cannot have chilled the exercise of her First Amendment rights.

Finally, defendants Hernandez and Clement would be entitled to qualified immunity.  As discussed supra Point I, Officer Clement and Sgt. Hernandez had probable cause or at least arguable probable cause to arrest plaintiff.  First Amendment retaliatory arrest claims are barred where officers have qualified immunity to arrest.  See Blue v. Koren 72 F.3d 1075, 1083 (2d Cir. 1995).

## POINT V

### PLAINTIFF'S CLAIM UNDER NEW YORK CIVIL RIGHTS LAW SECTION 79-P FAILS AS A MATTER OF LAW

Plaintiff, despite raising new factual allegations in her Opposition, now claiming that plaintiff was 'attempting' to record in a police precinct, fails to plead a *prima facie* case under New York Civil Rights Law Section 79-P, and this claim should accordingly be dismiss.

First, there is no caselaw to suggest that Section 79-P, the New York State right to record police act applies without any limitation.  Indeed, it is expressly limited by its plain language in not permitting "a person to engage in action that physically interfere with law enforcement activity or otherwise constitute a crime defined in the penal law involving obstructing governmental administration."  Id.(2).  The statute further recognizes that probable cause is an affirmative defense to this.  As discussed in defendants' motion at Points I and IV and *supra*, defendants had probable cause to arrest plaintiff for obstruction of governmental administration.  Further, plaintiff as discussed *supra,* plaintiff was not 'attempting' to record, aside from her post-facto attempt to amend her complaint in her Opposition.  As such, Section

79-P, which provides for no right of action for someone merely pretending to record, is not applicable to plaintiff in seeing civil redress.   Indeed, Courts have recognized that there are fundamental limitations for individuals to remain in police precincts, particularly for individuals who have committed a crime such as obstruction of governmental administration; these limitations would apply to Section 79-P as well.   See e.g., People v. Brown, 925 NY2d 374 (1969); People v. Reape, 22 Misc. 3d 615, 618 (2008); see also People v. Jackson, 46 Misc. 3d 142, 142 (2015).

## POINT VI

### PLAINTIFF'S   MUNICIPAL   LIABILITY CLAIM FAILS

Plaintiff fails to rebut defendants arguments that her municipal liability claim under Monell is improperly pled.   Plaintiff alleges municipal liability on two theories: (1) that the underlying policy regarding the prohibition of the public to film in a police precinct is an illegal policy and (2) that there was an alleged lack of supervision, specifically a failure to select, train, supervise, investigate, promote, and discipline police officers.

**A.    Plaintiff's Municipal Liability Claim of an Illegal Policy Fails**

Plaintiff's arguments that her Monell claim of the NYPD policy prohibiting recording is illegal is of no moment.   In her Opposition, plaintiff argues that the policy is first preempted by state and local right to record acts,[5] namely Section 79-P, discussed *supra*, or New York City Admin C. Section 14-189.[6]   First, defendants note that they in no way concede that

---

[5] The Office of the Public Advocate/Latino Justice raises an issue of whether the NYPD's prohibition on recording in police stationhouses follows the New York City Administrative Procedures Act.   As plaintiff does not raise this argument or assert this allegation in her Amended Complaint, defendants do not provide a response.

[6] Plaintiff does not assert a claim under Section 14-189, and argues its similarity to Section 79-P.

either statute pre-empts the NYPD policy. Indeed, plaintiff points to broad view of the statutes, claiming that these statutes are in no way limited in time or space. This is simply nonsensical. As discussed in defendants' Motion to Dismiss, a police stationhouse is a nonpublic forum, in that it is not offered out to the public for use of expressive activity, but rather is an area meant to facilitate policework, including investigations, interviewing suspects and witnesses, and even housing detainees. Here, there is a substantial government interest in ensuring access to precinct stations by members of the public to permit, protecting witnesses, upholding the sanctity of investigations, and allowing officers to perform essential functions without interference. People v. Reape, 22 Misc. 3d 615, 618-19 (Kings Cty Crim. Ct. 2008). Moreover, plaintiff does not argue that these statutes would permit filming of police everywhere – because plaintiff simply cannot. There are fundamental recognized restrictions on filming of police officers during the course of their duty, including, for example, in public courtrooms.

