**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICIA RODNEY, <br><br> Plaintiff, <br> v. <br><br> THE CITY OF NEW YORK, ET AL., <br><br> Defendants. | 22-cv-1445 (LAK) (OTW) <br><br> **PLAINTIFF'S FIRST REQUESTS FOR ADMISSION AND SUPPLEMENTAL INTERROGATORY AND DOCUMENT REQUEST** |

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Plaintiff requests that defendants the City of New York, Officer Clemente, Sergeant Hernandez, and any defendant who is currently or subsequently named and hereafter represented by the Office of the Corporation Counsel in this action, answer the following requests for admissions ("Requests") under oath and fully in writing within thirty (30) days of service hereof, or such shorter time as the Court orders or the parties stipulate.

## DEFINITIONS

1. Any capitalized term not otherwise defined herein shall have the meaning assigned to it in the First Amended Complaint (Dkt. No. 29).

2. "City" and "NYPD" are to be construed to include each other, such that a request for the names of certain New York City Police Department ("NYPD") employees, e.g., should be construed to include employees of any agency of the City of New York.

3. "Date" means the exact day and time, month, and year if ascertainable, or if not, the best approximation (including relationship to other events).

1

4. "Defendants," "You," and "Yours" shall mean the defendants answering these requests for admission.

5. "Officer" means a member of service of the NYPD, regardless of rank, including but not limited to any and all officers, detectives, sergeants, lieutenants, captains, chiefs, and/or deputy commissioners.

6. "Person" means any natural person, association, business, group, organization, legal entity, government entity, or other entity.

7. The "No Recording Policy" means the policy embodied in the sign in the atrium of the 62nd Precinct, which reads "MEMBERS OF THE PUBLIC ARE PROHIBITED FROM AUDIO/VIDEO RECORDING OR PHOTOGRAPHY INSIDE THE PRECINCT" (Dkt. No. 40 at 2), and any and all other policies, practice, procedures, and the like, whether formal or informal, that have the substance and effect of prohibiting members of the public from recording inside any NYPD precinct.

8. The City Right to Record Act means N.Y.C. Admin. C. § 14-189, *et seq*.

9. The State Right to Record Act means N.Y. Civ. R. L. § 79-P, *et seq*.[1]

10. The "Atrium Defendants" are those Defendants who were in the stationhouse atrium, or nearby, or otherwise personally physically involved in Plaintiff's arrest.

## INSTRUCTIONS

---

[1] There are two laws both technically codified at § 79-P. The definition here concerns the one regarding the right to record.

1. The answers to these requests for admissions shall specifically admit or deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter.

2. A denial shall fairly respond to the substance of the requested admission.

3. When good faith requires that a party qualify an answer or deny only a part of the matter to which an admission is requested, the party shall specify the portion that is true and qualify or deny the remainder. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny ***only*** if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny. Further, a reasonable inquiry necessarily "includes investigation and inquiry of any of defendant's officers, administrators, agents, employees, servants, enlisted or other personnel, who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response. In this connection, relevant documents and regulations must be reviewed as well." *Diederich v Dept. of Army*, 132 FRD 614, 619 (SDNY 1990).

4. The grounds for objecting to a request must be stated.

5. A party ***must not*** object solely on the ground that the request presents a genuine issue for trial.

6. Identify each Person who assisted or participated in preparing and/or supplying any of the information given in a response to or relied upon in preparing the answers to these requests for admissions.

7. The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive. The word "including" shall be construed to mean without limitation. The words "any" and "all" shall be construed so as to make the request inclusive rather than exclusive.

8. The singular shall include the plural, and vice versa.

9. Defendants are under a continuing duty to supplement their responses to these discovery requests without further request from Plaintiff.

10. The citations to evidence below are not meant to limit the Requests in any way. Rather, they are intended as a courtesy to assist Defendants in the required investigation.

## REQUESTS

*Documents.*

1. The videos attached disclosed as RODNEY_000713, RODNEY_000714, RODNEY_000715, RODNEY_000716, RODNEY_000717, RODNEY_000718, RODNEY_000719, RODNEY_000720, RODNEY_000721, RODNEY_000722, and RODNEY_000723 are true and correct copies of body worn camera videos taken by the Atrium Defendants.

2. The document disclosed at RODNEY_000691-712 is a true and correct copy of an official transcript of a press conference held by then-Mayor de Blasio and then-Police Commissioner James O'Neill on or around July 10, 2018.

*Background*

4

3. On or about July 10, 2018, as part of a set of remarks to the press, the then-Police Commissioner stated, regarding all police precincts: "Our message to New Yorkers going forward, these are your station houses."

4. In the same comments, he stated, "All the people who live, work and visit here will be able to come in and be part of their police department like nowhere else in the five boroughs. This is critical because neighborhood policing and the shared responsibility of public safety in our city require us to come together. It's a two-way street that needs to happen everywhere, out on the blocks, at local businesses, in our parks, in public spaces, and soon inside the new 4-0 public space Precinct station house."

5. The meaning a reasonable listener would take away from those and related comments was that the NYPD's "message" and "promise to all 8.6 million New Yorkers" was that in saying "going forward, these are your station houses," the City and its police department meant to convey that all New Yorker should view all precincts — including the 62nd Precinct — as "public spaces" like "our parks" or "out on the blocks."

