

May 15, 2023

Hon. Ona T. Wang
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

<u>By Electronic Filing.</u>

  Re: Case No. 22-cv-01445, <u>Rodney v City of New York, et al</u>.

Dear Judge Wang:

  As the Court likely recalls, my firm, with co-counsel, represents Plaintiff in the case above. As the Court directed in Dkt. No. 78, I write jointly with counsel for Defendants to provide an agenda for the status conference on May 18, 2023. Below is a bullet-point agenda, followed by a summary of the remaining issues after the conference directed by the Court in Dkt. No. 78.

## Agenda

I. Requests for Admission.

  A. Requests with a "legal conclusion" objection: RFAs 6, 7, 9, 16, 21, 26, 28, 29, 30, 31, 32, 33, 34, 35.

  B. Requests with a "definition" or vagueness objection:

    1. "Reasonable listener" (RFA 5);
    2. "Open to the public" (RFA 6[1]);
    3. "Freely" (RFAs 7-8);
    4. "General invitation" (RFA 16);
    5. "Insurmountable obstacle or impediment" and "surmounted" (RFA 26);
    6. "Purely passive" (RFA 33); and
    7. "NYPD's force continuum policy" and "NYPD policies regarding the use of force," (RFAs 34 and 35).

  C. Requests with a "beyond knowledge" objection (RFAs 5, 15, 28-35).

---

[1] Plaintiff notes she used this phrase in the RFA because Defendants themselves used it. *See* Dkt. No. 40 at 21 (stating the precinct was "generally held open to the public").



For each of these requests, Defendants have neither admitted nor denied the RFA. As set out below, the parties are at an impasse, and so the pending motion remains on Plaintiff's motion to compel either an admission or a denial, and to overrule Defendants' objections.

II.     Defendants' Document and Interrogatory Responses.

   A.   2015 Amendments/*Fischer v. Forrest*, No. 14-CV-1304, 2017 WL 77369 (S.D.N.Y. Feb. 28, 2017) Issues.

       1.   Stating whether documents are being withheld on the basis of objections;
       2.   Boilerplate, unexplained, and seemingly inapplicable objections;
       3.   Stating what searches have been done/what searches Defendants are refusing to do; and
       4.   Stating what is being withheld.

   B.   Documents Defendants have not produced (point of agreement).

       1.   Protective order objection; and
       2.   Continuing searches.

III.    Defendants' Allegations of Deficiencies (*see* note 14 below).


### Summary of Disputes/Matters to Address and Context

   **I.   Requests for Admission.**

*Plaintiff's Position*

   *A.   Plaintiff has attempted every way she can to get this information short of unnecessary, voluminous discovery on issues not really in dispute.*

Plaintiff's motion relating to her requests for admission (or "RFAs") remains unresolved. As the Court may recall, Plaintiff made a motion at Dkt. No. 74, which Defendants opposed at Dkt. No. 77, and the Court "directed [the parties] to meet and confer on whether some of the information Plaintiff seeks in her Requests for Admission could be more readily obtained through depositions or other discovery." Dkt. No. 78. That meeting took place on April 5, 2023.

Before that meeting, as set out in the briefing, the parties had impasses on RFAs 5-10, 15-16, 21, 26-35, and 37. Following that meeting, Plaintiff served a set of requests — as contemplated by the Court — that attempted to address Defendants' objections through other discovery devices

     Page 2 of 13

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



where possible, and reworked RFAs, at Defendants' suggestion at the meeting.  Defendants also agreed to reconsider their position about RFA 10.[2]

As set out below, however, all those impasses remain other than to RFAs 10 and 37, except that now, Defendants have interposed improper objections to a further set of RFAs, numbered 16(a) & (b), 26(a)-(c), 27(a) & (b), 31(a) & (b) and 33(a) — which each were propounded by Plaintiffs to avoid certain of Defendants' objections.  *See* **Exhibit 1** (the "Follow On Requests") and **Exhibit 2** (the "Follow On Responses").  Defendants asked for an extension of time to answer the Follow On Requests until May 12; and then again to May 15, which Plaintiff consented to on the understanding that this letter would need to still be filed that day.  Defendants served the Follow On Responses on May 15, 2023.

