UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X   Case No.: 22-cv-01445
PATRICIA RODNEY,

                                                  Plaintiff,          **SECOND AMENDED
                                                                      COMPLAINT**

                          -against-

THE CITY OF NEW YORK, POLICE SERGEANT              **PLAINTIFF DEMANDS
HERIBERTO HERNANDEZ (TAX I.D. 932167), POLICE     A TRIAL BY JURY**
OFFICER TAMARA CLEMENT (TAX I.D. 962322), POLICE
OFFICER JOHN RAMOS (SHIELD NO. 15813), POLICE
OFFICER PELLY CASIMIR (SHIELD NO. 7722), POLICE
OFFICER MICHAEL OGGERI (SHIELD NO. 29115),
POLICE OFFICER ANGELIESSE ACEVEDO (SHIELD NO.
27313), POLICE ROBERT MUI (SHIELD NO. 8191),
POLICE OFFICER JOHNANDREW CUSOMANO (SHIELD
NO. 22091), POLICE OFFICER STEVEN VITELLI (SHIELD
NO. 22848), POLICE SERGEANT ERNEST HERNANDEZ,
AND JOHN OR JANE DOE NO. 10,[1]

                                                  Defendants.
------------------------------------------------------------------------X

        Plaintiff, PATRICIA RODNEY, by her attorneys, COHEN&GREEN PLLC, hereby

complains of the defendants, upon information and belief, as follows:

        1.      When Plaintiff Patricia Rodney lost her glucometer, her insurance company told

her she needed to provide a police report in order to have it replaced.  The interaction the insurance

company demanded — between citizens and the police — should be simple, straight-forward, and

unfraught.

        2.      But with the NYPD, no interaction is.

        3.      Instead of getting a simple piece of paper, Plaintiff was brutalized, repeatedly lied

to, and hospitalized.

        4.      NYPD's excuse for the brutalization is even a bit ironic:  the fact that Plaintiff was

---

[1] Numbering preserved from earlier versions for clarity and consistency; John and Jane Does 1-9 have been identified and named.

brutalized because she dared to peacefully and unobtrusively record police actions demonstrates the dire need to reaffirm the right to record.

5.      It is not hard to imagine that, if Plaintiff had not been lucky enough to have what happened to her captured by countless body cameras, the NYPD would deny the worst of the abuses she faced (including having an officer callously and casually pull her mask over her eyes for no reason at all).

6.      But all of it *is* on film.  And the City Council has long since made the legal decision that citizens must be allowed to record all the public activities of the NYPD.

7.      So, as set out below, Plaintiff should recover for her brutalization — and the Court should enjoin future enforcement of the NYPD's on stationhouse recording ban as both facially unconstitutional and unauthorized under City law.

## PARTIES, VENUE AND JURISDICTION

8.      At all times mentioned herein, plaintiff, Patricia Rodney, was an adult resident of Kings County, in the State of New York.

9.      At all relevant times mentioned herein, defendant, City of New York, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

10.     At all times hereinafter mentioned, defendant, POLICE SERGEANT HERIBERTO HERNANDEZ (TAX I.D. 932167), was an adult man employed by the City of New York as a member of the NYPD assigned to the 62nd Precinct of the NYPD. Defendant Hernandez is sued herein in his official and individual capacities.

11.     At all times hereinafter mentioned, defendant POLICE OFFICER TAMARA CLEMENT (TAX I.D. 962322), was an adult employed by the City of New York as a member of the NYPD assigned to the 62nd Precinct of the NYPD. Defendant Clement is sued herein in her official and individual capacities.

12.     At all times hereinafter mentioned, defendant POLICE OFFICER JOHN RAMOS (SHIELD NO. 15813), was an adult employed by the City of New York as a member of the NYPD assigned to the 62nd Precinct of the NYPD. Defendant Ramos is sued herein in his official and individual capacities.

13.     At all times hereinafter mentioned, defendant POLICE OFFICER PELLY CASIMIR (SHIELD NO. 7722), was an adult employed by the City of New York as a member of the NYPD assigned to the 62nd Precinct of the NYPD. Defendant Casimir is sued herein in her official and individual capacities.

