# Video of Man Berating Officer Opens Debate Over Recording in Police Stations

By Ashley Southall

Aug. 21, 2018

After Instagram video of a man berating a sergeant inside a Harlem police station went viral last week, the Police Department issued a memo telling officers they can arrest people who refuse to stop recording inside police buildings.

Police officials said in the Aug. 15 memo that taking photos and recording video or audio in police buildings is prohibited, and officers can order civilians who are doing so to stop. If they refuse, the memo said, officers should order the civilians to leave the premises. If they still fail to comply, they can be arrested for trespassing.

Police officials say the memo, which also covers disruptive behavior like threats, was intended to provide clear guidance to officers about their authority in an era when smartphones have given nearly everyone the ability to record police activity and share it widely. But civil liberties advocates and city lawmakers are concerned that the recording ban violates the public's First Amendment rights. Police unions have said the guidance is not specific enough about how officers should enforce it.

The debate is the latest front in an ongoing tug-of-war playing out in New York City, and across the country, over how much the public should know about the police officers who patrol their neighborhoods.

The ban is part of a broader policy added to the official police manual in June that acknowledges individuals' rights to record police activity on public streets, parks and private property. But police officials say department facilities have long been off-limits to recording.

Ann Prunty, a longtime Manhattan prosecutor who is now the assistant police deputy commissioner of legal matters, said that although police station lobbies and waiting areas are open to the general public, they are also frequented by crime victims, undercover officers and other people who need privacy.

"That space has to be a safe space for them to come and be confident that they're not going to see their images broadcast in some video the next day on YouTube or on Instagram," she said.

Courts have held that the government can place reasonable restrictions on when, where and how individuals can exercise their rights under the First Amendment to record the police, said Jonathan M. Smith, the former chief of special litigation in the Department of Justice's civil rights division. But the justification for the recording ban is "just not credible," he said, because if the police are genuinely concerned about certain people being filmed, then officials should be protecting those people from being seen at all.

"There may be individual circumstances in which you could restrict, but a rule that says you can't go into the public portion of a police facility and videotape, I think that violates the Constitution," said Mr. Smith, who is currently the executive director of the Washington Lawyers' Committee for Civil Rights and Urban Affairs.

In New York, Mayor Bill de Blasio's administration has struggled to find equilibrium between civil liberties groups and the City Council, who have pushed for greater transparency about police conduct, and unions that have sought to insulate officers from public scrutiny.

The mayor on Monday said he was disgusted by the Instagram video at the Harlem police station and others that have surfaced in recent days showing "inappropriate" behavior by civilians toward the police. One showed a man weighing marijuana on the back of a police car parked in Brooklyn.

"They are not acceptable," he said. "Anyone who thinks it's cute, it's not cute. Knock it off, show them respect."

But police labor union leaders fault city officials — including the mayor, the police commissioner and the City Council — for policies that they say have created a hostile work environment for officers and emboldened criminals.

"Everyone feels if they do something and it gets escalated, they're going to be held accountable as if they're to blame," Edward D. Mullins, the sergeants' union president, said. "It's almost as bad as tolerating the behavior."

Courts have ruled that the First Amendment protects the public's rights to record police officers in public, and the City Council is considering legislation that would enshrine those rights in city codes, mirroring a California law enacted in 2015. At the same time, jurists and lawmakers have limited those rights to situations where they do not interfere with officials carrying out their duties, violate laws or infringe on private rights.

The police commissioner, James P. O'Neill, has publicly committed to a neighborhood policing strategy that views police stations as shared public spaces. When officials unveiled designs last month for a new precinct in the South Bronx with 800 square feet of community space, he said it was a model for future projects.

"Our message to New Yorkers going forward, these are your station houses," he said.

The recording policy does not explain how the ban in police buildings applies to public events, like officer recognition ceremonies and precinct community council meetings, but Ms. Prunty said it would not apply at official events.

Darius Charney, the lead plaintiffs' lawyer in a federal lawsuit that forced the Police Department to scale back its aggressive street-stop policy, said the policy imposes "overly broad" limits on the public's right to record police officers. But it also restricts enforcement to behavior that "affects the use of the space or the ability of police operations to function properly," he said, citing the policy.

"The memo is therefore confusing at best," he said.

Mr. Mullins, the sergeants' union president, said the policy was "too ambiguous" about how officers are supposed to decide whether to make an arrest. A spokeswoman for the Police Department could not say whether anyone had been arrested under the policy, and it was unclear if the city's district attorneys would prosecute such arrests.

In the Instagram video tirade, the man makes crude sexual remarks to a sergeant inside the 28th Precinct on Frederick Douglas Boulevard and West 123rd Street when the officer asks, "Are you going to put me on Facebook?"

The sergeant, Freddy Lopez, then moves toward the man, who is in a waiting area across a low wall, and orders him to stop recording because "the law says you can't." When the man presses for specifics, the sergeant hesitates before turning around and asking a female officer sitting at a desk for handcuffs that never materialize.

The video ends with Sergeant Lopez going to a desk and picking up the phone. The police said the man was not arrested.

In a video message to police officers, Chief of Department Terence A. Monahan said the recent videos showed "horrendous" conduct toward officers and commended Sergeant Lopez for acting professionally and correctly telling the man his behavior was prohibited. "And while the individual subsequently stopped the recording and was allowed to leave the precinct, I want to emphasize that the Legal Bureau has indicated that an arrest was completely appropriate in that situation," he added.

The man did not respond on Monday to a direct message seeking comment. According to The Daily News, he went to the precinct on Aug. 13 to reclaim his Suzuki dirt bike, which the police seized in July after chasing a rider who discarded the bike and fled on foot. Sergeant Lopez would not release it to him.

Councilman Donovan Richards, a Queens Democrat and the chairman of the public safety committee, said the man's behavior was despicable. But he noted that the recording ban created a double standard in police stations, where civilians with cellphones are forbidden from recording encounters that police officers with department-issued smartphones and body cameras can. He said he would raise the issue this fall, when his committee considers the Right to Record Act, which would prohibit police officers from interfering with efforts to record them.

Supporters of the measure say it would help to protect the public from unlawful arrests but would also shield officers from false accusations of abuse and misconduct. But police unions say it is redundant and they have suggested that the city would be better served by a law requiring civilians to keep a minimum distance from officers carrying out their duties.