

August 23, 2023

Hon. Ona T. Wang
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

By Electronic Filing.

      Re:    Case No. 22-cv-01445, <u>Rodney v City of New York, et al</u>.

Dear Judge Wang:

    As the Court likely recalls, my firm, with co-counsel, represents Plaintiff in the case above. I write to request a conference under the Court's Individual Practices and Local Rule 37.2 on a motion to compel production of full discovery responses.

    When Plaintiff moved on this issue the first time in May (ECF No. 83 at 9-11), with a conference looming, Defendants forestalled the issue by expressly agreeing:

> "[D]efendants have agreed to amend their discovery responses to [(1)] state grounds for objections with specificity, including the reasons, [(2)] whether they are withholding documents, and [(3)] based on which objections, and [(4)] stating the basis for that objection, [(5)] along with whether their search has been limited by any objection, and [(6)] specify the time for any supplemental production, as noted within the purview of Fed. R. Civ. P. 34 and *Fischer v. Forrest*, 2017 U.S. Dist. LEXIS 28102 (Feb. 28, 2017). Defendants have also [(7)] agreed that they will remove boilerplate or 'form file' (*id.* at *2) objections that do not apply to specific requests."

ECF No. 84. That is, Defendants agreed to seven specific benchmarks for compliance. A key term in that agreement was the "purview of … *Fischer*," which clearly contemplates a consequence for failing to meet those benchmarks:

> "in cases before this Court, any discovery response that does not comply with Rule 34's requirement to state objections with specificity (and to clearly indicate whether responsive material is being withheld on the basis of [any] objection) ***will be deemed a waiver of all objections*** (except as to privilege)."

*Fischer,* 2017 U.S. Dist. LEXIS 28102, at *9 (emphasis added). Put directly, Defendants *still* have not "put up or shut up on … what it is [they're] producing and what [they're] not." *In re New York City Policing During Summer 2020 Demonstrations*, 20-cv-8924 (S.D.N.Y.) ("*In re Policing*"), 2022-02-18 Tr. 99:16- 19. That is, Defendants' responses fail each of the seven benchmarks, and in turn, violates the Rules and the parties' agreement.

    For the reasons below, therefore, the Court should enter the order contemplated in the



"purview of …*Fischer*," find the still-boilerplate objections waived, and order the long overdue production Defendants promised.

### **Background**[1]

*The Requests, First Meet and Confer, and First Motion.*

Plaintiff first served her discovery requests (**Exhibit 1**) in October 2022. After five consent extensions, Defendants served their first responses in January this year.[2] As part of the Court scheduling a general purpose status conference for May 18 (ECF No. 78), Plaintiff raised Defendants' non-compliance with the 2015 Amendments to the Rules. Plaintiff served a fully drafted motion (included in the joint conference agenda required by ECF No. 78) on May 1, and the parties met and conferred — although Defendants were not prepared to take any position at that meeting. Thus, when parties filed a joint letter on May 15, Defendants did not have a position prepared. ECF No. 83. The next day, after extensive further meeting and conferring, Defendants essentially agreed the motion should be granted. *See* ECF No. 84. That is, in order to have Plaintiff withdraw the motion and moot the issue before the conference, Defendants expressly agreed to serve rule-compliant responses — and further agreed to define compliance as "within the purview of … *Fischer v. Forrest*, 2017 U.S. Dist. LEXIS 28102 (Feb. 28, 2017)."

*Fischer* was drafted by former-Magistrate Judge Peck as a "discovery wake-up call to the Bar in this District," because of the sheer number of times lawyers "violate[d] one or more (and often all three) of" the critical, anti-boilerplate changes the 2015 Amendments made to the discovery rules. *Id.* at *3. That is, "[d]espite the clarity of the [even then] no-longer-new 2015 Amendments, the Court still sees too many non-compliant Rule 34 responses." *Id.* at *5.[3] The agreement to state that the amended responses were within *Fischer*'s "purview," was to give a stick to the carrot of allowing Defendants to avoid the motion, and to give some enforceability to the agreement that Defendants' responses would no longer be boilerplate. The deadline for amended responses was initially June 2, 2023.

