**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
PATRICIA RODNEY,

                              Plaintiff,

        -against-

THE CITY OF NEW YORK, et al.,

                              Defendants.

-----------------------------------------------------------x

22-CV-1445 (LAK) (OTW)

**REPORT AND RECOMMENDATION TO THE HONORABLE LEWIS A. KAPLAN**

**ONA T. WANG, United States Magistrate Judge:**

**I.      INTRODUCTION**

Plaintiff Patricia Rodney ("Plaintiff") brought this action under 42 U.S.C. § 1983 and New York Civil Rights Law alleging Section 1983 claims of false arrest, denial of a right to a fair trial, excessive force, First Amendment retaliation, municipal liability, and corresponding state law claims against Defendant City of New York, individual Defendant police officers, and Defendant James P. O'Neill, New York City Police Commissioner (collectively "Defendants"). (*See* ECF Nos. 90 and 140). This action is before me for a Report and Recommendation on Defendants' motion for partial dismissal under Fed. R. Civ. P. 12(b)(6) (*see* ECF Nos. 39, 40, and 97), which was previously addressed to Plaintiff's First Amended Complaint ("FAC") (ECF 29) and the parties have agreed will be addressed to the Second Amended Complaint ("SAC") (ECF 90). (*See* ECF 97). As discussed below, I respectfully recommend that Defendants' motion be **GRANTED** in part and **DENIED** in part.

1

II.  BACKGROUND[1]

Plaintiff suffers from diabetes and uses a glucometer several times a day to monitor her blood sugar. (ECF 90 ¶¶ 30, 32). After losing her glucometer, Plaintiff was instructed by her insurance company that in order to obtain a new glucometer, she must provide a police report for the missing glucometer. (ECF 90 ¶¶ 1, 30). On November 30, 2020, Plaintiff completed forms at the 62nd New York Police Department ("NYPD") Precinct's stationhouse to obtain a police report. (ECF 90 ¶¶ 28-29). On December 2, 2020, Plaintiff returned to the stationhouse, asked inside for the police report, and was told by several officers that she could not have it.[2] (ECF 90 ¶¶ 37-40). At some point after asking for the police report, Plaintiff was arrested in the "atrium" (or vestibule) of the stationhouse, and in the course of that arrest, sustained injuries to her arms, elbows and wrists, the most serious of which appears to be an "avulsion (or fracture)" of Plaintiff's left elbow. (ECF 90 ¶¶ 45-46, 63).

In connection with Plaintiff's arrest, the arresting Defendants[3] informed Plaintiff that they had turned on their body-worn cameras ("BWCs"), at which point Plaintiff, while standing next to a sign that read "MEMBERS OF THE PUBLIC ARE PROHIBITED FROM AUDIO/VIDEO RECORDING OR PHOTOGRAPHY INSIDE THE PRECINCT," held up her phone and told the police

---

[1] These facts are drawn from Plaintiff's SAC and footage of the incident linked in the SAC, which the Court accepts as true and draws all reasonable inferences in favor of Plaintiff. *See Muto v. CBS Corp.*, 668 F.3d 53, 56 (2d Cir. 2012).

[2] It is unclear from the SAC — but also immaterial at this time — whether the report was ready and being withheld, whether the officers whom Plaintiff approached were refusing to help her, or whether Plaintiff was not given the requested police report for some other reason.

[3] Plaintiff identifies the arresting officers as "Defendant members of the NYPD Hernandez, Ramos, Casimir, Oggeri, Acevedo, Mui, Cusmano, and Vitelli." (ECF 90 ¶ 59).

officers that she was also recording them. (ECF 90 ¶¶ 45, 53-54).[4] Once Plaintiff said she was recording, Defendants instructed Plaintiff to stop recording; when she did not, Plaintiff was told to "turn around." (ECF 90 ¶ 45). She was then arrested. *Id.* In the course of being arrested, Plaintiff was brought to the ground, handcuffed at her wrists and shackled at her ankles. (ECF 90 ¶¶ 59, 63).

