

December 28, 2023

Hon. Ona T. Wang
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

<u>By Electronic Filing.</u>

    Re:    Case No. 22-cv-01445, <u>Rodney v City of New York, et al</u>.

Dear Judge Wang:

    As the Court likely recalls, my firm, with co-counsel, represents Plaintiff in the case above. As directed by the Court, below is Plaintiff's monthly status report. Given what appears to us to be a total failure to engage, we look forward to seeing Defendants' perspective on the below in their letter this month. *See* ECF No. 136 ¶ 6.

    In short, as more fully explained below, since the conference in November, by all appearances, Defendants have done nothing. Stunningly, Plaintiff still does not have a single sworn interrogatory response, going on a year after asking Defendants to cure this obvious failure to follow the Federal Rules. Likewise, Defendants failed to confer over the past month and a half, and then failed to file the Court-directed motion for a protective order, about the still-unproduced email and text messages. And Defendants have provided no updates on the many, many other outstanding issues.

    Finally, given the length of time that has gone by without the discovery ball moving forward at all as well as the Court's comments at the last conference, Plaintiff asks the Court to consider appointing (at the City's expense, given the below) a special master to supervise these apparently intractable discovery issues and get discovery on track. *See* Fed. R. Civ. P. 53(a)(1)(C).

**Discussion**

    **I.   Brief Context on Discussions.**

    As the Court may recall, the latest counsel swap is not Defendants' first (and, indeed, the attorney previously on this case — whom Mr. Musso was saying he still needed to consult on multiple issues — still works at the Law Department).

    Likewise, as more fully set out below, Mr. Musso appears to have been on some kind of job probation for at least the last two months. He was not even able to agree to a time for a meet and confer without getting approval from his supervisor — presumably, the same supervisor who signed the letters at ECF Nos. 152 and 154. Indeed, Mr. Musso represented repeatedly that he had discussed with that supervisor ***every single issue*** raised in each of the letters at ECF Nos. 117, 129,



137, 143, 144 and Exhibit 1 (documenting 17 specific issues Mr. Musso said he had raised with his supervisor) — as well as the specific things directed on the record at the November 16, 2023 Conference and the Court's corresponding Order at ECF No. 136. In short, either Mr. Musso was actively and affirmatively misrepresenting what communications he'd had with his supervisor, or the claim that the supervisor is less than familiar with this case is not quite candid.

Similarly, the claim that Mr. Musso's departure came as a surprise[1] to the Law Department is itself surprising. As noted above, Mr. Musso was very clearly on some kind of probationary supervision — and unable to take even the most innocuous position without specific supervisory approval — for most of his time on this case. Indeed, it became so bad that Plaintiff repeatedly asked to have that supervisor present at meet and confers, because the meetings were utterly unproductive.[2] Mr. Musso — for whatever reason — was clearly going to either leave or be fired from the Law Department imminently. No attorney can function long term in the probationary micromanagement he was forced to. At his departure, our reaction was one of, "I wonder what took so long," not surprise.

Normally, Plaintiff would not raise any of this. But because the Law Department supervisor now appearing is claiming both unfamiliarly with the case itself and surprise that Mr. Musso left, it is relevant context for what follows — which is that the case has not moved forward one iota.

## II. Despite Court Orders, Defendants Still Have Not Served Sworn Interrogatories.

Defendants still have not served a single sworn interrogatory. Not one. Without reciting the many months and countless meet and confers (at which Mr. Musso said he discussed this issue with his supervisor repeatedly) leading up to the November 16 conference, start there: the Court unambiguously ordered this done by December 8. 2023-11-16 Tr. at 16:10-14. And the Court then extended the deadline to December 22, 2023 when Defendants — with no real explanation — failed to serve a single response. ECF No. 147. Then, Defendants failed to serve even a single response once again. Apparently Defendants assume the Court will extend this deadline indefinitely.[3] *But see,*

---

[1] Specifically, a surprise on the weeks-to-months-to-years timescale. As set out in the letter at ECF No. 152, the Law Department knew of Mr. Musso's departure at least 48 hours in advance of alerting Plaintiff and applying for more time, and chose to do nothing and not move before the close of business on the day of multiple Court-ordered and agreed upon deadlines.

[2] *See, e.g.,* Ex. 1 (below), at 1 (If you do not have authority to actually make any commitments, **please consider this a formal request to bring a supervisor with authority to actually address these issues to that meeting**") (quoting and adding emphasis to Nov. 1 email (Ex. 2)), at 1 n. 1 Oct. 26, 2023 Email ("Can you clarify why you need to coordinate with your superior to provide your availability for a basic discovery conference (or for that matter, why that coordination has taken weeks just to say when you can be available)? If your superior is the one litigating this case, I should simply be speaking with her directly.") (quoting Oct. 26, 2023 email).

