

remy green <remy@femmelaw.com>

---

## Rodney v City of NY et al 22-CV-1445 Joint Letter regarding discovery 12-8-23.pdf

**remy green** <remy@femmelaw.com>   Mon, Dec 11, 2023 at 3:19 PM
To: "Musso, Gregory (LAW)" <gmusso@law.nyc.gov>, Regina Yu <regina@femmelaw.com>, Protester Cases <Protests@femmelaw.com>

Hi Greg,

On the email/text discovery issues, as I've repeatedly said -- and you've expressed you understood -- this frames things exactly wrong. The collection here is aimed at collecting *all* communications about the incident at issue in this case, period.

That means the first step is required on your end (I should note that this is also contemplated by Judge Wang's individual practices on this -- with a proposed model stipulation for parties to use on these issues here: [https://www.nysd.uscourts.gov/sites/default/files/practice_documents/otwModelJointElectronicDiscoverySubmissionAndProposedOrder.pdf](https://www.nysd.uscourts.gov/sites/default/files/practice_documents/otwModelJointElectronicDiscoverySubmissionAndProposedOrder.pdf))

One of the first things in that proposal -- which is the thing I've *repeatedly* said we need to do before we do anything else -- is a requirement that "Counsel certify that they are sufficiently knowledgeable in matters relating to their clients' technological systems to discuss competently issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf."

Before we can talk about specific custodians, search terms, or date ranges, as we discussed multiple times last Thursday, we need you to speak to people at NYPD and the City about *who* and *where* conversations about high profile police brutality cases take place, when they are likely to take place, and so on.

Until you have those conversations and provide that information, we can't have a meaningful discussion, except on the search terms.

In order to expedite this, here's a worksheet-type list you can try to fill out:

1. What departments/offices/executives within the NYPD discuss high profile cases like this one? _____.
    1. What personnel are cc'd in those conversations? _____.
    2. What modes of communication do they use (e.g., email, text, etc.)? _____.
    3. Does anyone in 1(1) above specifically remember discussing this case? _____. If so, when and with whom? _____.
2. What departments/offices/executives within the City discuss high profile cases like this one? _____.
    1. What personnel are cc'd in those conversations? _____.
    2. What modes of communication do they use (e.g., email, text, etc.)? _____.

3. Does anyone in 2(1) above specifically remember discussing this case? _____.
   If so, when and with whom? _____.

3. When press asks for comment on a story, what departments/offices/executives within the NYPD are involved in responding? _____.
    1. What personnel are cc'd in those conversations? _____.
    2. What modes of communication do they use (e.g., email, text, etc.)? _____.
    3. Does anyone in 3(1) above specifically remember discussing this case? _____. If so, when and with whom? _____

4. When press asks for comment on a story, what departments/offices/executives within the City are involved in responding? _____.
    1. What personnel are cc'd in those conversations? _____.
    2. What modes of communication do they use (e.g., email, text, etc.)? _____.
    3. Does anyone in 4(1) above specifically remember discussing this case? _____. If so, when and with whom? _____

5. When a high profile case involves potential misconduct by the NYPD, sometimes NYPD, on its own, begins an investigation. What departments/offices/executives within the NYPD are involved in making such decisions? _____.
    1. What personnel are cc'd in those conversations? _____.
    2. What modes of communication do they use (e.g., email, text, etc.)? _____.
    3. Does anyone in 5(1) above specifically remember discussing this case? _____. If so, when and with whom? _____

6. For the individual officers named in this suit:

    1. What communications do they send after being involved in an arrest and use of force like this one, and with whom? _____.
    2. What modes of communication do they use (e.g., email, text, etc.)? _____.
    3. Does anyone in 6(1) above specifically remember discussing this case? _____. If so, when and with whom? _____.
    4. Did they communicate on personal devices about this incident, whether with friends, a spouse, colleagues, or otherwise? _____.

This is not meant to be exhaustive, and it is not my job to teach you how to collect ground level discovery information from your client. Rather, this is a basic jumping off point, and inevitably, some responses will require follow-up questions (yet another reason your failure to send any proposal at all until after the close of business on the date of a deadline was not a serious effort to meet and confer on these issues).

One *obvious* example that should come out of some of these questions is the receipt of and response to PA letter (indeed, seeing if your client finds that letter may be a good way to check if you're getting the whole story). That is, the PA letter is not relevant because we're seeking that specifically or by name, but because it is a communication with the City, Defendants, and the NYPD *about this incident.* Thus, it is responsive to, among other things, Document Request 4 -- which Defendants have stated they are not withholding any documents in response to. And so, in

12/27/23, 4:02 PM    Cohen&Green Mail - Rodney v. City of NY et al. 22-CV-1445 | Sent Letter Regarding Discovery 12-8-23.pdf

Case 1:22-cv-01445-LAK-OTW Document 155-4 Filed 12/28/23 Page 3 of 3

response to question 1(3) above, the Public Advocate should come up when NYPD tells you who they spoke to about this specific case.

But the PA letter is low hanging fruit, because we *happen to know it exists.* And even for just that document, to get to ground here, as I said repeatedly on the call, you need to tell us who was on that thread -- and who was on the thread responding to it -- so that we can include those on custodian lists, and see what *other* communications were involved in responding to that letter (since you have not served a privilege log saying you're withholding any such documents, so any privilege claim is waived).

On search terms, suggesting literally a single term is not serious. Nor is it at all what we discussed, or -- frankly -- something someone "sufficiently knowledgeable in matters relating to their clients' technological systems to discuss competently issues relating to electronic discovery" would suggest. With that said, we will send a proposal your way by the end of the week.

To sum up, we have two action steps here:

1. We need custodian/ESI interview/etc. information from you, as set out above. When can you provide that?
2. We will propose a real set of search terms by Friday.

Yours,

Remy.

———————————————————

**J. Remy Green**

      *Partner*
| Cohen&Green P.L.L.C. | #FemmeLaw |
| remy@femmelaw.com (e) | (929) 888.9560 (direct) |
| (929) 888.9480 (p) | (929) 888.9457 (f) |
| honorific / pronouns:  Mx. / they, their, them |
| 1639 Centre St., Ste. 216 | Ridgewood (Queens), NY 11385 |

———————————————————



———————————————————

[Quoted text hidden]