

January 24, 2024

Hon. Ona T. Wang
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

By Electronic Filing.

      Re:    Case No. 22-cv-01445, Rodney v City of New York, et al.

Dear Judge Wang:

      As the Court knows, my firm, with co-counsel, represents Plaintiff in the case named above. I write to clarify Plaintiff's deadline to oppose Defendants' motion for a protective order (ECF No. 165). As I understand it, that deadline is February 22, 2024.

      Second, given the nature of Defendants' protective order motion, I write to essentially ask if there is any guidance the Court has in particular in light of its comments about meeting and conferring for the first time at a conference and related comments about trying to resolve the scope of searches without litigation.

*Timing.*

      On timing, as the Court explained on the record at the November 16, 2023 conference, it set a long date for Plaintiff to oppose Defendants' motion so that "[i]f it turns out that the city files for a motion for a protective order that takes the position that is perhaps a little more reasonable because all of a sudden, they have to explain their position, takes a little bit better of a position, there is absolutely nothing that precludes [Plaintiff] from meeting and conferring and still hammering out an agreement." 2023-11-16 Tr. at 23:11-18.

      The Court extended Defendants' date to move for a protective order from December 12, 2023 until January 22, 2024. Plaintiff's opposition was initially due January 12, 2024. While the Court did not explicitly set a new deadline to oppose, I want to confirm the understanding that the deadline to oppose the motion is February 22, 2024 — keeping the same time between application and opposition.

*Guidance on Lack of Substantive Meet and Confers.*

      Second, as it stands, we lack some of the basic information that would usually be necessary to respond to Defendants' application, and Defendants have made clear they object to giving it to us. There is also some confusion in Defendants' application about what documents are being



sought.[1]  But at bottom, the basic problem is that Defendants have not provided any information at all about what custodians are likely to have documents related to the incident — and counsel appears to not even have asked those questions within their client.  This runs counter to common ESI best practices — as the Sedona Principles note:  "a responding party cannot unilaterally demand the requesting party submit proposed search terms and a list of custodians against which to run the search terms."  *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 124 (2018) ("*Sedona*").

Thus, I want to ask if there is any guidance the Court can offer on how it wants us to proceed, particularly in light of its comments about ripe disputes at the last conference.  *See, e.g,* 2023-11-15 Tr. at 17-24.

At present, Plaintiff has no idea what likely custodians have communications about the incident beyond knowing some general facts like:  (1) the Public Advocate sent a letter to someone and that letter received a response, (2) a CCRB investigation began without Plaintiff's involvement, (3) it appears some decision was made not to have any IAB or NYPD internal investigation, and (4) some comments were offered to the media.  We asked Defendants for answers to basic questions, and they refused.  *See* ECF No. 115-4.  Likewise, we have repeatedly said we're happy to consider a counterproposal on search terms, but after Plaintiff served a counterproposal, Defendants have refused respond at all beyond their initial proposal of just searching "Rodney."[2]  And Defendants have not offered any hit reports — which Plaintiff made clear she would consider — showing if any terms were returning outsize numbers of results.  So, in responding to a motion, Plaintiff cannot – for example — say, "we hear Defendants' objections about the incremental value of collecting communications from Seargent ABC, but the parties still have a dispute about Lieutenant XYZ."

---

[1] As I repeatedly explained to Defendants' counsel, Plaintiff is not seeking — in this collection (although it may save Defendants some time long term if they cast their net a little more broadly) — any documents about the policies challenged in Plaintiff's *Monell* or Right to Record Act claims.  Rather, the collection is aimed simply at documents responsive to the request seeking specifically "communications related to Plaintiff's arrest or the Incident" (Doc. Req. No. 4, ECF No. 117-1 at 8) and "internal NYPD communications related to Plaintiff's arrest or the Incident" (Doc. Req. No. 11, ECF No. 117-1 at 9).  *See contra*, ECF No. 165 at 4.  Some of the confusion seems to be because Plaintiff proposed collection terms that include the name of the law and words from the policy — but those were included because they are likely to turn up documents about this incident, because, of course, the no recording policy was a key part of the incident.

[2] *But see, e.g., Procaps S.A. v Patheon Inc.*, 2014 US Dist LEXIS 28263, at *4 (SD Fla Feb. 28, 2014) (entering sanctions where, among other reasons, counsel "allowed some of its client's executives to use a single search term to collect emails"); *cf., e.g., Brennan Ctr. for Just. v United States Immigr. & Customs Enf't*, 571 F Supp 3d 237, 246 (SDNY 2021) ("First, a single-term search for only the name of a handbook is an inadequate search, without, at minimum, searching for a relevant acronym, short title, or keyword phrase. Yet a single-term search for the name of the handbook is exactly what the Human Trafficking Unit head's search consisted of.").  Defendants have articulated no objection at all to terms like "Pat*" "Glucometer," "Grandm*," and the like.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



In short, the parties are still basically in a place where what Defendants' motion and any response[3] will basically be the parties having — in motion form — the "conversations that should have been exchanged in a meet-and-confer process before coming to the Court." 2023-11-15 Tr. at 20:7-13.  Though the parties have met five or six times now, we have not yet had any meet and confer where Defendants have been prepared to discuss what likely custodians have communications about the incident, what the burden would be to collect those communications, and so on — and it seems that is, in turn, because Defendants have not figured out the answers to those questions yet.

So, while Plaintiff is happy to file a letter arguing Defendants have not met their burden — and is happy to keep trying to explain why Defendants are misunderstanding what is being sought (*see* n. 1, above), it is also hard to have those conversations especially because of a lack of basic "most likely" custodian information.  *See Sedona*, 19 Sedona Conf. J. at 136.  So, if the Court has any guidance on how to handle that, I would sincerely, sincerely appreciate it — I am genuinely unsure how it is the Court wants Plaintiff to approach this situation.

As always, I thank the Court for its time and consideration.

Respectfully submitted,

/s/
_____
J. Remy Green
   *Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

---

[3] To be clear, this is not Plaintiff's opposition — rather, it is an attempt to get to, as the Court encouraged, a place where the actual issues being litigated are ripe.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com