Indeed, the policy does not pre-empt the statute, but merely recognizes the nature of a police precinct as a non-public forum where a number of sensitive interests take place. Namely stationhouses are meant to facilitate policework, with witnesses and victims to crimes, such as victims of sexual assault, coming through to participate in investigations, detainees, being housed, and suspects being interviewed within. Plaintiff's argument would allow members of the public to record any of these activities merely because police officers are conducting them. This is simply ridiculous. Plaintiff points to quotes taken out of context from employees of the NYPD regarding stationhouses, however this does not change how stationhouses have historically been held out as non-public fora. Indeed, as Courts have recognized that similar areas, with even greater public access, such as airports, are non-public fora, as are police stationhouses. Further, plaintiff's reliance on Provost v. Newburgh is misplaced, as that case

involves a limited question of whether, in the criminal context of disorderly conduct, an individual caused a disturbance "public place." See 262 F.3d 146 (2001). Provost simply did not find what plaintiff alleges, that "'as a matter of law' conduct in a stationhouse is "public,'" it merely discussed plaintiff's conduct around members of the public in an area of the stationhouse, and contains no discussion or holding that a stationhouse in and of itself is public, as recognized by First Amendment caselaw. Id.

Given the sensitive nature of policework, particularly that which occurs within stationhouses, as well as the nonpublic forum aspect, when an individual is filming, it would be infringing on an officer's ability to do their job in accordance with an obstruction of governmental administration. Officers thus can request and deliver an order to leave to that individual, and failure to comply could result in arrest for trespass.

Under Penal Law 140.05, the violation of trespass occurs when "[a] person . . . knowingly enters or remains unlawfully in or upon premises." In the context of public property that is generally open to the public, courts have held that a trespass action may be sustained where "the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." People v. Hedemann, 107 Misc. 2d 241, 242 (App. Term, 1st Dep't 1981). In Hedemann, the court upheld a trespass conviction where the defendant distributed leaflets encouraging nonpayment of Federal taxes within an IRS building, reasoning that the space "while open to the public, was particularly dedicated to the transaction of business – that is, a place where persons could receive individual tax counsel." Id. at 242; see also People v. Reape, 22 Misc. 3d 615 (Kings Cty., Crim. Ct. Nov. 24, 2008) (trespass conviction upheld where defendant "interfere[d] with the ordinary use of the property of the Police Department and by other members of the public" by screaming in a precinct).

While it is generally open to the public, the precinct is largely dedicated to sensitive police activity – assisting victims, coordinating with confidential informants, soliciting statements from witnesses, responding to requests for assistance etc.  Victims and witnesses may be filmed during a recording of police activity outdoors, but they have heightened privacy interests at the precinct where they have gone specifically to provide information to law enforcement.  A no-filming policy helps ensure their safety by preventing the risk of retaliation and preserving their privacy.  See Commonwealth v. Bradley, 232 A.3d 747 (PA Sup. Ct. 2020) (Pennsylvania state-court decision upholding a no-filming condition inside precincts and affirming a trespass conviction for violating the policy).  As such, the prohibition on filming is merely an implementation of trespass and obstruction of governmental administration statutes, as the act of recording within the precinct is incompatible with the activity within the precinct.  Even absent an explicit policy, an officer would be authorized to ask someone filming within the precinct to stop and arrest them for trespass and obstruction of governmental administration if they refused.

Moreover, even if the Court were to consider that the policy was pre-empted, plaintiff does not show a causal connection between the policy and a deprivation of constitutional rights.  Instead, "[t]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused him injuries . . . . Second, the plaintiff must establish a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights."  Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted).  "To establish Monell liability, the causal link must be strong; that is, the policy must be the 'moving force' behind a constitutional violation."  Mercado v. City of New York, No. 08 Civ. 2855 (BSJ) (HP), 2011

16

U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011) (quoting <u>Monell</u>, 436 U.S. at 691, 694).  Here, as discussed, *supra*, defendants had probable cause to arrest plaintiff, and as such, this <u>Monell</u> claim fails.

**B.      Plaintiff's Municipal Liability Claim of Improper Training Is Insufficiently Pled**

Plaintiff's second basis for a <u>Monell</u> claim is an alleged lack of supervision, specifically a failure to select, train, supervise, investigate, promote, and discipline police officers.  Plaintiff seemingly abandons this claim in her Opposition.  Plaintiff simply does not plead more than a single instance of unconstitutional conduct, detailing her own alleged incident. <u>Brogdon v. City of New Rochelle</u>, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").  One occurrence is a far cry from creating a or "custom," or any repeated failure to train, or supervise.  <u>Id</u>.  As such, this claim fails.

## <u>CONCLUSION</u>

For the foregoing reasons and those set forth in Defendants' Motion to Dismiss, the Court should dismiss plaintiff's claims under Section 1983 of false arrest, denial of right to a fair trial, First Amendment retaliation, municipal liability, claims under New York Civil Rights Law § 79-P, and ensuing state law claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Date:     New York, New York
          December 14, 2022

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the
  City of New York
*Attorney for Defendants City of New York, Sgt.*
*Hernandez, and Officer Clement*
New York, New York 10007
(212) 356-3539
jschemit@law.nyc.gov

By: _____/s/_____
          John Schemitsch
          *Senior Counsel*

cc:     **BY ECF**
        ALL COUNSEL OF RECORD