6. On December 2, 2022, the 62nd Precinct's atrium was open to the public.

7. On December 2, 2022, a member of the public could walk into the 62nd Precinct's atrium freely.

8. On December 2, 2022, any member of the public could observe what was happening in the 62nd Precinct's atrium freely.

9. On December 2, 2022, the 62nd Precinct was a "public space" in the sense Commissioner O'Neil used that phrase as set out above.

10. Plaintiff served a timely notice of claim on the City.

11. The City noticed, and Plaintiff attended, a 50-h hearing.

12. The City did not adjust or otherwise pay Plaintiff's claims within 30 days.

13. The action was initiated within a year and 90 days of December 2, 2020.

*Events at the 62nd Precinct.*

14. Plaintiff was told, on November 30, 2020, by an Officer that she should return to the 62nd Precinct to obtain a police report for her missing glucometer.

15. A glucometer is an essential medical device for people with diabetes.

16. Plaintiff's initial entry to the 62nd Precinct on December 2, 2020 was lawful and pursuant to a general invitation to the public.

17. During the time Plaintiff was in the atrium, she did not physically stop any officer from doing their job.

18. At least one Defendant touched Plaintiff before she started screaming. *See* RODNEY_000714 at 1:19-1:24 (red circle added):



19.     The first moment Plaintiff audibly screams in RODNEY_000714 is at 1:26.

20.     The first moment a Defendant visibly grabs Plaintiff in RODNEY_000714 is at 1:24.

21.     Defendants did not have any reason to initiate the arrest of Plaintiff outside of (1) their allegation that Plaintiff was trespassing; (2) their allegation that Plaintiff violated the No Recording Policy; and (3) their allegation that Plaintiff was obstructing passage through the 62nd Precinct's atrium.

22.     At no relevant point was Plaintiff in front of or otherwise directly blocking the door between the 62nd Precinct's atrium and its main interior.

23.     Plaintiff was, instead, to the side of the door, in the atrium.

24.     The door was able to open, at least partially, the entire time Plaintiff was to the side of the door.

25. During the time Plaintiff was in the atrium, at least 5 people traveled through that door. RODNEY_000714 at 1 at 0:02 -1:15.

26. Plaintiff did not pose an insurmountable obstacle or impediment to passing through the atrium or using the door.

27. Whatever obstacle or impediment Plaintiff posed, at least five people in fact surmounted it.

28. The Atrium Defendants ultimately arrested Plaintiff because they believed she violated the No Recording Policy.

29. The Atrium Defendants believed Plaintiff was, in fact, recording.

30. The Atrium Defendants intended to arrest Plaintiff for recording.

31. The Atrium Defendants did not believe Plaintiff posed any threat of physical harm to any person.

32. The Atrium Defendants did not believe Plaintiff was, at least until they already had taken her to the ground, physically resisting arrest.

33. Plaintiff's actions in saying she was recording the Atrium Defendants, and in refusing their request to leave, were purely passive.

34. The use of a takedown or other violent force is not appropriate under NYPD's force continuum policy to arrest an individual who poses no threat and is only passively refusing orders or other requests to comply in some way.

35. The Atrium Defendants' arrest of Plaintiff violated NYPD policies regarding the use of force.

36. One of the Atrium Defendants intentionally moved Plaintiff's mask to cover her eyes.

37. No Atrium Defendant has been disciplined for their conduct on December 2, 2020 as concerns Plaintiff.

38. No Atrium Defendant has had the CCRB recommend any penalty for their conduct on December 2, 2020 as concerns Plaintiff.

***The No Recording Policy***

39. The No Recording Policy was developed and went into effect in 2018.

40. One factor in the decision to implement the No Recording Policy was the video described in Tina Moore and Amanda Woods, *NYPD bans civilians from recording video inside precincts*, NY POST (Aug. 18, 2018), available at https://nypost.com/2018/08/18/nypd-bans-civilians-from-recording-video-inside-precincts/.

41. The No Recording Policy applies equally in a precinct's atrium, its general interior, and in the private and more sensitive areas.

42. The No Recording Policy does not require any actual interference with police activity before police may stop a member of the public from recording.

43. The City intends to continue enforcing the No Recording Policy.

44. The City did not, prior to the filing of this suit, engage in any formal or informal evaluation of whether the No Recording Policy was consistent with the City Right to Record Act.

45. The City did not, prior to the filing of this suit, engage in any formal or informal evaluation of whether the No Recording Policy was consistent with the State Right to Record Act.

46. The First Amendment right to record police in the conduct of their public duties is well-established for qualified immunity purposes.

## INTERROGATORY

18. For each Response to any of the above Requests for Admission that is anything other than an unqualified admission, identify any person with knowledge of the subject of said Request(s) for Admission.

## DOCUMENT REQUEST

62. For each Response to any of the above Requests for Admission that is anything other than an unqualified admission, produce all documents concerning the subject of said Request(s) for Admission.

Dated:   October 27, 2022
         Queens, New York

**COHEN&GREEN P.L.L.C.**

/s/
_____
**BY:**   J. Remy Green

1639 Centre St., Suite 216
Ridgewood, New York 11385
t : (929) 888-9480