At the meeting, the parties agreed that the remaining disputes can be categorized as (1) disputes over whether the RFAs sought an admission of the application of law to fact or admission of (a) a bare, abstract legal conclusion or (b) an opinion; (2) disputes over whether terms were defined or vague; and (3) disputes over whether (in essence) "beyond knowledge" is a legitimate objection to an RFA without any statement of the inquiry made or why the information is beyond knowledge.  *See generally,* Dkt. Nos. 74 and 77.  The core of theses dispute is that for each of these RFAs, Defendants assert it would be improper for them to ***either*** admit or deny the RFA — while Plaintiffs are concerned that a refusal to deny the RFA may disrupt (or at least, muddy) the cost-shifting entitlement for unreasonable denials,[3] and believe that if Defendants have to actually answer these RFAs, the response will inevitably be an admission.

Also at the meeting, the parties went through each RFA, and discussed whether some other discovery device would be sufficient to accomplish the goal of the RFAs, particularly in light of the fact that the parties are agreed that "[u]nlike other discovery devices, [the] requests for admission" as used here were "not designed to discover facts," but rather, ask whether the parties agreed on facts Plaintiff believes she already knows and are not genuinely in dispute.  Jeffrey S. Kinsler, *Requests for Admission in Wisconsin Procedure: Civil Litigation's Double-Edged Sword*, 78 Marq. L. Rev. 625, 632 (1995).  After the meet and confer, Plaintiff served a set of additional requests (e.g., the Follow On Requests) that covered those requests where (1) Defendants suggested a reworded RFA might address their objections or (2) Defendants suggested use of a contention interrogatory instead might address their objections.  Those addressed, in turn:  (1) with reworded/reframed RFAs, previous RFAs 16, 26, 27, 31, 33, and 37; and (2) with contention interrogatories, RFAs 5, 6, 7, 8, 15, 21, 32, 34, and 35.  Except for those, the parties individually confirmed impasses on each RFA.

---

[2] By email in the afternoon on Monday, May 15, 2023, Defendants they would admit RFA 10, with the formal admission to be served later.

[3] *See, e.g.,* Thomas W. Evans, *Admissions Practice*, 62 St. John's L. Rev. 475, 477 (1988) ("by shifting the obligation of attorney's fees to the party forcing unnecessary proof, the more frequent resort to admissions practice should have the effect of deterring unnecessary litigation."); 1970 Advisory Comm. N., Fed. R. Civ. P. 36(a) ("[t]he very purpose of" RFAs "is to ascertain whether the answering party is prepared to admit or regards the matter as presenting a genuine issue for trial" and [t]he sanction for failure of a party to inform himself before he answers lies in the award of costs after trial.").

COHEN&GREEN                                                                                              Page 3 of 13

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  · FemmeLaw.com



From Plaintiff's perspective, Defendants' responses to the Follow On Requests resulted in little movement.  The RFAs — as well as the additional RFAs in the Follow On Requests — largely remained impasses.[4]  Nor, in objecting wholesale to the interrogatories, did Defendants identify any *other* form in which "some of the information Plaintiff seeks in her Requests for Admission could be more readily obtained" (Dkt. No. 78) — and indeed, insisted, essentially, that Plaintiff abandon interrogatories altogether in order to ***maybe*** get what Defendants should simply admit.[5]  And it is frankly hard to imagine the City means seriously that it would produce deponents for depositions in situations where depositions could be avoided, particularly given their unwillingness to even consent to a single additional interrogatory beyond the *presumptive* limit.

        B.        *The RFAs explicitly serve to narrow this litigation, or at least put the cost of its breadth on Defendants.*

Defendants' specific objections are on their face without merit.  They are even somewhat hard to follow — for example, it is hard to see how RFA 6 is so hard to answer when Defendants have even said ***literally the same thing*** in their papers.  *Compare, e.g.,* Dkt. No. 40 at 21 (stating the precinct was "generally held open to the public") *with* RFA 6 ("the 62nd Precinct's atrium was open to the public").  So too with their claim that "open to the public" is so vague and without definition that "definition of these terms may not be understood in the same way by both writer and respondent" (*ante* at 8), since, presumably, Defendants understood the term when they themselves wrote it.