14.     At all times hereinafter mentioned, defendant POLICE OFFICER MICHAEL OGGERI (SHIELD NO. 29115, was an adult employed by the City of New York as a member of the NYPD assigned to the 62nd Precinct of the NYPD. Defendant Oggeri is sued herein in his official and individual capacities.

15.     At all times hereinafter mentioned, defendant POLICE OFFICER ANGELIESSE ACEVEDO (SHIELD NO. 27313), was an adult employed by the City of New York as a member of the NYPD assigned to the 62nd Precinct of the NYPD. Defendant Acevedo is sued herein in his official and individual capacities.

16.     At all times hereinafter mentioned, defendant POLICE ROBERT MUI (SHIELD NO. 8191), was an adult employed by the City of New York as a member of the NYPD assigned

to the 62nd Precinct of the NYPD. Defendant Mui is sued herein in his official and individual capacities.

17.     At all times hereinafter mentioned, defendant POLICE OFFICER JOHNANDREW CUSOMANO (SHIELD NO. 22091), was an adult employed by the City of New York as a member of the NYPD assigned to the 62nd Precinct of the NYPD. Defendant Cusomano is sued herein in his official and individual capacities.

18.     At all times hereinafter mentioned, defendant POLICE OFFICER STEVEN VITELLI (SHIELD NO. 22848),POLICE OFFICER JOHN RAMOS (SHIELD NO. 15813), was an adult employed by the City of New York as a member of the NYPD assigned to the 62nd Precinct of the NYPD. Defendant Vitelli is sued herein in his official and individual capacities.

19.     At all times hereinafter mentioned, defendant, POLICE SERGEANT ERNEST HERNANDEZ, was an adult man employed by the City of New York as a member of the NYPD assigned to the 62nd Precinct of the NYPD. Defendant Hernandez is sued herein in his official and individual capacities.

20.     At all times hereinafter mentioned, defendant John or Jane Doe 10, was an adult employed by the City of New York as a member of the NYPD and was the person (or persons) with final say and decision-making authority in enacting the City-wide ban on recording in police stations in 2018.

21.     The Doe Defendants are sued herein in their official and individual capacities. Plaintiff is not currently aware of the true names of the Doe Defendants.

22.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

23.     Venue is proper pursuant to 28 U.S.C. § 1391, et seq., in the Southern District of

New York, where the defendant City of New York reside, and where, upon information and belief, the policy barring recording in NYPD stations was developed, finalized, and implemented.

24.     This case is not appropriate for inclusion in the § 1983 Plan (Local Rule 83.10) because as set out below, Plaintiff is seeking systemic equitable reform (specifically, that the Court enjoin in whole the unauthorized and unconstitutional ban on recording in NYPD stations).

25.     Plaintiff timely served a Notice of Claim on the municipal defendant and complied with all conditions precedent to commencing an action under state law.

26.     At least thirty days have elapsed since service of plaintiff's Notice of Claim and adjustment and payment thereof has been neglected or refused.

27.     This action has been initiated within one year and ninety days of the accrual of plaintiff's claims pursuant to New York State Law.

## **RELEVANT FACTS**

### *Defendants' Assault of Plaintiff.*

28.     On December 2, 2020, at about 5:50 p.m. plaintiff was lawfully present inside of the stationhouse of the 62nd NYPD Precinct to obtain a police report.

29.     A few days prior, on November 30, 2020, Plaintiff went to the stationhouse to file a police report for her missing glucometer.

30.     Plaintiff has diabetes and she was instructed by her insurance company that in order for her to obtain a new glucometer, she was first required to file a police report for the missing glucometer.

31.     Plaintiff's insurance company instructed her that they required her to fax to them an actual copy of the police report.

32.     Plaintiff is required to check her blood sugar about 5 times a day, and she works in

a high-risk environment for COVID.