*The Amended Responses.*

---

[1] Given the scale of the problems with Defendants' responses and the extensive background covering several meet and confers over several months, Plaintiff does not believe it is possible to fit the full discussion necessary for this motion within the page limit. Plaintiff therefore asks the Court to excuse the overlength letter, and notes that she has no objection to Defendants using a similar number of pages.

[2] Because of the impact that (1) the then-fully briefed motion to dismiss, given the number of requests Defendants objected to on bifurcation grounds and (2) the RFAs could have had on the scope of discovery, Plaintiff initially held off on raising these systemic deficiencies.

[3] As explored at length across the docket in *In re Policing* (*see, e.g., id.,* 2021-6-15 Tr. at 6:4-8 and 27:12-14; 2022:03-04 Tr. at 46-48 (THE COURT: I don't recall telling you that you could have secret objections")), the City's attorneys are repeat offenders on this score, and after several rounds of sanctions, Judge Gorenstein eventually needed to essentially order a "chart" spelling things out simply, since without it, the City was apparently — even with the Court "keep[ing] trying" — unable to "just state what they're producing and what they're objecting to." *Id.,* 2022-02-11 Tr. at 116-119.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t: (929) 888.9480  ·  f: (929) 888.9457  ·  FemmeLaw.com



After more than five consent extensions (and a missed deadline with an agreed extension after the fact),[4] Defendants finally served their "amended" responses on July 13, 2023 (**Exhibit 2**). Contrary to the agreement, those responses barely made any substantive changes, as shown in the attached redline (**Exhibit 3**). No changes at all were made to Defendants' interrogatory responses (and Defendants still have not served signed interrogatory responses), despite the persistent boilerplate objections throughout. Ex. 3 at 2-19. Every single interrogatory still begins verbatim or close to it:

> Defendants object to Interrogatory No. 1 on the grounds that it is vague, ambiguous, overbroad, and not proportional to the needs of the case. Defendants further object on the grounds that this information may not be in their possession, custody or control. Defendants further object to Interrogatory No. 1 to the extent that there is a more practical method of obtaining the information sought, such as depositions.

Exs. 2 and 3 at 2. The document request responses were amended, but without many substantive changes.

Likewise, while some requests do state Defendants "are not withholding documents on the basis of the" expansive boilerplate "objections" that Defendants violated the agreement and still asserted (at least theoretically helping with the problem), many others do not even do that — leaving the response short on all seven of the benchmarks agreed to. For example, while Defendants' response to Document Request 1 cut out some boilerplate, it simply outsourced it: "Defendants reiterate the objections and responses made in defendants' responses to plaintiff's interrogatories. Ex. 3 at 20. Defendants also *added new* objections to certain requests, objecting to requests "seeking 'all documents' without limitation." *Id.* That is, Defendants are asserting any request that uses the word "all" is *per se* objectionable. But that objection that "makes no sense," because, of course, "being told to produce all documents on a topic" is something that "*happens every single day in every single litigation*." *In re Policing*, 2022-02-11 Tr. at 14-16 (emphasis added; also commenting, "you're making me very concerned with these objections, the idea that you are incapable of producing, of doing a reasonable search to produce the documents, it makes no sense").

### *Plaintiff Seeks a Meet and Confer for Weeks; Counsel is Unprepared at Both Ultimate Meetings.*

The same day (July 13) Plaintiff received the responses, she responded saying the responses did not comply with the agreement and still did not have a privilege log (despite extensive privilege claims). Plaintiff asked for a meet and confer, and the parties scheduled one for July 18.[5] The day of the meeting, however, Defendants asked to reschedule, citing the fact that "[s]omeone else will be taking over the case, but the specific person is not yet confirmed," asking for until the 20th or 21st. Plaintiff agreed, on the condition that that rescheduling the meeting depended on "the City [being]

---

[4] Requested on June 1, June 8, June 16, June 29, and a final again after a missed deadline on July 7, and a retroactive agreement to extend the deadline —
[5] Plaintiff also sent a more extensive letter documenting deficiencies in some detail before a scheduled meeting (**Exhibit 4**) on July 18.