Plaintiff was taken to a hospital for treatment for her injuries, brought back to the 62nd Precinct and then to Kings County Central Booking. (ECF 90 ¶¶ 69-70). Defendant NYPD officer Tamara Clement ("Officer Clement") then swore out a criminal complaint, which appears to have charged Plaintiff with trespass and obstruction of governmental administration. (ECF 90 ¶ 70; ECF 112 at 17, 26-27).[5] Plaintiff alleges that the criminal complaint contained false allegations by Officer Clement, who knew them to be false when she made them. (ECF 90 ¶¶ 70-71). Plaintiff's charges were adjourned in contemplation of dismissal at her arraignment and then ultimately dismissed. (ECF 90 ¶ 74).

Plaintiff's SAC contains seven causes of action or claims, including false arrest (Claim One), denial of a right to a fair trial (Claim Two), excessive force (Claim Three), retaliation for exercise of First Amendment rights (Claim Four), violation of New York Civil Rights Law § 79-P ("Right to Record Act") (Claim Five), *Monell* liability for the NYPD no-recording policy (the "NYPD Policy") and "for training" (Claim Six), and New York State civil rights violations (Claim Seven). (*See* ECF 90 at 15-26). Defendants move to dismiss Claims One, Two, Four, Five, and Six for

---

[4] Plaintiff also states that she was not actually recording at this time. (ECF 90 at n.3).

[5] The SAC does not specify the charges against Plaintiff, nor is it attached to the SAC, but both Plaintiff and Defendants apparently agree in their briefing that Plaintiff was charged with violating New York Penal Law 140.05 (trespass), New York Penal Law 140.10(a) (criminal trespass in the third degree), and New York Penal Law 195.05 (obstruction of governmental administration). (*See* ECF 40 at 13; ECF 112 at 27).

failure to state a claim, leaving Claims Three and Seven undisturbed.[6] For the following reasons, I respectfully recommend that Defendants' motion to dismiss Claims One, Two, Four, and Six, be **GRANTED**, and dismissal of Claim Five be **DENIED**.

## III. DISCUSSION

### A. Standard of Review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive such a motion, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). More specifically, the plaintiff must allege enough facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For a claim to sufficiently "raise a right to relief above the speculative level," it must be grounded on factual allegations. *Twombly*, 550 U.S. at 555. A claim grounded on mere suspicion is not enough to meet this standard. *Id*. "'[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal citation omitted, alteration in original).

---

[6] Defendants move to dismiss Claims 1, 2, 4, 5, and 6, and do not challenge Plaintiff's excessive force claim (Claim 3) or her New York State civil rights claim (Claim 7). This, Plaintiff argues, amounts to a "concession" that the Policy is "unauthorized under City law," "dooming the Motion." (ECF 112 at 37). Plaintiff misconstrues the purpose of Rule 12, which is to determine whether a complaint has alleged facts that, if true, would state a claim. *See* Fed. R. Civ. P. 12(b). Deciding not to challenge a claim at the pleadings stage is not a concession that a claim would prevail on the merits, nor is it an admission that the alleged facts are true.

On a motion to dismiss, the Court may consider documents attached to the complaint as an exhibit. *See, e.g.*, *Paulemon v. Tobin*, 30 F.3d 307, 308-09 (2d Cir. 1994); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). As relevant here, Plaintiff has attached video footage from an NYPD officer's BWC (ECF 90 ¶ 45; ECF 113-1, Exhibit 1), and both parties have referenced that video in their briefing.

**B.   Analysis**

1.   Claim One: False Arrest

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). "[T]he existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). "Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368-69 (2d Cir. 2007) (citations omitted). The existence of probable cause depends on the facts known to the arresting officer at the time of the arrest, and the officer's state of mind is irrelevant. *Id.* at 369. "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852.

A court assessing probable cause must "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively

5

reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotation marks omitted). A Fourth Amendment claim turns on whether probable cause existed to arrest for any crime, not whether probable cause existed with respect to each individual charge. *See Devenpeck v. Alford*, 543 U.S. 146, 153-56 (2004). Accordingly, Defendants prevail on their motion if there was probable cause to arrest Plaintiffs for any single offense, *see Jaegly*, 439 F.3d at 154 (2d Cir. 2006) ("[W]hen faced with a claim for false arrest, we focus on the validity of the *arrest*, and not on the validity of each charge."), based on the totality of circumstances available to a reasonable officer. *See, e.g.*, *District of Columbia v. Westby*, 583 U.S. 48, 57 (2018).