[3] Other courts routinely sanction parties for this kind of conduct. *See, for examples, RLI Ins. Co. v Nexus Servs.*, 2023 US Dist LEXIS 96817, at *31 (WD Va June 1, 2023) (ordering a last chance, after which "Nexus's officers … into civil confinement until sworn and complete interrogatory answers are served"); *Trammell v Greiner*, 1996 US Dist LEXIS 5175, at *8 (SDNY Apr. 18, 1996) (compelling sworn responses and separately

Page 2 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



      This problem is not unique to this case.  Other judges have needed to remind the City that "Court orders are mandatory, not precatory."  *In re New York City Policing During Summer 2020 Demonstrations*, 20-cv-8924, ECF No. 383 (SDNY 2022) (issuing an order to show cause and ultimately awarding sanctions, where "it appears that the City still has not complied with the Court's Order to provide the sworn statement" and gave no explanation).  Like in *In re Policing*, the Court should Order Defendants to show cause and explain exactly how, if it did, Mr. Musso's departure prevented a supervisor who was (1) personally aware of the deadline and all related substantive issues and (2) aware at least 48 hours in advance of the deadline Mr. Musso's departure from complying with the Court's orders.  Plaintiff asks — as she did in opposing the extension request — that the Court enforce its orders and make clear Court-directed deadlines are "mandatory."

### III. Despite Court Orders, Defendants Have Not Served Outstanding Document Discovery.

      As discussed at the November 16 conference, Defendants were supposed to resolve "outstanding other document production issues" — that were specifically identified in writing in advance of the conference — by December 8, 2023.  2023-11-16 Tr. at 25:6-9.  The Court extended that deadline to December 22.  ECF No. 147.  Despite multiple rounds of requests for updates or meet and confers, nothing at all has happened on this front since the conference.

      In advance of the conference, Plaintiff scheduled a meet and confer and sent a detailed list of what document issues were outstanding.  But at the meeting, Mr. Musso was completely unprepared to discuss anything of substance, saying instead each time he was still in discussions with his supervisor.  Thus, after the meeting, Plaintiff sent a detailed letter (attached as **Exhibit 1**) outlining all outstanding issues in depth — and also noting the persistent issue that Mr. Musso was running even the smallest issues through a supervisor.  The letter notes no less than *seventeen* specific issues — all flagged in advance — where Mr. Musso was still discussing with his supervisor and unable to take any position whatsoever or discuss the substance of Defendants' objections and/or why Defendants had not produced documents despite affirmatively stating they were not withholding documents.

      At the November 16 conference, rather than going through all of these issues one by one, Plaintiff expressed — and Defendants didn't object to — the understanding that the Court's direction as to the "outstanding other document production issues" covered "all the outstanding issues" as "outlined in a written communication" (e.g., the November 15 letter that is Ex. 1).  2023-11-16 Tr. at 32-13-20.  Plaintiff expressed this understanding in multiple emails, again without any objection, between November 16 and December 22.  *See, e.g.,* **Exhibit 2** (a characteristic email

---

ordering the attorney to show cause on sanctions); *Banjo v United States*, 1996 US Dist LEXIS 10743, at *5 (SDNY July 29, 1996) (dismissing case in full where, among other discovery failures, the plaintiff produced interrogatory responses that "were neither signed nor sworn to" and after an order, still had "not produced revised and sworn interrogatory answers"); *Hall v In-Room Plus*, 2006 US Dist LEXIS 23422, at *8 (WDNY Apr. 26, 2006) (awarding fees as sanctions, and requiring party to cure failure to serve sworn responses within five business days; *Drogueria Betances, LLC v Brausa Dental LLC*, 2022 US Dist LEXIS 153199, at *5 (MD Fla June 13, 2022) (awarding sanctions and warning of further sanctions if the failure is not cured).

COHEN&GREEN      Page 3 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t: (929) 888.9480  ·  f: (929) 888.9457  ·  FemmeLaw.com



exchange).  Likewise, multiple emails and meet and confer conversations confirmed Mr. Musso's supervisor was aware of the extensive December 22 deadlines — and substantively what was outstanding.

Nonetheless, Defendants have done nothing at all to address outstanding document issues since the November 16, 2023 conference.  Thus, as spelled out in more detail in the November 15, 2023 letter, there remain outstanding issues on Document Requests 1, 4, 8, 11, 24, 23, 25, 26, 28, 32, 34, 36, 37, 38, 39, and 40.  And again, as set out in prior letters, all of this is not even to get to the parties' real disputes:  These are all issues where Defendants have nominally agreed they are not withholding documents, yet documents have not been produced.[4]  That is, all of this unnecessary fighting is just to get to the ground level that one would expect in federal discovery responses.

### IV. Despite Court Orders, Defendants Still Have Not Finished their Incomplete Interrogatory Searches.

As the Court knows, the requests largely being litigated here were served over a year ago, in October 2022.  Defendants' responses explicitly say they are still searching — and therefore cannot answer — Interrogatories 5, 6, and 10.  The Court ordered final responses by December 8, and then extended that to December 22.

Defendants still have not finished, or provided any status, explanation for why they need more than a year to answer these interrogatories, or anything of the kind.