Instead, what Plaintiff focuses on below is why forcing a party to answer is preferable — and indeed, the design of Rule 36.  "Rule 36 promotes truth-seeking in litigation and efficiency in

---

[4] For clarity, there are no longer impasses on RFAs 27 and 37, since Defendants admitted all of the Follow On Requests associated with them (e.g., Follow On RFAs 27(A) and (B); and 37(a)-(d)).  Defendants denied Follow On RFA 26(B), but refused to answer 26(A) and 26(C), so pursuant to the instructions, RFA 26 remains in force.  *See* Ex. 1 at 3.

[5] While the parties had initially discussed that perhaps contention interrogatories could surmount Defendants' objections, in order to avoid prejudice to the use of interrogatories on issues actually in dispute, Plaintiffs' instructions in the Follow On Requests stated:

> Because these interrogatories are being served pursuant to a Court Order, and are intended to address "whether some of the information Plaintiff seeks in her Requests for Admission could be more readily obtained through depositions or other discovery" (Dkt. No. 78) in a manner "ordered by the court" (Fed. R. Civ. P. 33(a)), these interrogatories do not count towards Plaintiff's 25 interrogatory presumptive limit. If Defendants object to this, please state as much in writing before answering any interrogatory. Plaintiff will withdraw any interrogatory rather than use one of her presumptive limit of 25 on these issues. For the same reason, Plaintiff has used letter-identifiers for these interrogatories.

Ex. 1 at 4.  Defendants declined to answer any interrogatory, stating for the first time on May 15, 2023, in response to each Follow On Interrogatory, "Defendants further object to Interrogatory A and note that they are not served pursuant to a Court Order and in toto are in excess of the presumptive limit under Fed. R. Civ. P. 33. As such, per plaintiff's Interrogatory Instruction No. 1, defendants construe plaintiff as withdrawing Interrogatories A-H."  Ex. 2 at 10-17.



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t: (929) 888.9480  ·  f: (929) 888.9457  ·  FemmeLaw.com



dispensing justice by facilitating proof with respect to issues that cannot be eliminated from the case and narrowing the issues by eliminating those that can be." *Riv. Light V, L.P. v Lin & J Intl., Inc.*, 299 FRD 61, 63 (SDNY 2014) (cleaned up).  That is because "by shifting the obligation of attorney's fees to the party forcing unnecessary proof, the more frequent resort to admissions practice should have the effect of deterring unnecessary litigation."  Thomas W. Evans, *Admissions Practice*, 62 St. John's L. Rev. 475, 477 (1988).  And in turn, that makes "the key to enforcement [] rule 37(c), which empowers the court to award reasonable expenses, including attorney's fees, to a party who has been put to his proof by an unreasonable failure to admit."  *Id.* at 480.

Put simply, "[t]he very purpose of" RFAs "is to ascertain whether the answering party is prepared to admit or regards the matter as presenting a genuine issue for trial."  1970 Advisory Comm. N., Fed. R. Civ. P. 36(a).[6]  That is exactly what Plaintiff is trying to do here.  And the Rule requires a party to make a "reasonable inquiry and secure such knowledge and information as are readily obtainable by him."  *Id.*  She is doing so because "[t]he sanction for failure of a party to inform himself before he answers lies in the award of costs after trial."  *Id.*[7]  The Rule's structure, in this regard, has outlived many other older parts of the Federal Rules.  Even after the massive overhaul of discovery provisions in the 2015 Amendments, Rule 36 remains substantially the same as it was after the 1970 Amendments.  *See, e.g.,* 1987, 1993, and 2007 Advisory Comm. N., Fed. R. Civ. P. 36(a).  Nor is the cost-shifting dynamic of the Rule an accident.  In fact, the unreasonable-denial-based cost-shifting mechanism in Rule 36 and 37 dates back to the Rule's origin in former Equity Rule 58.[8]  That is, Rule 36's cost-shifting mechanism is one of the longest standing provisions in all of the Federal Rules, predating the Rules themselves.