33.     Plaintiff also has a history of high blood sugar, and has been hospitalized for it in the recent past.

34.     Complying with the insurance company's directives to obtain her life saving treatment, on November 30, 2020, plaintiff spoke to a police officer inside of the 62nd Precinct stationhouse in attempts to get her police report.

35.     This police officer wore a blue NYPD uniform, looked to be between 20-30 years old, presented as a man, looked young, slim, and had short brown hair.

36.     Plaintiff filled out the police report as required and then asked this police officer for a copy of the report so that she could fax it to her insurance company and obtain her glucometer.

37.     The police officer responded to Plaintiff's request by telling her, in sum and substance, "I can't give you a copy of this paper you filled out. I have to make an official report. You can come back Wednesday to get this report."

38.     That Wednesday was December 2, 2020.

39.     On December 2, 2020, as instructed, Plaintiff returned to the stationhouse to obtain her police report.

40.     One of the Defendants, upon information and belief, either Defendant Casimir or Acevdeo, spoke to plaintiff inside the stationhouse and refused to give plaintiff a copy of the police report, despite the fact that when Plaintiff filed the police report another officer specifically told plaintiff to return to that stationhouse to obtain a copy.

41.     That Defendant appeared to be a black woman with braided hair and was wearing a blue NYPD uniform.

42.     Defendant NYPD Sergeant Hernandez spoke to plaintiff inside the station house

and also refused to give Plaintiff a copy of the police report.

43.     Another Defendant, upon information and belief, the other of either Defendant Casimir or Acevdeo, also spoke to Plaintiff inside of the station house and also refused to give plaintiff a copy of the police report.

44.     Plaintiff does not currently know  that Defendant's name, but she appeared to be a woman with long brown hair.

45.     Much of Defendants' brutal assault of Plaintiff was captured on body worn cameras, and one video (incorporated herein by reference) can be viewed here: https://www.dropbox.com/s/voti2r13wd64gu6/2_Extraction_1_1__AXON_Body_2_Video_2020 -12-02_1803.mp4?dl=0[2]

46.     As can be seen on the video, Plaintiff is in the atrium of the station, separated by a sealed door from even the *public* part of the interior.

47.     Plaintiff was not blocking any access to the station.

48.     Rather, as can be seen on the video, she is in a corner, and about a dozen officers are able to move through the door.

49.     Plaintiff at no point until she was assaulted obstructed any passage through the atrium.

50.     Officers did not ask Plaintiff to leave at any point because of her *presence* in the atrium.

51.     As can be seen on the video, Plaintiff does not — whether in fact or in the abstract — block, interfere with, or otherwise obstruct any lawful government activity at any point.

---

[2] Audio begins at 60 seconds into the clip, marking where the officer turned the body worn camera (BWC) on.  60 seconds of video without sound are stored by default in the buffer of an Axon BWC, and that buffer is saved and appended to the beginning of a video when an officer clicks the BWC on.

52.     But then recording came up.

53.     Defendants inform Plaintiff that they are recording her.

54.     In turn, Plaintiff informs them that she is recording them on her phone.[3]

55.     Defendants became agitated and enraged on hearing that.

56.     Defendants in fact believed Plaintiff was recording.

57.     And every action that followed was based on (1) that belief and (2) Defendants' understanding of the City's official no-recording policy for police stations.

58.     Defendants immediately escalated, without even allowing a response, from demanding Plaintiff stop recording to assaulting her.

59.     At that point, Defendant members of the NYPD Hernandez, Ramos, Casimir, Oggeri, Acevedo, Mui, Cusmano, and Vitelli, without any warning, justification, or legal excuse, handcuffed Plaintiff's wrists and shackled Plaintiff's ankles, pushed Plaintiff to the ground, and began twisting Plaintiff's arms, causing plaintiff to cry out in pain.

60.     Despite Plaintiff's cries and total lack of resistance, those Defendants continued to use extreme force against her.

61.     As stated below, those Defendants' actions caused an avulsion (or fracture) of Plaintiff's elbow.

62.     Defendants continued to make angry expressions ("I'm not playin' with you!" "That's it, you're going to jail.") as they manipulated Plaintiff's arm despite the fracture.