Page 3 of 10

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



ready to take final positions (after reviewing the [more detailed] letter [that is Exhibit 4])."[6] Then, on August 1, August 8, August 14, and twice on August 15, Plaintiff followed up asking for a meeting in short order. Defendants did not give any substantive response to repeated emails until the second email on August 15.[7] Eventually, stating nothing before then would work, Defendants agreed to meet on August 22, and said a supervisor would also attend the meeting. Less than an hour before the meeting, Defendants' new counsel attempted to cancel the meeting. The meeting proceeded, and counsel essentially stated he had no familiarity with the dispute, the case, or anything else. The supposed supervisor did not attend, with no explanation for her absence.

At that meet and confer,[8] Plaintiff made clear that if Defendants did not agree to removing most objections in very short order, the parties were at an impasse. Defendants asked to be allowed to serve a final version of their position by close of business August 23, 2023. Plaintiff agreed, but made clear she would file the motion if Defendants did not make some serious, enforceable promise to promptly cure the extensive discovery abuse in the amended responses.

At the end of the day on August 23, Defendants asked to have a second call. The parties conferred for approximately 45 minutes,[9] during which Defendants were still unprepared to agree to anything. Defendants' counsel pled unfamiliarity with the case, the responses, and the "civil rules" alike. Multiple times, when pressed to explain how an objection applied, what it meant, or whether it meant Defendants were withholding anything, counsel repeated (near verbatim) "Defendants maintain the objections stated in the writing at this time." Counsel also attempted to shift the burden to Plaintiff, asking Plaintiff to explain what documents *she* thought were missing or being secretly withheld (notwithstanding the Rules). That said, Defendants' counsel seemingly conceded that the objections do not fulfill the agreement in ECF No. 84. And further, Defendants' counsel said of some objections (like the HIPAA objections), "those are there not because we are asserting an objection, they're just there to put it on the record." No explanation was offered of how HIPAA could possibly apply, or how "put[ting an objection] on the record" could comply with the agreement at ECF No. 84.

When asked to explain, for example, why the City was refusing to produce audit trail logs

---

[6] Shortly thereafter,, because of a death in my immediate family two days before a tentatively scheduled meeting, I asked to reschedule, so the brief delay between July 24 and August 1 is attributable to Plaintiff.
[7] Defendants switched counsel in the interim. Initially, because of express concerns about claims that new counsel was unfamiliar with the responses, Plaintiff asked — and Defendants agreed — that both new and former counsel attend the meeting. Indeed, in failing to schedule a meeting after the August 8 request (and in response to a request to "have this meeting before you are no longer involved"), former counsel cited the need to "coordinate" schedules as why Defendants had been unable to propose a single meeting time. Then, former counsel suddenly changed to saying only, "If I am able to join the call you schedule, I will." Plaintiff accepted that "as long as [new counsel] will not assert a lack of knowledge as a basis to avoid an obligation." But as set out below, new counsel then came to the meeting having clearly not prepared, citing *other* case obligations. It is unclear why the City assigned a new attorney to this case who apparently did not have the time get up to speed since the substitution, let alone the time to the litigate it.
[8] The meeting took place for approximately 15 minutes on August 22, 2023. I attended with an intern in our office (taking careful notes) for Plaintiff, and Gregory Musso for Defendants.
[9] The same people attended this second meeting.

 Page 4 of 10

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



(perhaps the *core* example of discovery abuse detailed in all of (1) the deficiency letter; (2) email correspondence, and (3) the initial motion; *see* Ex. 4 at 3-40 and ECF No. 83 at 10-11), counsel initially simply said, "I was told it is NYPD policy not to produce those." When reminded that NYPD policy is not a valid objection, counsel was unable to explain how any of the objections asserted applied (*see, e.g.,* Ex. 5 at 3-4), and eventually reverted to simply saying Defendants stand on the written objections.