Defendants argue that Count One should be dismissed because they had probable cause to arrest Plaintiff without a warrant. (ECF 40 at 13-17). Specifically, Defendants assert that the BWC footage attached to the SAC shows that Defendants told Plaintiff about the NYPD Policy, told her to stop recording (even though she asserts she was not actually recording), and then told her to leave after she refused to stop recording. (ECF 40 at 16). After she refused to leave, Plaintiff was arrested. Defendants assert that these events gave rise to probable cause to arrest Plaintiff for trespass and obstruction of governmental authority. (ECF 40 at 16-17).

Plaintiff raises apparent factual disputes here: first, she disputes that the police in fact told Plaintiff to leave, and second, that even if they did, the order to leave was unlawful because it was predicated on the allegedly unconstitutional NYPD Policy, and thus was a violation of her First Amendment rights. Although Plaintiff's opposition disputes that Defendant police officers revoked her license to be in the precinct house, a close reading of the SAC suggests that they *did* direct her to leave, but that she believed the reason for the direction was based on an

unconstitutional NPYD Policy: "Officers did not ask Plaintiff to leave at any point because of her *presence* in the atrium." (ECF 90 ¶ 50, emphasis in original). The BWC footage also clearly shows that Plaintiff was told to leave, and that she had shaken her head in response.[7] This is sufficient probable cause to arrest for trespass. Although not necessary for dismissal, the officers also had probable cause to arrest Plaintiff for obstruction of governmental authority, even though the door from the atrium to the main lobby was not completely blocked.[8] *See, e.g., Kass v. New York City*, 864 F.3d 200, 207-211 (2d Cir. 2017) (analyzing probable cause to arrest for obstruction of governmental authority, collecting and discussing cases of protestors in purely public spaces arrested for same).

Finally, Plaintiff also appears to claim that even if there was a lawful order given to leave, she was given no "meaningful chance to comply" with that order before she was arrested. (ECF 112 at 31). Whether the officers' actions were reasonable in how and when they effected Plaintiff's arrest, however, are relevant to Plaintiff's excessive force claim (Claim Three), and not

---

[7] Beginning at around 1:19 in the video, a voice clearly states, "Ma'am, we are asking you to leave; you're not leaving, and you're not allowed to record." Immediately after this statement, Plaintiff visibly shakes her head, after which she slides to the ground as the officers approach her, and she is arrested. (ECF 90 ¶ 45, link to video provided; *see also* ECF 113-1, Exhibit 1).

[8] Plaintiff also raises factual disputes over whether the circumstances of her arrest show that she was in fact obstructing governmental authority. Although probable cause to arrest for trespass is sufficient to warrant dismissal of her false arrest claim, the circumstances depicted on the video also present sufficient probable cause to arrest Plaintiff for obstruction of governmental authority. *Westby*, 583 U.S. at 57 ("[Probable cause] 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity[,]'" from the perspective of an objectively reasonable officer.) (quoting *Illinois v. Gates*, 462 U.S. 213, 243-44, n.13 (1983)). While Defendant police officers can be seen on the video passing through the doorway into the main lobby of the precinct house, Plaintiff is standing in a corner that prevents one of the two doors from fully opening. Moreover, she is standing in front of a sign that explicitly prohibits recording under the NYPD Policy, and acting in a manner in which the Defendant police officers believed her to be violating that Policy. Thus, it was objectively reasonable for the officers to conclude that Plaintiff's presence was obstructing governmental authority.

to whether probable cause existed to arrest her at all.[9] Accordingly, Claim One should be **DISMISSED**.

### 2. Claim Two: Denial of a Right to a Fair Trial

A person is deprived of their right to a fair trial based on fabricated information if an "(1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)). Dismissal of a false arrest claim alone is not dispositive of a denial of a right to a fair trial claim. *Garnett*, 838 F.3d at 277-78. Nor must a Plaintiff take a case to trial; all that is necessary is that they suffer something worse because of the fabricated evidence. *Marom v. Blanco*, No. 15-CV-2017 (PKC), 2019 WL 3338141, at *7 (S.D.N.Y. July 25, 2019). "This right is violated '[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors.'" *Frost v. New York City Police Dep't*, 980 F.3d 231, 244 (2d Cir. 2020) (quoting