### V. Defendants Failed to Move for Any Protective Order, and Failed to Meet and Confer at All on Emails and Texts.

At the November 16, 2023 conference, the Court set out specifically what it expected Defendants to do about emails and text message production:

> My direction is going to be to Mr. Musso. Talk about ways to limit the search, try to come to an agreement with Mx. Green on a more limited search and how you can do that search, whether it's by search terms, limiting custodians, but work productively with each other.
>
> And if you cannot reach an agreement about how to limit that search and production, because what I'm hearing is that you're saying it's overbroad, I'm going to make you do some work for a change. Mx. Green has been writing all the letters. You get to write a letter.  So if you can't agree, you are directed to file a letter motion for a protective order on this issue by December 22nd.

---

[4] Plaintiff has a handful of ripe actual disputes — that is, instances where Defendants have actually stated they are withholding something and given an objection that is the basis for withholding (though the objections are boilerplate and Defendants have refused to explain what their substance is) — she intends to raise in the near future.





2023-11-15 Tr. at 22:16-23:4.  The Court then set December 8, 2023 as the deadline to confer and reach an agreement.  ECF No. 136 ¶ 3.

But Defendants were completely silent after the conference.  So, on Monday, December 4, 2023 (e.g., the first day of the week of the deadline), Plaintiff wrote asking when she could expect a proposal, basic ESI information, and for when Defendants could meet.  That full thread is attached as **Exhibit 3.**  Still met with total silence, Plaintiff followed up again on December 7.  Defendants agreed to meet that afternoon.  However, at that meeting, Mr. Musso was utterly unprepared to discuss anything, and said he was still trying to sort out Defendants' substantive positions with his supervisor.  Specifically, while Plaintiff asked to meet with the supervisor and (more importantly) eDiscovery staff there, Mr. Musso represented, "I will have a conversation with my superiors before the meeting."  After the unproductive first meeting, Mr. Musso called again later in the evening, still unprepared to have any substantive discussion, but promising substance Friday morning.

Yet, despite follow-up throughout the day of the deadline, Mr. Musso said he was still discussing things with his supervisor throughout December 8.  Defendants sent the first — and only — thing resembling a proposal after 6 p.m. the night of the deadline.  Defendants still had not provided baseline ESI information about likely custodians and the like.  Nor did Defendants discuss the substance of the proposal at all with Plaintiff, yet drafted a letter as if there had been discussion and agreement.  Plaintiff objected, and after the opposed letter, the Court extended other deadlines, leaving the protective order deadline in place.

Over the next weeks, Plaintiff attempted to hold Defendants' hands through these issues, including by basically creating for Mr. Musso a worksheet to use as a basic questionnaire to figure out what likely custodians have responsive documents — so the parties could meaningfully discuss what searches were sufficiently likely to produce fruit.  Likewise, Plaintiff noted that the Court even provides a model order in its individual practices to address these issues.  An email in that vein — dated December 11, 2023 — is attached as **Exhibit 4.**  Plaintiff also sent proposed search terms and followed up on having meetings on these issues with someone with appropriate knowledge on December 18, and again on December 20.  Defendants' response was complete silence.

As it stands, then, Defendants have still not done the necessary groundwork — and appear not to even have started it — to have a meaningful discussion about email and text production.  Moreover, despite a deadline that the relevant supervisor was unambiguously aware of, Defendants elected not to make any application for a protective order and only ask for an extension late in the evening the day of the deadline.

Thus, no progress has been made on this issue either.

### VI. Defendants Missed Deadlines, then Self-Imposed Deadlines, on Newer Discovery.

Plaintiff served a second set of requests ("Plaintiffs' Second Requests") on November 4, 2023.  Defendants did not respond or request an extension by the deadline on December 4.

COHEN&GREEN                                                                                                  Page 5 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Plaintiff followed up on December 5, then again on December 7 after Defendants did not say anything. In the second follow up, Plaintiff suggested she would ask the Court to so-order the deadline to keep things on track. Defendants asked for an extension until December 22, and after a verbal discussion, the parties agreed on the understanding that this would be "a real deadline." Ex. 2. Defendants missed that deadline.

## VII.   Settlement.

Plaintiff's demand of many months ago has still not received any response.

## VIII.   Motion to Dismiss.

Following the Court's decision, both parties have sought more time to file objections. Plaintiff's perspective is that, given that the Right to Record Act claims the Court found well-pled cover all relief sought and directly challenge (seeking injunctive relief) the relevant NYPD policies, a policy-oriented discovery phase is necessary. Or, at least, it is if Judge Kaplan makes no changes to the ruling. Presumably, Defendants will challenge that part of the ruling, while Plaintiff may challenge other aspects. So, given that, it appears to Plaintiff that the most prudent course to not treat discovery any differently than before until Judge Kaplan resolves any objections.

As always, we thank the Court for its time and consideration.

Respectfully submitted,

/s/
_____

J. Remy Green
   *Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

Page 6 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com