Plaintiff did not seek to uncover information in the first instance with her RFAs.  In fact, she believes none of the RFAs are subject to any reasonable dispute.  But if she must be "put to [her] proof" on them "by an unreasonable failure to admit" (62 St. John's L. Rev. at 480) she is seeking the benefit of the Rule.  And Defendants have hampered that process by refusing to admit or deny the RFAs.

---

[6] Defendants ignore this, and literally the first sentence of Defendants' position objects that the RFAs seek "specifically to establish facts which are in substantial dispute."  *But see contra*, 1970 Advisory Comm. N., Fed. R. Civ. P. 36(a) (when a party views the fact in an RFA as "in dispute," "[t]he proper response in such cases is an answer.).  That is, Defendants tacitly admit their objections are frivolous.

[7] Hence, Wright and Miller's caution that "[p]ostponing disposition" of an RFA motion "should not be done automatically, however, since an important purpose of admissions is to spare the parties the expense of making discovery on a matter that will not be disputed." Wright & Miller, Fed. Prac. & P. § 2255 (2022).

[8] Former Equity Rule 58 read:

> "By a demand served ten days before the trial, either party may call on the other to admit in writing the execution or genuineness of any document, letter or other writing, saving all just exceptions; and if such admission be not made within five days after such service, the costs of proving the document, letter or writing shall be paid by the party refusing or neglecting to make such admission, unless at the trial court shall find that the refusal or neglect was reasonable."

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Instead, "[u]nlike other discovery devices, [the] requests for admission" used here were "not designed to discover facts." Kinsler, 78 Marq. L. Rev. at 632. They were intended "to ascertain whether the answering party is [(1)] prepared to admit or [(2)] regards the matter[s] as presenting a genuine issue for trial." 1970 Advisory Comm. N., Fed. R. Civ. P. 36(a). Thus, further use of **other** discovery devices does not move the ball forward here.

Moreover, the specific objections Defendants apparently want to stand on are hard to understand outside a general objection to admitting nearly anything. For example:

- Plaintiff seeks a concession that the 62nd Precinct's atrium was open to the public on December 2, 2022. RFA No. 6. Defendants have even said **literally the same thing** in their papers. *See* Dkt. No. 40 at 21 (stating the precinct was "generally held open to the public"). If Defendants nonetheless insist Plaintiff must waste interrogatories and deposition time, time drafting appropriate 30(b)(6) notices about what precincts were open to the public and when, and the like on this, Plaintiff should not ultimately bear that cost burden because there is absolutely no "reasonable ground" for the City "to believe that it might prevail on the matter." Fed. R. Civ. P. 37(c)(2). The City's unambiguous position — asserted in its own motion to dismiss — is the text of this RFA. Why it cannot admit that is anyone's guess.

- Plaintiff seeks a concession that a glucometer is an essential medical device for people with diabetes. RFA No. 15. That conclusion is common knowledge, well-supported in the medical literature,[9] and — frankly — common sense. Indeed, it is something the City itself has asserted elsewhere. *See, e.g.,* "Diabetes," NYC Health ("Treatment [for diabetes] includes ... routine home blood glucose testing and insulin injections."). And the City has been ordered, as part of an injunction settlement, to (among other things) provide "training to carry out additional responsibilities such as blood glucose monitoring." Settlement, *M.F. v. NYC DOE*, 18-cv-6109 (Dkt. No. 131-1). The claim that knowing whether glucometers are an essential part of diabetes care is beyond the City's knowledge beggars belief.

    Again, there is no reason the City cannot admit this or deny it and insist on putting Plaintiff to her proofs. But if it wants to force Plaintiff to put on proofs of this, because of the expense of such proofs,[10] Plaintiff is entitled to force a denial — and thus trigger Rule 37. *Happ*, 295 F Supp 2d at 193.

---

[9] *See, e.g.,* Barry H. Ginsberg, *Blood Glucose Monitoring: Necessary and Sufficient?*, 1 J. DIABETES SCI. TECH. 612, 612 (2007) ("There is little doubt of the need for self-monitoring of blood glucose (SMBG) in patients using insulin.").