63.     As a result of those Defendants' excessive force against Plaintiff, she sustained pain and swelling to both elbows, arms, and wrists, including but not limited to an avulsion of her left

---

[3] Plaintiff was not actually recording Defendants: she told them she was because she was afraid that without knowing they were being recorded, they would abuse her. But Defendants perceived that she was recording, and every action that they took was based on that perception.

elbow.

64.      As is visible in other body camera footage, Defendants' actions caused Plaintiff's

protective face mask to fall below her nose:



65.      One of the Defendants then punitively adjusted Plaintiff's mask to cover her entire

face before calmly walking away:





66.   Throughout the entire encounter, a large number of the Defendants were not wearing any masks at all, creating an undue risk of infection.

67.   Upon information and belief, Defendant Clement made the ultimate decision to

arrest Plaintiff.

68.    Upon information and belief, Defendant Hernandez, as a supervisor, approved the arrest.

69.    Defendants then took Plaintiff to a local area hospital to receive treatment for the injuries she sustained when they assaulted her.  Plaintiff remained detained and handcuffed at the hospital.

70.    Defendants then took Plaintiff back to the 62nd Precinct where they detained her for several additional hours before she was taken to Kings County Central Booking. Plaintiff was detained at Kings County Central Booking for several additional hours pursuant to false allegations made by Defendants Ramos, Casimir, Oggeri, Acevedo, Mui, Cusmano, and Vitelli,, Sergeant Hernandez, and Police Officer Tamara Clement (Shield No. 21959) of the 62nd Precinct. Police Officer Clement swore out a criminal complaint against Plaintiff which contained false allegations and which Officer Clement knew to be false when she made them.

71.    In support of the criminal complaint, Defendant Clement made several material omissions and false statements, including but not limited to, alleging that plaintiff did "resist lawful arrest by extending and locking [her] arms and refusing to turn onto [her] stomach while [defendant Clement] attempted to place [plaintiff] in handcuffs."

72.    These and other allegations were false and Defendant Clement knew them to be false when they made them.

73.    Defendant Clemente forwarded these false allegations or caused the allegations to be forwarded to the Kings County District Attorney's Office despite the false nature of the allegations.

74.    At her arraignment, plaintiff acceded to an adjournment in contemplation of

dismissal and her charges were eventually dismissed.

75.    That adjournment was consistent with Plaintiff's innocence.

76.    At no time did defendants have probable cause to seize, detain or arrest the plaintiff, nor to use any force on plaintiff, nor was it reasonable for the defendants to believe that such cause existed.

77.    At no time did any of the defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the heretofore conduct engaged in by their fellow officers.

78.    That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

***The NYPD's Unconstitutional and Illegal No-Recording Policy***.

79.    In 2018, the NYPD developed a new policy forbidding civilians from recording video inside precincts.[4]

80.    That policy was released in apparent response and retaliation for an individual who swore at police officers in a station, recorded the incident, ended up in an argument about recording during which he said, "I can record; I can do what the f–k I want," and left without any arrest.[5]

81.    Upon information and belief, the policy was crafted to provide police a way to arrest citizens recording at stations and to avoid bad publicity from such recordings — not because of a genuine concern for safety.

82.    The policy was created by the City, in conjunction with Defendant John or Jane

---

[4] *See* Tina Moore and Amanda Woods, *NYPD bans civilians from recording video inside precincts*, NY POST (Aug. 18, 2018).
[5] *Id.*

Doe 10.

83.     Upon information and belief, Defendant John or Jane Doe 10 had full decision-making authority delegated by the City to implement the policy.

84.     Upon information and belief, Defendant Doe 10 exercised that authority to create the policy.

85.     The policy is unconstitutional, and fails spectacularly to comply with even the bare constitutional minimums for government action that restricts First Amendment rights.