The meeting was at least partially productive, however, in that Defendants seemed to concede that their objections as written do not comply with the agreement at ECF No. 84, at least insofar as Defendants' counsel was not able to explain how even a single objection asserted applied, or whether it was the basis for withholding documents. Indeed, at one point, Plaintiff asked Defendants to pick their "best" objection, and try to explain it. Defendants pointed to their objection to Doc. Req. 11, which seeks "documents reflecting internal NYPD communications related to Plaintiff's arrest or the Incident" (followed by a non-exhaustive list):

> "Defendants object to Document Request No. 11 on the grounds that it is overbroad in that it is not limited in scope or time to the extent it seeks 'all documents' which are 'reflecting' the incident without limitation or definition. As a result defendants object to this request as not properly limited in scope and not proportional to the needs of the case. Defendants further object to this request as vague and ambiguous as, construed broadly it requests defense counsel's records, which are protected by the attorney client, law enforcement, and other privileges as well as the attorney work-product doctrine. Defendants further object to this document request on the grounds that it seeks information that is equally available to plaintiff, in seeking documents of which plaintiff is in possession, custody, or control, or which is not within defendant's possession, custody, or control.
>
> Subject to, and without waiving, or in any way limiting, these objections or the General Objections…"

Ex. 2 at 27-28. But when pressed, counsel admitted that "reflecting" was not particularly unclear. Rather, asked for an example of what it was unclear whether the request applied to, counsel suggested a hypothetical email discussing the press this case received. But that is — counsel ultimately conceded — plainly a record this request seeks. So counsel could not explain how a request that clearly calls for that email was problematic because of a "definition" or, for that matter, explain how seeking those obviously relevant documents made the request overbroad. Counsel also conceded that none of this detail appears in the objection itself. Moreover, counsel conceded that the objections ***do not state whether Defendants are withholding such hypothetical emails or why.*** And he even conceded he could not tell from the response whether such emails exist or whether Defendants have withheld them (and that he did not personally know the answer). He agreed that did not appear consistent with the agreement at ECF No. 84.[10]

At the end of the meeting,[11] Plaintiff reiterated the extensive impasses to date, and the need

---

[10] In another striking example of note, when asked to explain a vagueness objection, all counsel could say was, "there must be a reason why John thought it was vague."

[11] Defendants also threatened to file a sanctions motion if Plaintiff moved to compel anything, but counsel could not explain what the basis was. When asked, instead, he simply said, "I'm just relaying information."



Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



to have paper discovery finished. Defendants could not commit to anything, so Plaintiff stated there was an impasse. Because Plaintiff made clear there was an impasse across months of emails and at both meetings on August 22 and 23 (as well as the meetings back in May), this motion follows.

## Discussion

As more fully set out in the attached deficiency letter, Defendants responses do not comply with the Rules, and that non-compliance leaves Plaintiff unable to determine what Defendants are withholding and why. That, in turn, makes moving to compel individual documents impossible. Not once in Defendants' objections do they even attempt to articulate — for example — what makes something burdensome. Yet virtually every single request receives a burden objection. In the interest of space, Plaintiff respectfully refers the Court to the more robust discussion in Ex. 4 — but discusses the kinds of issues below.

*Boilerplate*. Defendants' objections remain entirely boilerplate. That is despite the fact that, as noted above Defendants have already agreed that they would excise boilerplate, or face the consequences set out in *Fischer*. ECF No. 84. As a ground rule, "boilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy," while producing "no documents and answer[ing] no interrogatories . . . are a paradigm of discovery abuse." *Jacoby v. Hartford Life & Accident Ins.,* 254 F.R.D. 477, 478 (S.D.N.Y. 2009); *see also, Michael Kors, LLC v. Su Yan Ye*, No. 18-CV-2684 (KHP), 2019 WL 1517552, at *3 (S.D.N.Y. Apr. 8, 2019). That is what Defendants have served, and refused to cure, here. And when pressed at a meeting, Defendants made clear they "stand on" these boilerplate objections.