---

[9] Defendants also assert that they are entitled to qualified immunity. For Plaintiff's arrest, Defendants are entitled to qualified immunity because I find that the arresting officers had probable cause to arrest Plaintiff. *Marcavage v. City of New York*, 689 F.3d 98, n.7 (2d Cir. 2012) ("Because we conclude there was probable cause for Plaintiffs' arrest, *a fortiori* he would be entitled to qualified immunity on this claim.") (citing *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (holding that an officer is entitled to qualified immunity so long as it was not obvious that there was no probable cause)). Even if Defendants lacked probable cause to arrest, however, they had "arguable" probable cause, which would suffice for qualified immunity for the false arrest claim. *See Westby*, 583 U.S. at 65 ("Even assuming the officers lacked actual probable cause to arrest the partygoers, the officers are entitled to qualified immunity because they reasonably but mistakenly concluded that probable cause was present.") (internal quotations omitted); *see Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) ("An officer's determination is objectively reasonable if there was "arguable" probable cause at the time of arrest—that is, if officers of reasonable competence could disagree on whether the probable cause test was met.") (internal quotations omitted).

*Ricciuti*, 124 F.3d at 130). Such violations are "redressable in an action for damages under 42 U.S.C. § 1983." *Id.* And unlike a malicious prosecution claim, "a Section 1983 claim for the denial of a right to a fair trial based on an officer's provision of false information to prosecutors can stand even if the officer had probable cause to arrest the Section 1983 plaintiff." *Garnett*, 838 F.3d at 277-78.

Nonetheless, Plaintiff's denial of a right to a fair trial claim still should be dismissed for failing to sufficiently plead the second and third elements of the claim. Specifically, Plaintiff has not sufficiently pleaded fabricated information nor that the allegedly fabricated information would be material, that is, "likely to influence a jury's decision." *Marom*, 2019 WL 3338141, at *7 ("One of the limiting principles that restricts fair trial claims based on fabricated evidence is the requirement that the fabricated evidence be likely to influence a jury's verdict.") (internal quotations omitted).

Reading Plaintiff's SAC and construing the allegations in her favor, the only allegedly false or fabricated statement identified in the criminal complaint (indeed any statement at all) is the statement that Plaintiff "did 'resist lawful arrest by extending and locking [her] arms and refusing to turn onto [her] stomach while [defendant Clement] attempted to place [plaintiff] in handcuffs.'" (ECF 90 ¶ 71, n.6).[10] The SAC's other conclusory allegation of "several material omissions and false statements," in the criminal complaint cannot support a denial of a right to a fair trial claim, because they do not allege what evidence was "fabricated." (ECF 90 ¶ 71-72).

---

[10] "In the interest of clarity, Plaintiff is not conceding she was not sufficiently complaint [sic] – or that Defendants were not lying when they stated Plaintiff resisted arrest and locked her limbs (Defendants **were** lying). Rather, to the extent Defendants claim their violence was necessary for **even** those reasons, the no recording policy was a but-for cause of that violence." (emphases in original).

Nor can Plaintiff's bald assertions of additional facts in her opposition brief save this claim.[11] There is no citation to the SAC for the multiple assertions that Defendants "prevented her from complying" with their instructions, or that "she did not refuse to turn onto her stomach, extend or lock her arms, or otherwise resist arrest." (ECF 112 at 23, 33). The video attached to the SAC and referenced by Plaintiff and Defendants in support of both of their arguments neither "proves" nor "disproves" whether Plaintiff refused to turn onto her stomach or whether Defendants prevented her from doing so: when Plaintiff is first approached and told to "turn around," she does not do so, and instead slides to the floor facing the officers. Plaintiff begins screaming as the officers grab her coat as she is sliding to the floor. (ECF 90 ¶ 45, link to video provided, at 1:25). After Plaintiff is on the floor, she is not visible in the video, but Defendant NYPD officers can be heard repeatedly telling her to turn over onto her stomach, and they appear to be trying to roll her from her back to her stomach. *Id.* It is not clear at what point during this process Plaintiff's elbow is injured.