[10] Courts have specifically approved this method of avoiding — or at least, shifting the cost of — potential experts. *See, e.g., SEC v Happ*, 295 F Supp 2d 189, 193 (D Mass 2003) (awarding costs and fees where "defendants' experts were waiting in the courtroom to testify as to the completeness of the phone records" because of a refusal to admit until trial, and finding "SEC counsel's actions imposed on Happ and his counsel the necessity, if they wished to assert their rights, of developing for use at trial adequate evidence of completeness"), *aff'd*, 392 F.3d 12 (1st Cir. 2004).



Page 6 of 13

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Additionally, it is worth noting that on all these points, Plaintiff has already served other discovery with little success (*see* Point II below).  So, part of the purpose of the RFAs here is to narrow, among other things, (1) lines of questioning at fact depositions, (2) future *Monell* discovery, and (3) 30(b)(6) notices to what genuinely needs to be covered.  For example, there is little benefit to forcing a dozen repetitive depositions at which ***each*** individual person[11] who was part of the assault on Plaintiff if it turns out the basic fact is not in dispute.  Plaintiff does not need to depose ***each and every*** one of the dozens of officers in the lobby if Defendants admit (for example) that "No agent of the City believed Plaintiff posed a threat of physical harm to any person before she was arrested on December 2, 2020."  RFA 31(b).[12]  And the Rules permit Plaintiff to force Defendants to make that choice.

The RFAs here sought to streamline — not expand — discovery.  Rule 36 operates intentionally by turning stonewalling into a cost a recalcitrant party must bear for themselves.  The design of the post-1970 version of Rule 36 is one of "pressing an attorney to sufficiently learn his own case in order to respond to a request to admit," or facing certain consequences.   Evans, 62 St. John's L. Rev. at 485.  That is what Plaintiff sought to do here.  And thus, we ask that the Court — as the rule arguably says it "must" — evaluate Defendants' objections on their merits, and either (1) sustain them or (2) order a simple admission or denial.

The last few paragraphs of the late Thomas W. Evan's law review piece on Rule 36 — an early(ish) reflection on the changes made in the 1970 Amendments — put it well:

> "Admissions practice can be implemented by a single party who finds the procedure to work in his particular interest. If his adversary insists on playing the conventional game, and forces the unnecessary pursuit of information by positing a false issue—or an issue in which it is highly unlikely that factual support can be mustered-the court can later order the offending party to pay the costs, including attorney's fees, involved in the fruitless search. Under admissions practice, wars of attrition will henceforth involve a considerable financial risk. Admissions practice thus moves in the direction of changing the 'American rule,' whereby attorney's fees have been borne by the respective parties regardless of the result of the litigation. The American rule emerged in colonial days as a meaningful part of our indigenous independent spirit. Every American would have his day in court. But admissions practice introduces a salutary middle ground.
>
> Fees, unlike under the British system, are not simply taxed to the losing party. Here they are assessed to the party causing unnecessary proof. In short, admissions practice presents a

---

[11] Defendants have separately identified each of the Atrium Defendants, and the parties agreed to table naming them to avoid disrupting the pending motion to dismiss.

[12] Defendants' objection that this somehow seeks the "collective opinion" of a group is misguided, not the least because of the so-called "collective knowledge" doctrine and because the ***City*** has the collective knowledge — for the *respondeat superior* claims — of its agents.

 Page 7 of 13

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t: (929) 888.9480  ·  f: (929) 888.9457  ·  FemmeLaw.com



useful, perhaps ideal, method of deterrence of discovery abuse, while carefully retaining the traditional right to a day in court. …

Although attorneys may never tire of treating litigation as a game, it is time, as Judge Medina observed, to use the pretrial and the discovery conferences for 'putting the cards on the table.' In such a vein, admissions practice can be utilized to lead to the less protracted and more efficient resolution of disputes, as the original draftsmen of the Federal Rules of Civil Procedure intended long ago."

Evans, 62 St. John's L. Rev. at 492.  Just so:  "[A] defendant like [the City] that wants to stand on formalities, for whatever reason, is entitled to do so, as long as it is willing to pay for the privilege." *Troxell v Fedders of N. Am.*, 160 F3d 381, 383 (7th Cir 1998) (analyzing the analogous cost-shifting provision in Rule 4(d)).  And the City clearly wants to stand on formality.