86.     It does not make any distinction in terms of time, place, and manner.

87.     The policy does not distinguish in terms of "place":  by its terms and as applied, it forbids recording in the wholly public atrium where there is no sensitive information in the same way it forbids recording aimed at sensitive information behind the desk.

88.     It similarly fails to distinguish because of "place" in that it applies to recording in places the public has total access to, without any justification.

89.     The policy does not distinguish in terms of "time":  it applies at all times.

90.     The policy does not distinguish in terms of "manner":  it applies to totally unobtrusive recordings (like Plaintiff's) as much as any other.

91.     All the recording that the policy restricts is recording of things that ***can freely be seen by members of the public***.

92.     Any sensitive information the policy addresses is already well-protected by other policies, laws, and regulations.

93.     For example, but without limitation, if a person attempted to sneak a camera behind the desk at a station, the physical act of crossing the desk into the protected area behind it would be an independent source of probable cause.

94.     Thus, all the policy does is serve to restrict legitimate attempts to document and record the exercise of public duties by police.

95.     Defendants' own policies and procedures state that there is a clear First Amendment right to record the police during the execution of their public duties.

96.     All Defendants were trained on that clear First Amendment right at the academy and via in service training.

97.     But in the field and at the stationhouse, upon information and belief, Defendants were taught that the stationhouse no-recording policy overrides that First Amendment right, and relevant state law to the contrary.

98.     In other words, Defendants were taught that the NYPD is permitted to place limits on the First Amendment and state law.

99.     Plaintiff continues on the same insurance, and is likely to need to visit the police station for similar reasons.

100.    Plaintiff does not feel safe around police at all anymore.

101.    Plaintiff has an acute need to record future police interactions, given what happened to her.

102.    Plaintiff intends to record her future interactions with the police.

103.    Plaintiff intends to make trips to the police station that, but for the violence she suffered for doing so previously, she would record.

104.    Plaintiff will suffer irreparable harm if she is not able to record future interactions in police stations.

105.    Without an injunction, Plaintiff will be too afraid of violent retaliation to record in police stations in the future.

**FIRST CAUSE OF ACTION**
**(Section 1983 False Arrest Claim Against the Individual Defendants)**

106.    Plaintiff hereby realleges and incorporates all of the preceding paragraphs as though they were fully set forth herein.

107.    The individual defendants willfully and intentionally seized, searched, detained, and arrested plaintiff, and caused her to be imprisoned, without probable cause, and without a reasonable basis to believe such cause existed.

108.    Plaintiff had not been engaged in any criminal conduct, nor was she engaged in any conduct that could reasonably be viewed as criminal nor a basis to justify her arrest.

109.    Despite the absence of sufficient legal cause, plaintiff was arrested and jailed.

110.    By so doing, the individual defendants subjected plaintiff to false arrest and imprisonment, and thereby violated and aided and abetted in the violation of plaintiff's rights under the Fourth Amendment of the United States Constitution.

111.    By reason thereof, the individual defendants have violated 42 U.S.C §1983 and caused plaintiff to suffer the deprivation of her liberty, loss of her constitutional rights, physical injuries, and mental anguish.

**SECOND CAUSE OF ACTION**
**(Section 1983 Denial of a Fair Trial Claim Against the Individual Defendants)**

112.    Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

113.    The individual defendants willfully and intentionally fabricated evidence by falsely memorializing claims to have witnessed plaintiff engaging in criminal or unlawful activity, and then forwarded these materially false claims to the Kings County District Attorneys Office in order to justify the arrest of plaintiff, and to justify, bring about and cause plaintiff to be deprived of her

15

liberty and to be criminally prosecuted.

114.     By so doing, the individual defendants subjected the plaintiff to denial of a fair trial and violation of her right to due process by fabricating evidence and otherwise providing prosecutors with a materially false and misleading version of events, and thereby violated plaintiff's rights under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

115.     By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer the deprivation of her liberty, loss of her constitutional rights, physical injuries, and mental anguish.