As an illustration, consider Doc. Req. 4, which seeks all communications "related to Plaintiff's arrest or the Incident" in Defendants' control. Ex. 3 at 29; Ex. 1 at 1 ¶ 1 ("Furnish all information available to you, including information in the possession, custody, or control of your attorneys, accountants, investigators, experts, representatives, or other agents"). Defendants say this:

> "Defendants object to Document Request No. 4 on the grounds that it is overbroad and not sufficiently limited in time or scope, to the extent that it seeks "all recorded (including NYPD) communications," without limitation, which necessarily includes documents that are irrelevant to this matter. As a result, defendants object to this request as not proportional to the needs of the case. Defendants also object as this request is burdensome to the extent it is requesting all documents in the possession of the City, which may include "communications" from any number of agencies. Defendants further object to this request because it is vague and ambiguous in failing to define what communications "related to Plaintiff's arrest or the Incident" are, and because, construed broadly, it requests defense counsel's records, which are protected by the attorney-client, law enforcement, and other privileges, as well as the work product privilege.[12] Defendants further object to this request on the grounds that it seeks information that is equally available to plaintiff, in seeking documents in plaintiff's possession,

---

[12] Plaintiff has no objection to Defendants excluding counsel's records from their search (as long as, as the Rules require, Defendants state that's what they're doing), or to simply including a categorical line on the privilege log, saying communications directly with counsel have been withheld.

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



custody, or control, or which is not within defendants' possession custody or control.

Subject to, and without waiving, or in any way limiting, these objections…"

*Id.* But this response does not bear any scrutiny. For example, Defendants never explain how it is that they think that recorded communications "related to Plaintiff's arrest or the Incident" would "necessarily includes documents that are irrelevant to this matter." In fact, quite the opposite: any communication about Plaintiff's arrest or the Incident[13] must be **relevant**. Nor is it clear how a request for communications between City employees would possibly "seek[] information that is equally available to plaintiff." Likewise, Defendants say — without explaining why — that the request "**may** include 'communications' from any number of agencies," but explain neither (1) why they think that or (2) why that would be problematic in any way. *Fischer* explained this exact problem:

> "[T]he responses to requests 1-2 stating that the requests are 'overly broad and unduly burdensome' is meaningless boilerplate. Why is it burdensome? How is it overly broad? This language tells the Court nothing. Indeed, even before the December 1, 2015 rules amendments, judicial decisions criticized such boilerplate objections."

*Fischer*, 2017 U.S. Dist. LEXIS 28102, at *8. Likewise, pressed for their best objection, Defendants cited Doc. Req. 11. But the objections to Doc. Req. 11 are pure boilerplate and violate the rules as explained above — and Defendants all but conceded as much.

Further, the amended objections still often fail to state whether anything is being withheld, let alone how the objections made applies to what is being withheld, which makes it impossible to tee up an appropriate meeting or motion on the substance of any objection. Instead, **49 times**, Defendants say (verbatim), "subject to, and without waiving or in any way limiting these Objections," before saying what limited documents they are producing. That "practice of objecting to a request for production but then stating that documents will be produced 'subject to and without waiving the objection' is no longer acceptable after the 2015 amendments." *Bilek v. Nat'l Cong. of Emplrs., Inc.*, No. 18 C 3083, 2021 U.S. Dist. LEXIS 53, at *21 (N.D. Ill. Jan. 4, 2021). And again, the terms of the parties' agreement show why: that formulations necessarily means Defendants are failing to "state grounds for objections with specificity, including the reasons, [(2)] whether they are withholding documents, and [(3)] based on which objections, and [(4)] stating the basis for that objection, [(5)] along with whether their search has been limited by any objection." ECF No. 84. And Defendants conceded as much at the August 23 meet and confer.

The other objections, as detailed in Ex. 4, are of a kind. *See* Ex. 4 at 2-9. Given Defendants' agreement to the purview of *Fischer,* that leaves the situation simple: "any discovery response that does not comply with Rule 34's requirement to state objections with specificity (and to clearly indicate whether responsive material is being withheld on the basis of objection) **will be deemed a waiver of all objections**" besides privilege. *Id.* at *9 (emphasis added). Since Defendants' responses fail that test and do not live up to their agreement, all objections asserted (besides privilege) should "be

---

[13] Defined as "Plaintiff's arrest and detention on December 2, 2020 and the related events described in the operative Complaint in the case, including related uses of force on, and prosecutions against, Plaintiff." Ex. 1 at 4 ¶ 3.





deemed[] waive[d]" (*id.*) and the Court should set a date for full production.