Nonetheless, even if one were to assume the falsity of the statement in the criminal complaint that Plaintiff had been "resisting arrest," based on the BWC footage, Plaintiff has not pleaded materiality of this statement. First, the SAC does not identify the charges that were brought in the criminal complaint. The parties only mention probable cause to arrest for trespass and obstruction of governmental authority when discussing the dismissal of the false

---

[11] Plaintiff again conflates the standards for summary judgment and those on a motion to dismiss, asserting that "Defendants have cited no evidence at all to support that bald assertion [that Plaintiff was refusing to turn onto her stomach], let alone evidence sufficient to disproves [Plaintiff's] [sic] version of events." (ECF 112 at 33) (emphasis added).

arrest claim. (*See* ECF Nos. 40 at 13-20; ECF 112 at 26-32).[12] If the criminal complaint only charged Plaintiff with trespass and obstruction of governmental authority, then whether Plaintiff locked her arms (or not), or whether she refused to turn onto her stomach (or not) is "not a fact likely to influence a jury's decision" whether she committed the charged offenses. *Marom*, 2019 WL 3338141, at *8. Accordingly, this claim should also be **DISMISSED**.

> 3. Claims Four, Five and Six: Effect of *Reyes* Decision
>> a) Claims Four and Five: Retaliation for Exercise of First Amendment and Violation of New York Civil Rights Law § 79-P

On November 2, 2023, Judge Clarke considered whether the NYPD Policy prohibiting recording in publicly accessible areas of NYPD precinct houses violates (as relevant here) the First Amendment, New York Civil Rights Law § 79-P, and other state and city laws. *See Reyes v. City of New York*, No. 23-CV-6369 (JGLC), 2023 WL 7212192 (S.D.N.Y. Nov. 2, 2023). In *Reyes*, Judge Clarke found that plaintiff Reyes was entitled to a preliminary injunction enjoining the NYPD from enforcing its policy against recording in precinct houses, because the New York State and New York City Right to Record Acts (RTRAs) "do not carve out police precinct lobbies as places where individuals are not allowed to record." *Reyes*, 2023 WL 7212192, at *11. Days later, Defendants appealed, and the Second Circuit stayed Judge Clarke's injunction. (No. 23-CV-6369, ECF 41). Notably, in order to reach the decision under the state and city RTRAs, Judge

---

[12] Notably, the parties' briefing does not allege that Plaintiff was charged with resisting arrest. But if Plaintiff was charged with resisting arrest, the statement in the criminal complaint that Plaintiff had locked her elbows and refused to turn onto her stomach would not likely reach the jury in that form because the truth or falsity of those statements would be proven (or disproven) "by other, more persuasive evidence," such as BWC footage of the incident from other officers and the testimony of Plaintiff and the other officers. *Marom*, 2019 WL 3338141, at *9.

Clarke first found that the Policy likely did not violate the First Amendment, after concluding that a police precinct house is a limited public forum.[13] *Reyes*, 2023 WL 7212192, at *5-10.

The parties agree that the Second Circuit's decision in *Reyes* would be dispositive of the right-to-record claims here. (*See* ECF 145, Transcript of November 16, 2023 Conference, 3, 14). In *Reyes*, Judge Clarke noted that defendant City of New York had only asserted that police precinct houses are limited public fora, *Reyes*, 2023 WL 7212192, at *7, and did not reach whether precinct houses are – as Defendants in this case have argued – *nonpublic* fora. (ECF 40 at 28). Nonetheless, even considering police precinct houses as limited public fora, Judge Clarke found that the NYPD Policy did not violate the First Amendment because it was both reasonable and viewpoint neutral, *Reyes*, 2023 WL 7212192, at *10,[14] and I agree with her analysis. Judge Clarke found, however, that Reyes was likely to succeed on his state law claims because the NYPD Policy violates the broadly-worded RTRAs, which allow for recording of "law enforcement activity" and "police activities." *Id.* at 11. Accordingly, I respectfully recommend that Count Four (retaliation for exercise of First Amendment rights) be **DISMISSED**, and dismissal of Count Five (violation of New York Civil Rights Law § 79-P) be **DENIED**, both without prejudice to reconsideration after the Second Circuit's decision in *Reyes*.

---

[13] Plaintiff conflates the forum analysis for the First Amendment claim with the *Reyes* defendants' concession that the analysis <u>under the RTRA</u> does not require a forum analysis, and then asserts that the concession "essentially decides Defendants' motion to dismiss." (ECF 135 at 2).