In sum, at this stage, since there are no answers — and only objections —on the contested RFAs, Plaintiff believes the Court should either (1) "find[] [Defendants'] objection[s] justified" or "order that an answer be served." Fed. R. Civ. P. 36(a)(6).  And for the reasons above and in the initial motion, Plaintiff believes it is clear the objections Defendants have lodged are wholly without merit, and premised on a version of the Rules that has not existed for more than half a century.  And since Defendants' position here is not justified at all, let alone substantially justified, the Court should impose the mandatory remedies in Rule 37.

### *Defendants' Position*

Here, plaintiff seeks specifically to establish facts which are in substantial dispute or which are beyond the scope of Rule 36.  The outstanding issue on requests for admission pertains to three broad categories where plaintiff alleges the Court should direct defendants to respond, (1) legal conclusions, (2) definitions, and (3) information beyond the knowledge of the defendants.

First, plaintiff alleges that defendants' objections as to requests for admission Nos. 6, 7, 9-10, 16, 21, and 26-35 pertaining to legal conclusions as are improper and that defendants must provide responses to them. Courts have held that requests for admission requesting a party to draw purely legal conclusions from specified operative facts are valid objections. See <u>EEOC v. Bloomberg L.P.</u>, 2010 U.S. Dist. LEXIS 80113 at *5-6 (S.D.N.Y. Aug. 4, 2010).  In these instances, plaintiff seeks not application of law to facts or opinions about same, but rather requesting defendants to draw legal conclusions. See <u>Carver v. Bank of N.Y.Mellon</u>, 2018 U.S. Dist. LEXIS 164400 at *5 (S.D.N.Y. Sep. 25, 2018) (noting that "requests for admission cannot be used to require a party to admit the truth of a legal conclusion.") Defendants further note that as to the majority of these specific requests, defendants objected on additional grounds, including the ambiguity of terms used, and referencing John Doe defendants and their collective group opinions.  As such, defendants' inability to admit or deny these requests is proper.

Second, as to the request that defendants be compelled to respond to various requests for admission for items objected to on the basis of 'definitions,' defendants objections are valid.  In these

COHEN&GREEN                                                                                       Page 8 of 13

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



instances, plaintiff's use of various phrases, including "a reasonable listener," "open to the public," "freely," and "general invitation," are vague. These are not general terms, and the dependency of their meaning fails to satisfy the requirement that requests for admission state facts singly so that they can easily be admitted or denied. T. Rowe Price Small-Cap Fund, Inc., 1997 U.S. Dist. LEXIS 7049, at *21; see Dubin v. E.F. Hutton Group, Inc., 125 F.R.D. 372, 375-76 (S.D.N.Y. 1989); Thalheim v. Eberheim, 124 F.R.D. 34, 35 (D. Conn. 1988); Herrera v. Scully, 143 F.R.D. 545, 549 (S.D.N.Y. 1992). Indeed, the definition of these terms may not be understood in the same way by both writer and respondent, rendering it impossible to respond to these requests for admission.

Third, as to the request that defendants be compelled to respond to requests to admit which were objected to as beyond knowledge available to defendants, defendants objections are valid. Defendants objected to a number of requests that sought the collective opinion of "Atrium Defendants." What constitutes a "reasonable inquiry" and what material is "readily obtainable" is a relative matter that depends upon the facts of each case. See Dubin v. E.F. Hutton Group Inc., 125 F.R.D. 372, 374 (S.D.N.Y. 1989). Here, this objection seeks far more than a more than a "reasonably inquiry," as the requests themselves do not specify John Doe defendants, or individuals identified by defendants, and moreover, seek to apply a collective opinion by all defendants on a single request for admission. Moreover, plaintiff seeks to bind parties who have not yet been named to this suit to admissions and denials. As to plaintiff's argument that defendants should respond to a request for admission that a "glucometer is an essential medical device for people with diabetes[,]" again, this request is simply beyond the scope of the parties knowledge as to the case. None of the named defendants or John Doe offices are doctors, and they are not the proper parties from whom to obtain this information.

Defendants have proposed and discussed possible alternative discovery methods with plaintiff, including depositions.