### THIRD CAUSE OF ACTION
### (Section 1983 Excessive Force Claim Against the Individual Defendants)

116.     Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

117.     As a result of the foregoing, defendants subjected plaintiff to excessive force, in part, by causing her body to slam to the ground, and causing her to suffer injuries, with no legal basis, justification or excuse.

118.     As a result of the defendants' conduct, the plaintiff was subjected to a level of force by the defendants in excess of what was reasonable under the circumstances.

119.     As a result of the foregoing, plaintiff's liberty was restricted and she was put in fear for her physical safety without probable cause or any legal justification, and she was physically injured.

### FOURTH CAUSE OF ACTION
### (First Amendment/First Amendment Retaliation Against All Defendants)

120.     Plaintiff repeats the allegations contained in each of the foregoing paragraphs as

though stated fully herein.

121.   Defendants retaliated against Plaintiff for engaging in speech and/or conduct protected by the First Amendment.

122.   Defendants engaged in the acts and omissions complained of herein in retaliation for Plaintiff's protected speech and/or conduct.

123.   Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiff from continuing to engage in such protected speech and/or conduct.

124.   Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

125.   Additionally, as discussed elsewhere herein, Defendant City designed and/or implemented policies and practices pursuant to which those Defendants who implemented them subjected Plaintiff to violations of her First Amendment rights.

126.   Upon information and belief, Defendants engaged in the acts and omissions complained of herein with respect to Plaintiff's First Amendment-based claims—including the related municipal liability claims involving the adoption of policies, practices, and/or customs and/or related failures to train, supervise, and/or discipline—with malice.

127.   Defendants imposed restrictions on Plaintiff's protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to, in subjecting Plaintiff to excessive force, false arrest, excessive detention, malicious and false prosecution, and in otherwise violating Plaintiff's rights and engaging in the acts and omissions complained of herein.

128.   In addition to being retaliatory, the restrictions Plaintiff complains of herein that Defendants imposed on Plaintiff's First Amendment right to record were impermissible restrictions on First Amendment rights in that they:

a. Were viewpoint discriminatory and/or otherwise not content-neutral, and were not necessary, and precisely tailored, to serve compelling governmental interests, and/or were not the least restrictive means readily available to serve those interests; or, alternately,

b. Were content-neutral, but lacked narrow tailoring to serve a significant governmental interest, in that they burdened substantially more protected speech and/or conduct than necessary to serve those interests, and/or failed to provide ample alternatives for Plaintiff's protected activity; and/or

c. Afforded Defendants unbridled or otherwise inappropriately limited discretion to limit or deny Plaintiff's ability to engage in protected conduct (also raising constitutionally significant Due Process-based vagueness and/or overbreadth concerns); and/or

d. Amounted to the imposition of strict liability on Plaintiff for engaging in protected First Amendment activity.

129.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

130.    Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

***First Amendment Retaliation by Violence***

131.    Plaintiff was engaged in the exercise of a First Amendment Right when she stated she was recording Defendants.

132.    It is clearly established that citizens have a right to record police while police are engaged in their official duties.

133.    Plaintiff stated she was engaging in that right.

134.    In retaliation for, and with the purpose of chilling the right to record, Defendants brutally assaulted Plaintiff. By reason thereof, the Defendants have violated 42 U.S.C. §1983 and

caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of her constitutional rights.

***Unconstitutional Policy***

135.    The Municipal Defendants created the policies categorically forbidding recording in police stations. Those policies violates the First Amendment in that they:

      a.   Were viewpoint discriminatory and/or otherwise not content-neutral, and were not necessary, and precisely tailored, to serve compelling governmental interests, and/or were not the least restrictive means readily available to serve those interests; or, alternately,

      b.   Were content-neutral, but lacked narrow tailoring to serve a significant governmental interest, in that they burdened substantially more protected speech and/or conduct than necessary to serve those interests, and/or failed to provide ample alternatives for Plaintiff's protected activity; and/or

      c.   Afforded Defendants unbridled or otherwise inappropriately limited discretion to limit or deny Plaintiff's ability to engage in protected conduct (also raising constitutionally significant Due Process-based vagueness and/or overbreadth concerns); and/or

      d.   Amounted to the imposition of strict liability on Plaintiff for engaging in protected First Amendment activity.