**160.50 and HIPAA**.  Defendants assert objections to records that are sealed and under the Health Information Portability and Accountability Act (or "HIPAA"; often misnamed as "HIPPA" in the responses).  The 160.50 objection is easy to address:  Plaintiff already agreed to an unsealing order, yet Defendants have failed to prepare one as they agreed.  Plaintiff therefore asks that the Court enter the attached Order (**Exhibit 5**).  In the alternative, Plaintiff can make a separate motion.

As to HIPAA,[14] Defendants' objections make no sense, and despite requests, they have never even ***attempted*** to explain them.  In Requests 31-34, Defendants state that the Requests "***may*** implicate the provisions" of HIPAA.  Ex. 2 at 44-50 (emphasis added).  As noted below, Defendants have never substantiated these (still hypothetical) privilege claims with a privilege log.  The boilerplate HIPAA objections — which are clearly copied and pasted (given that HIPAA is defined in each, as if it is appearing for the first time) — are not sufficient.  HIPAA only applies in certain factual circumstances, and, more to the point, to certain statutorily defined entities.  Yet Defendants objections do not explain how Defendants are acting —  as they must be for HIPAA to apply at all — as a health plan, health care clearinghouse, or healthcare provider to either officers or third parties.  If Defendants are not a covered entity, HIPAA simply does not apply.  And Defendants are not.  This objection is either still more meaningless boilerplate, or a substantively frivolous claim that the City is acting as a health plan somehow in (for example) engaging in "internal police disciplinary action."  Ex. 2 at 48-48.  Either way, given Defendants refusal to even explain this objection, it should be overruled.

**Privilege Log.**  Defendants have not yet served a privilege log, despite extensive privilege claims.  "[A] party claiming a privilege must provide [a log] in writing and within the time the response to the discovery request is due, unless the court orders otherwise."  SEC v. Yorkville Advisors, LLC, 300 F.R.D. 152, 157 (S.D.N.Y. 2014), *citing* Local Civ. R. 26.2(b).  Defendants are currently ***230 days late*** with their log.  The Court should order production of a log within a short period (Plaintiff suggests 5 business days).  It should not take the City nearly a year to figure out what it is withholding for privilege.

**Continuing Searches**.  As part of the meet and confer process before the May 2023 conference, to avoid motion practice, Defendants agreed to provide an update on their outstanding production on May 19, 2023.  ECF No. 83 at 12.  The parties then agreed to wrap that issue into the deadline for the amended responses, never once suggesting their production would be incomplete.  Yet the amended responses still state that Defendants searches are still ongoing for 10 requests — apparently failing to complete their search for even one of the requests where Defendants initially stated they were still searching, and in fact, added several more.  In the meet and confer, Defendants conceded they have significant material outstanding, but offered no real explanation for why that is so, or why Defendants violated their agreement to produce all that material by July 13.  The Court should direct Defendants to complete their searches within a short period and make a final production (Plaintiff suggests 5 business days).

**Verified Interrogatories.**  Rule 33(b) of the Federal Rules of Civil Procedure require that the

---

[14] Plaintiff addresses this issue separately because it is a kind of privilege, or at least, similar to privilege, and likely not covered by *Fischer*'s waiver language.