[14] *Reyes*, 2023 WL 7212192, at *10 ("The City has presented privacy, safety and security interests that are implicated by video recording in police precinct lobbies. Although Plaintiff has presented countervailing considerations for each concern raised, based on the evidence currently presented and at this juncture, Plaintiff has not sufficiently refuted the City's claim that prohibiting recording in police precinct lobbies is a reasonable restriction. . . . Accordingly, Plaintiff has not shown a substantial likelihood of success on the merits with respect to his challenge that the Procedure violates the First Amendment.").

> b) Claim Six: <u>Monell Liability for the NYPD Policy and Failure to Train NYPD Officers</u>

For the following reasons, Count Six (*Monell* liability for the NYPD Policy and failure to train NYPD officers) should also be **DISMISSED**.

Municipal liability under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), attaches to "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. New York City Dep't of Education*, 982 F.3d 86, 97 (2d Cir. 2020). Municipalities may not be held liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. "'Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.'" *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. Here, Plaintiff pleads *Monell* liability under two theories: (1) "for illegal policies" i.e., the NYPD no-recording policy, (ECF 90 at 21-23) and (2) "for training" (ECF 90 at 23-24).

*Monell* liability attaches for policies that violate the <u>United States Constitution</u>, not for policies that violate a state or municipal law. *See Mastromonaco v. Cnty. of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019) ("It is well-settled that a *Monell* claim cannot succeed without an underlying constitutional violation, and here there is no constitutional violation.") (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). The NYPD Policy prohibits video recording in

police precinct houses. (ECF 90 ¶ 158).[15] Police precinct houses are, at best, limited public fora in which the government may restrict the form or manner of speech so long as the policy is viewpoint neutral and reasonable in relation to the forum's purpose. *Reyes*, 2023 WL 7212192, at *8-10. Because I agree with Judge Clarke's reasoning that the Policy does not violate the First Amendment, *Monell* liability does not attach for enactment of the NYPD Policy itself, for NYPD's enforcement of the Policy, or for failure to ensure "that reasonable and appropriate levels of supervision were in place within and/or over the NYPD" regarding enforcement of this Policy. (ECF 90 ¶ 165).

The only other *Monell* claim that could possibly implicate a constitutional injury is Plaintiff's allegation of excessive force (Claim Three), which Defendants did not challenge in their motion to dismiss. While not a model of clarity, Count Six may be asserting that the failure to train officers in some unspecified way led to a pattern and practice of NYPD officers using excessive force while conducting arrests, in violation of the Fourth Amendment. *See* ECF 90 ¶ 169:

> Defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, excessive force, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiff's arrest.

---

[15] "The City's official policy is written down in multiple places, including both signs at the station, and in Patrol Guide § 203-29 ¶ 7 ("Members of the public are not allowed to photograph and/or record police activity within Department facilities").

And ECF 90 ¶ 172:

> The official policies, practices and customs of the City of New York and the NYPD alleged herein violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the Constitution of the United States.

Beyond the conclusory allegations asserted in the SAC, Plaintiff pleads no facts (other than the existence of the "Patrol Guide," perhaps) to support a *Monell* claim that the City's failure to train was "so persistent and widespread as to practically have the force of law." *Friend*, 61 F.4th at 93 (internal citations omitted). Such conclusory assertions are not enough.

Nor can one incident support a *Monell* claim. *See, e.g.*, *Smith v. NYC Dep't of Corr.*, No. 18-CV-7018 (AT) (OTW), 2019 WL 2473524, at *5 (S.D.N.Y. June 13, 2019), *report and recommendation adopted sub nom. Smith v. Warden of N. Infirmary Command*, No. 18-CV-7018 (AT) (OTW), 2019 WL 2866729 (S.D.N.Y. July 3, 2019) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.") (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)).

Accordingly, Count Six should be **DISMISSED**.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendants' motion to dismiss Claims One, Two, Four, and Six, be **GRANTED**, and dismissal of Claim Five be **DENIED**, so that the only remaining claims are Claims Three, Five, and Seven.

## V. OBJECTIONS

In accordance with 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). A

party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be addressed to the Honorable Lewis A. Kaplan, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Kaplan.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Respectfully submitted,

_/s/ Ona T. Wang_

Dated: December 14, 2023  
New York, New York

**Ona T. Wang**  
United States Magistrate Judge