## II. 2015 Amendments.

In anticipation of the conference, Plaintiff sent a request to meet and confer on Defendants' broader approach to discovery, and specifically (1) Defendants' failure to serve responses that accord with the 2015 amendments to the Rules and (2) outstanding document productions that the initial responses indicated would be produced later (the request attached as **Exhibit 3**; with Defendants' formal responses as **Exhibit 4**). At the meet and confer on May 15, 2023, Defendants indicated unambiguously that they believe their current responses completely comply with the 2015 amendments and indicated that they will not be amending anything.

    a.   2015 Amendments.

### *Plaintiff's position*.

From Plaintiff's perspective, the basic issue is that — following the discovery-reform focused 2015 amendments to the Federal Rules — "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection" and that an "objection to part

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). Thus, since then, Courts have issued any number of warnings about the consequences of failing to do so.  For example, in *Fischer*, the Court warned, "[f]rom now on in cases before this Court, any discovery response that does not comply with Rule 34's requirement to state objections with specificity (and to clearly indicate whether responsive material is being withheld on the basis of objection) will be deemed a waiver of all objections (except as to privilege)."  *Fischer v. Forrest*, No. 14-CV-1304, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017).

Defendants' responses, however, do not follow those rules, and are instead almost entirely — if not simply entirely — empty boilerplate.  Rather, their position appears to be that they have found a way to do boilerplate that complies with the 2015 Amendments — notwithstanding the 2015 Amendments' clear abolition of that tactic.  Several examples are set out in Ex. 3, but generally speaking:

- Defendants repeatedly claim requests are vague, or have some other boilerplate problem, but provide no explanation;
- Defendants never state which objections are the basis for refusing to answer a request;
- Defendants never state whether their search has been limited on the basis of an objection;
- Defendants do not state whether they have withheld any responsive materials on the basis of any specific objections; and
- Defendants never state which documents they have withheld.

Some of this is particularly difficult to parse because it is hard to imagine — for example — that Defendants seriously believe there is any concern about "doctor-patient" or "psychotherapist-patient" privilege in producing "Evidence.com audit trails and metadata for any body-worn camera footage produced" (Doc. Req. 3; Ex. 4 at 20), yet Defendants include that objection without any explanation.

Other objections, while less facially absurd, still are confounding.  For example, Defendants assert that same request seeking audit trail logs for any body camera footage Defendants produce is "vague, ambiguous, overbroad, not limited in time, overbroad [again], and" also to the extent it fails to satisfy the pre-2015 discovery standard (that is, Defendants quote the no-longer-in-force "reasonably calculated" standard).  It would likely take more than 30 single-spaced pages to actually detail these issues.  *See, e.g.,* [Exhibit](#), *In re New York City Policing During Summer 2020 Demonstrations*, 20-cv-8924, Dkt. No. 163-4 (an instance in which the undersigned attempted to outline every deficiency).  It should not take dozens of hours and motion practice just to get to what the Rules dictate is square one in discovery.

Since this is a global issue, Plaintiff had initially intended to raise it in phase 2 — to avoid having to re-raise and re-litigate this issue once Defendants served responses to the *Monell* discovery

COHEN&GREEN

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



requests.[13]  However, given that this conference included an invitation to provide a conference agenda, Plaintiff raised this issue since the parties will be in Court anyway, and we can try to avoid a do-over once *Monell* discover is unstayed.

Plaintiff asked for a meet and confer on this issue on May 3, and when Defendants did not respond, followed up on May 9.  Eventually, the parties agreed to a meeting on May 15, 2023, which Defendants' counsel said was the only time he was available.  At that meeting, Defendants took the (frankly, stunning) position that their boilerplate "complied with the 2015 Amendments."  Plaintiff clarified that and double-checked Defendants ***really*** intended to die on this hill.  They said do.

Given the total lack of specificity in any objection — and the clarity with which Defendants have flouted the command of the Rules post-2015 — Plaintiffs believe the Court should find all objections beyond privilege waived.  In *Fischer*, Judge Peck tried to send a clear "discovery wake-up call to the Bar in this District." 2017 US Dist LEXIS 28102, at *2.  Yet, the City has not heard that call.  In every City-defendant case Plaintiff's counsel handles, the initial response — like this one — is complete boilerplate that has nothing to do with the case.