136.    The ban on recording in police stations is the municipal defendants as it is the official policy and practice of the City of New York.

137.    As set out above, Plaintiff will suffer irreparable harm if that policy is not enjoined.

138.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of her federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

**FIFTH CAUSE OF ACTION**
**(New York Civil Rights Law § 79-P Against All Defendants)**

139.    Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

140.    Prior to her assault, battery, and arrest, Plaintiff was exercising her rights under New York Civil Rights Law § 79-P, the New Yorker's Right to Monitor Act, to record law enforcement activity.

141.    In creating the policies alleged above, Defendant John or Jane Doe 1 and the Municipal Defendants exceeded their authority because the rule created was inconsistent with New York Civil Rights Law § 79-P and the Federal Constitutional.

142.    In enforcing those policies against Plaintiff, all Defendants violated New York Civil Rights Law § 79-P in that Plaintiff "exercised or attempted to exercise the right established in subdivision two of this section to record a law enforcement activity and an officer acted to interfere with that person's recording of a law enforcement activity" in one of the specified ways.

143.    Defendants created the policies alleged above intentionally to prevent New Yorkers from recording law enforcement activity.

144.    Defendants enforced those policies against Plaintiff and other New Yorkers to deter them from exercising their right to record law enforcement activity.

145.    New York Civil Rights Law § 79-P creates a private right of action that explicitly provides for punitive damages and injunctive relief, as well as mandatory attorneys' fees and expert fees.

146.    New York Civil Rights Law § 79-P defines "record" and the related right in extremely broad terms.

147.    Specifically, the law creates a right of action creates a right to sue for any law

enforcement interference with the right, including "attempting to prevent [a] person from recording law enforcement activity." New York Civil Rights Law § 79-P(3)(i); *see also, id* § (iv).

148.     Similarly, there is a cause of action where an officer — regardless of the fact of recording — engages in "commanding that the person cease recording law enforcement activity when the person was nevertheless authorized under law to record, as happened here. New York Civil Rights Law § 79-P(3)(iii).

149.     Thus, the statute creates a right of action, and that right — like the similar First Amendment right — "does not depend on whether [a plaintiff's] attempt to videotape was frustrated" (*Gericke v. Begin*, 753 F.3d 1, 3 n.2 (1st Cir. 2014)), or for that matter, only intended to create the *impression* someone was recording.

150.     Defendants' actions and policies alike violate New York Civil Rights Law § 79-P such that all the remedies available thereunder are appropriate.

### SIXTH CAUSE OF ACTION
### (Section 1983 *Monell* Claims Against the Municipal Defendant)

151.     Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

***Monell* for illegal policies.**

152.     The City, as set out above, has an official "no recording" policy for NYPD stations, including the one where the events described above took place.

153.     That policy was the but-for cause of Defendants' acts alleged above.

154.     Defendants' claims to have probable cause for arrest depend entirely on the assertion Plaintiff violated the no recording policy.

155.     Defendants' claims to have justification for *any* force used depend entirely on the assertion Plaintiff violated the no recording policy.

156.    Defendants' claims that Plaintiff interfered with police activity and that Plaintiff was trespassing depend entirely on the assertion Plaintiff violated the no recording policy.

157.    Put differently:  Defendants decisions to (1) tell Plaintiff she must disperse, (2) direct Plaintiff to leave the station, (3) tell Plaintiff to stop recording, (4) arrest Plaintiff for refusing to leave, (5) use additional force because they believed Plaintiff was not being compliant enough,[6] and each subsequent act, *all* happened *because* Defendants believed Plaintiff was violating the City's official no recording policy.

158.    The City's official policy is written down in multiple places, including both signs at the station, and in Patrol Guide § 203-29 ¶ 7 ("Members of the public are not allowed to photograph and/or record police activity within Department facilities").

159.    That policy makes no distinction between areas that are genuinely sensitive and closed to the public, and areas that are completely open to the public.