parties to whom interrogatories are directed answer them in writing and sign and verify them under oath. Answers provided by attorneys do not suffice. Relatedly, a party responding to an interrogatory must provide answers based on reasonable investigation of documents and other information in and related to the case. *See, e.g., Trueman v. N.Y. State Canal Corp.*, No. CIV. 1:09-CV-049 (LEK)(RFT), 2010 WL 681341, at *5(N.D.N.Y. Feb. 24, 2010); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 563 B.R. 737, 750 (Bankr. S.D.N.Y. 2017). Beyond that, "[t]he responding party must provide the best answer they can based upon current information in their possession" and "[e]ach answer must be based upon all of the information at the responding party's" and their "attorney's disposal." *Trueman*, 2010 WL 681341, at *2 and 5. Additionally, interrogatory responses (and written responses to document demands) are evidence, see Fed. R. Civ. P. 33(c) ("An answer to an interrogatory may be used to the extent allowed by the Federal Rules of Evidence"), and can constitute party admissions at trial, *see, e.g., Skinner v City of NY*, No. 15-CV-6126(KAM)(JO), 2017 US Dist LEXIS 104650, at *14-15 (EDNY Apr. 7, 2017); *see also, e.g.,, Gaul v. Chrysler Fin. Servs. Ams. LLC*, No. 1:13-CV-433 (TJM/RFT), 2014 US Dist LEXIS 52449, at *30 (N.D.N.Y. Apr. 16, 2014).

Under Fed. R. Civ. P. 26(g)(2), "[o]ther parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention."

Defendants' answers are improper and the failure to sign has not been cured despite the issue being raised months ago. Moreover, the answers themselves strongly suggest that barely any investigation went into answering, and that the answers are not the "best answer" the responding party can provide "based upon all of the information at the responding party's" and their "attorney's disposal." So, on top of overruling the boilerplate objections that pervade Defendants' interrogatory answers, Plaintiff asks that the Court order date certain for verified responses from each Defendant (Plaintiff suggests 15 business days, in light of potential scheduling difficulties for signing).

***Fees and Costs.*** Finally, Rule 37 provides, in mandatory terms that when a discovery motion is granted, "the court must . . . award reasonable motion expenses incurred in making the motion." *Underdog Trucking, LLC v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) (*quoting* Fed. R. Civ. P. 37) (emphasis added in Underdog). "The mandatory nature of the imposition of expenses reflects a policy choice aimed at reducing the burden on the courts by deterring parties … from resisting discovery without justification" and therefore "[t]his standard requires only an inquiry as to 'an objective test of reasonableness' and not as to whether the party or counsel acted 'in good faith.'" *Jackson v. Nassau Cnty.*, No. 18-CV-3007, 2022 U.S. Dist. LEXIS 83333, at *4–5 (E.D.N.Y. May 9, 2022) (cleaned up). Here, Defendants have refused to head the "wake up call," even after agreeing explicitly to its "purview." A plaintiff should not have to spend months following up to just get a meeting on the calendar; make a motion just to get the City to state what it is withholding and why; or have more than three separate meet and confers where no attorney can explain even a single objection. There is no justification — let alone a substantial justification — for the City's systemic refusal to "just state what they're producing and what they're objecting to" (*In re Policing.,* 2022-02-11 Tr. at 116-119) in virtually every case. Those costs should be shifted to the City, as the Rules say "must" happen.

COHEN&GREEN                                                                                                   Page 9 of 10

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t: (929) 888.9480  ·  f: (929) 888.9457  ·  FemmeLaw.com



### Conclusion

As discussed above, Defendants have simply refused to follow the Rules — or comply with their own express commitment — in serving discovery responses. That has left Plaintiff with no idea at all to what Defendants are withholding, how they have limited their searches for documents, or the substantive basis for Defendants expansive privilege claims. The Court should:

1. Find, within the "purview of … *Fischer*" that Defendants agreed to (ECF No. 84), "a waiver of all objections (except as to privilege)" 2017 U.S. Dist. LEXIS 28102, at *9;
2. Enter a 160.50 unsealing order in the form attached (Ex. 6) and either (1) give Defendants a date certain to explain their HIPAA objections or (2) simply overrule them as frivolous, since no Defendant is (at least in any relevant context) a health plan, health care clearinghouse, or healthcare provider;
3. Direct Defendants to serve a privilege log by a date certain;
4. Direct Defendants to finish their supposedly ongoing searches by a date certain; and
5. Direct Defendants to serve verified interrogatories for each Defendant by a date certain.

And given that the City's position is not justified at all, let alone "substantially justified," Plaintiff requests the mandatory fees provided by Rule 37.

As always, we thank the Court for its time and consideration.

Respectfully submitted,

/s/
_____
J. Remy Green
 *Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

Page 10 of 10

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com