In sum, the Court can — and Plaintiff submits, should — follow through on what *Fischer* forewarned:

> "It is time for all counsel to learn the now-current Rules and update their 'form' files. From now on in cases before this Court, any discovery response that does not comply with Rule 34's requirement to state objections with specificity (and to clearly indicate whether responsive material is being withheld on the basis of objection) will be deemed a waiver of all objections (except as to privilege)."

*Fischer*, 2017 US Dist LEXIS 28102, at *9.  The City continues to use its "'form' files" (*id.*) unabated, and indeed, in this case, asserted that the plainly pre-2015 form file was what it wanted to take to the mat.  Defendants were absolutely unambiguous at the meet and confer that they believed their responses complied with the 2015 amendments, but could not explain how.  There is no reason not to follow through on *Fischer*'s warning here — and that follow through can be limited to the phase 1 responses, making this case a perfect vehicle to try to make the City finally hear that "wake-up call." 2017 US Dist LEXIS 28102, at *2.

### ***Defendants' position.***

Defendants are considering the issues raised by plaintiff with respect to discovery responses and will provide a more substantive response to the Court tomorrow.

b.  Outstanding discovery.

---

[13] To Plaintiff's counsel's knowledge, the City has never served 2015 amendment compliant discovery in its first response.



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t: (929) 888.9480  ·  f: (929) 888.9457  ·  FemmeLaw.com



Certain of Defendants' responses either (1) stated Defendants needed a protective order before production or (2) stated that Defendants were still completing their searches and would supplement later. Plaintiff followed up on these requests on May 3 in Ex. 2, (1) pointing out that there was already a protective order (since this is a 1983 Plan case) and (2) asking Defendants to provide the current status of the outstanding searches, along with a date for production. The parties have agreed that Defendants will provide all the documents related to (1) on Friday, May 19, 2023; and after Plaintiffs provide a list of requests where Defendants said there were outstanding searches, Defendants will provide an update and estimated production date on documents related to (2) on Friday, May 19, 2023.

### III. Plaintiff's outstanding discovery:[14]

*Defendants' position:*

Defendants, in a meet and confer on May 15, 2023, raised a number of outstanding discovery issues with plaintiff, namely requests for information pertaining to prior arrests (Interrogatory No. 10), information pertaining to prior and subsequent lawsuits (Interrogatory No. 12), information and releases pertaining to prior and subsequent healthcare treatment plaintiff has received in the past ten years (Interrogatory No. 14, Document Request Nos. 11, 13), documents pertaining to plaintiff's lost glucometer (Document Request No. 9), and releases pertaining to plaintiff's claim for loss of earnings (Document Request Nos. 15, and 17. The parties continue to confer regarding these requests and defendants will provide an update as to any outstanding discovery in advance of the May 18, 2023 conference.

As always, we thank the Court for its time and consideration.

Respectfully submitted,

/s/
_____

J. Remy Green
*Honorific/Pronouns: Mx., they/their/them*

---

[14] Plaintiff objects to the inclusion of this. Defendants sprang this issue on Plaintiff, with no notice whatsoever, during today's live meet and confer. Defendants still have not even sent a written request to meet, let alone teed the issue up. Every other issue herein has been the subject of weeks, if not months, of written exchanges. This is simply not ripe, and is instead an attempt to distract from the merits of the other issues. Plaintiff, of course, has no objection to meeting about any purported deficiency, but the first step in doing so is for Defendants *to ask for a meeting*.

As to a written position, Plaintiff received Defendants' position on this issue for the first time at 4:17 p.m. today, despite having served draft versions of this letter starting on May 1, 2023. During this morning's meeting, we said we would object to including this issue as a tagalong dispute, given Defendants' failure to raise it at any time before the date of the deadline — at a meet and confer Plaintiff asked for and Defendants insisted be delayed until the day of the deadline. Thus, Plaintiff does not have a position other than "we need to actually understand what Defendants believe is deficient, and are happy to try to address it."

COHEN&GREEN                                                                                      Page 12 of 13

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com