160.    Nor does that policy comply with New York State and City law protecting the right to record (New York Civil Rights Law § 79-P).

161.    Specifically, in instances like what happened in this case — where the diminutive Plaintiff was not blocking or interfering with any police activity, but the police response enforcing the no recording policy lead to a door being blocked by about a dozen officers assaulting her — there is no requirement that officers evaluate whether "a person to engage in actions that physically interfere with law enforcement activity."

162.    Instead, upon information and belief, the City applies the no recording policy with a categorical approach:  if someone is recording, officers may arrest because the City *defines*

---

[6] In the interest of clarity, Plaintiff is not conceding she was not sufficiently complaint — or that Defendants were not lying when they stated Plaintiff resisted arrest and locked her limbs (Defendants *were* lying).  Rather, to the extent Defendants claim their violence was necessary for *even* those reasons, the no recording policy was a but-for cause of that violence.

filming as interference.  *See generally*, Dkt. No. 23 at 5-8 (as paginated).

163.    Defendants' official policy was the but for cause of Plaintiffs' injuries.

164.    Therefore, the policy and practice at issue gives rise to *Monell* liability.

**_Monell_ _for training_**

165.    Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

166.    Instead, upon information and belief, the City trained individual Defendants that New York Civil Rights Law § 79-P and the First Amendment permit a categorical ban on recording in stations.

167.    Defendant City of New York had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, abuse of arrest powers, excessive force, and fabrication of evidence, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD.

168.    Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

169.    Defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, excessive force, and the

manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiff's arrest.

170.     The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, investigate, promote and discipline police and correction officers and supervisory officers.

171.     The failure of the City of New York and the NYPD properly to select, train, supervise, investigate, promote and discipline police and correction officers and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

172.     The official policies, practices and customs of the City of New York and the NYPD alleged herein violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the Constitution of the United States.

173.     All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures, and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

174.     Therefore the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of the plaintiff's rights in particular.

175.     By reason thereof, the municipal defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of her constitutional rights.

**SEVENTH CAUSE OF ACTION**
**(Civil Rights Violations Pursuant to New York State Law**
**Against the Individual and Municipal Defendants)**

176.    Plaintiff repeats the allegations contained in each of the foregoing paragraphs as though stated fully herein.

177.    Plaintiff was subjected to false arrest, excessive force, denial of due process and fair trial, through the defendants' use of unreasonable force, fabricated evidence and the making of false statements.

178.    At no time did defendants have any legal basis for arresting plaintiff, subjecting her to prosecution, or commencing criminal process against her, nor was there any reasonable basis to believe said conduct set forth herein was lawful, reasonable, or otherwise appropriate.

179.    The defendants are therefore liable under New York law to plaintiff for false arrest, excessive force, denial of due process and fair trial.

180.    By reason thereof, defendants have caused plaintiff to suffer emotional and physical injuries, mental anguish, the loss of her constitutional rights, and unlawful incarceration.

**DEMAND FOR A JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiff demands judgment against the individual defendants and the City of New York as follows:

i.      actual and punitive damages against the individual defendants in an amount to be determined at trial;

ii.     actual damages in an amount to be determined at trial against the City of New York;

25

iii.  an injunction and declaratory relief pursuant to New York Civil Rights Law § 79-P, forbidding any future enforcement of the policies that bar recording in police stations, and directing such measures necessary to fully repeal that policy and train officers on that repeal;

iv.  attorney's fees pursuant to, inter alia, 42 U.S.C. §1988, New York Civil Rights Law § 79-P, and New York common law;

v.  disbursements, and costs of the action;

vi.  expert costs and fees pursuant to New York Civil Rights Law § 79-P; and

vii.  such other relief as the Court deems just and proper.

Dated: New York, New York
        May 22, 2023

J. Remy Green

/s/

By:  _____

**COHEN&GREEN PLLC**
1639 Centre Street, Suite 216
Ridgewood, NY 11385
Tel.: 929-888-9480
elena@femmelaw.com