

February 6, 2024

Hon. Ona T. Wang, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

By Electronic Filing.

> **Re:    Case No. 22-cv-01445, <u>Rodney v City of New York, et al</u>.**

Dear Judge Wang:

As the Court likely recalls, my firm, with co-counsel, represents Plaintiff in the case above. As the Court directed in ECF No. 177, I write jointly with counsel for Defendants to provide an agenda for the status conference on February 8, 2024.  Below is a bullet-point agenda, followed by a "brief" summary of the substance of these remaining issues from the current batch of discovery disputes.

### Agenda

I.      Defendants' Proposed Motion re:  Former Commissioner O'Neill.

II.     Discovery on the No Recording Policy and Potential Coordination with *Reyes*.

III.    Outstanding Document Discovery.

IV.     Outstanding Interrogatory (Interrogatory No. 5).

V.      ESI Custodians and Defendants' Protective Order Motion.

VI.     Payment for November 16, 2023 Transcript.

VII.    Settlement

### Summary of Disputes

### I.   Defendants' Proposed Motion re:  Former Commissioner O'Neill.

The relevant issues are set out in Dkt. Nos. 169 and 172.

In addition to the issues raised in ECF No. 172, Plaintiff notes that she would not object to the Court granting a motion to dismiss, with the claim to be automatically reinstated (subject to a



further motion, if Defendants bring one[1]) if Judge Kaplan rejects the R&R on First Amendment grounds.

## II.  Discovery on the No Recording Policy and Potential Coordination with Reyes.

As noted in the letter asking to move the tentative end date for non-policy discovery, because the Court's Report and Recommendation recommended — and Defendants elected not to challenge — Judge Kaplan deny Defendants' motion to dismiss as the Right to Record Act claims, both this case and *Reyes* "have live, direct challenges to the No Recording Policy under the Right to Record Acts."  ECF No. 164.  Therefore, Plaintiff believes discovery related to that policy should be coordinated with *Reyes* — where discovery on the policy will be moving forward anyway, particularly in light of the finding Mr. Reyes had shown a likelihood of success on a RTRA claim challenging the No Recording Policy.  And if discovery is *not* coordinated, there will need to be quite a bit of duplicative discovery.

Defendants have moved for a protective order for the reasons outlined in ECF No. 165, and the Court has ordered Plaintiff to provide an opposition by February 22, 2024.

## III. Outstanding Document Discovery.[2]

**Document Request 25 (IAB Investigations):**  Defendants have produced documents.  However, this production is at least somewhat troubling, because the documents produced reflect an investigation that began on July 18, 2022.  DEF_001242 (a memorandum to "Chief of Internal Affairs" sent "by the direction of the Police Commissioner") (cleaned up).  Yet, in the year and half since then, Defendants have repeatedly and falsely denied any IAB documents existed.[3]  Plaintiff

---

[1] For clarity, given the Court's prior comments (ECF No. 138), as against O'Neill, Plaintiff is advancing individual capacity liability theory described in cases like *Terebesi v. Torreso*, 764 F.3d 217 (2d Cir. 2014) ("devising an unreasonable operation," such as ordering, authorizing, or assisting others in carrying out excessive force, "fall[s] squarely within clearly established Fourth Amendment prohibitions") and *Goonewardena v. Spinelli*, No. 15 Civ. 5239 (MKB), 2021 WL 61876, at *8 (E.D.N.Y. Jan. 7, 2021).  That is, Plaintiff is not advancing a generic supervisory liability theory as in *Tangreti* (764 F3d 217 (2d Cir. 2014)), but a theory that "a person who [] orders, or helps others" to violate constitutional rights may be liable under Section 1983, "even if he or she does not commit the acts personally."  *Goonewardena*, 2021 WL 61876, at *8 (*quoting Terebesi*, 764 F.3d at 234).  Specifically, if Judge Kaplan rejects the Court's recommendation on the First Amendment, Defendant O'Neill personally "order[ed]" officers to arrest everyone found recording in precincts, and the personal involvement required for liability "encompasses personal participation that may be considered indirect, such as ordering or helping others to do the unlawful acts, rather than doing them [oneself]."  *Id.*

[2] Defendants do not believe these issues require Court intervention at this time, but they are included per the Court's request.

[3] Specifically, Defendants served a response on January 6, 2023 — and then again on July 13, 2023 — stating, "defendants state that, upon information and belief, there is no IAB investigation into this incident."  ECF No. 117-2 at 39-40.  After follow up that included this response specifically, Defendants served another response — even after Plaintiff raised concerns about the use of the phrase "upon information and belief" —

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



discovered that Defendants' responses had been less than truthful after the production of IAB files on January 29, 2024 (that is, a year after the initial response).  That production was apparently the ultimate result of asking Defendants to explain what "upon information and belief" meant (*see* ECF No. 155-1 at 4 ("Defendants had no explanation for what 'upon information and belief' meant in this context, and were unprepared to make any commitment").  Plaintiff has asked Defendants to explain this situation, and received the below.  Defendants' claim that they "were told there was no IAB investigation" creates more questions, and answers none.  And Defendants' feigned indignity and claim to be offended by (undisputedly true) statement that they were secretly withholding documents ignores that Defendants' counsel, between them, signed *three* different false responses in January, July, and October of 2023, each saying there was no IAB investigation at all, when it had been opened in 2022.  *See* n. 3 above.   Two of those statements were even made after the IAB investigation was complete.

Defendants note that based on the information we initially received, we were told there was no IAB investigation when responding to Plaintiff's initial discovery demands.  When current counsel for Defendants appeared on the case, in accordance with ongoing discovery obligations, he inquired into whether there was an IAB investigation and was so informed and thereafter provided that information and documentation to plaintiff. While defendants do not believe that this needs to be raised before the Court, defendants take offense to the notion that they were secretly withholding these documents when a clear explanation has been provided and the records are in plaintiff's custody.

**Document Request 26 (City Investigations):**  Defendants' counsel has requested documents, but has not received them yet.  Plaintiff asks the Court to So Order a deadline for production.

**Document Request 28 (Academy Transcripts):**  Plaintiff consented to an additional two weeks after January 29, 2024 (ECF No. 173-1 at 5) for Defendants to produce these documents.  A response is currently due February 12, 2024.

**Document Request 32 (Discipline and Investigations of Individual Defendants):**[4]  The parties are at an impasse as detailed in ECF No. 173.

**Document Request 34 (NYPD Personnel Files):**  Defendants "state they are withholding documents on the basis of the objections asserted."  ECF No. 173-1 at 5.  The parties met and conferred extensively on this issue, and Defendants are refusing to state what it is they are withholding, or why.  Plaintiff asks the Court to direct Defendants to specify what it is they are withholding, and on the basis of what objection, as Defendants already committed in writing to do.  *See* ECF No. 84. Particularly given, for example, Defendants' year of secretly withholding IAB documents, it is just not appropriate – nor does it comport with the Federal Rules – for Defendants to withhold documents without saying so anywhere other than orally at a meet and confer.

---

on October 27, 2023, once again attesting "upon information and belief, there is no IAB investigation into this incident."  **Exhibit 1** at 41.

[4] With the Court's permission, Ms. Yu will take the lead for Plaintiff on this issue.

                                                                                         Page 3 of 8

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Defendants note that, per meet and confer conversations, defendants are withholding documents solely of a personal nature, such as change of address and marital status documentation.

**Document Request 37 (Prior Litigation and Related Documents for Named Defendants):**[5]
In their supplement, Defendants have now identified filed civil suits, and then say, "Defendants will provide no further response to this request." This omits, for example, the first three kinds of documents requested ("any notices of claim, 50-h transcripts and exhibits"), which are not filed on dockets. Likewise, it likely omits deposition transcripts in cases that did not have summary judgment motions.

Plaintiff asked Defendants to at least specify what burden they were asserting here — saying she would likely not press further if Defendants could represent in writing that the relevant systems are not text searchable, for example. Defendants refused to articulate the burden beyond the statement "it is overbroad and burdensome, in that it is not limited in time or scope, and to the extent it seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, in that it seeks documents irrelevant to the instant action, pertaining to prior lawsuits against defendants." ECF No. 117-2 at 52-43. Again, as above, what counsel says at a meet and confer is not at issue. What is at issue is Defendants' formal responses — particularly (again), given the fact that counsel was apparently told categorically wrong things by NYPD about the IAB files, and remains unconcerned by that. And Defendants have not served a privilege log or anything of the kind, so their claims about the privacy of non-parties are not ripe. Yet, Defendants have refused to do anything else to explain what they're withholding and why.

Defendants note that, as discussed in meet and confer conversations, Notices of Claim, 50-H transcripts, and exhibits, are unduly burdensome to produce as they cannot be searched for by officer and must be searched for on a specific case by case basis. Moreover, these documents implicate privacy concerns of non-parties, and in the case of 50-H transcripts, are transcripts of testimony given by claimants, and not defendant officers.

The parties are at an impasse.

**Document Requests 39 and 40 (Training Received by Individual Defendants):** Defendants have promised to get back to Plaintiff about these issues, having said in their January 22 supplement they would not respond further (ECF No. 173-1 at 7-8), after a discussion of Defendants' prior claim that all the documents were publicly available (but that the issue here was that the publicly available documents are not typically accurate). If Defendants are not willing to commit to producing these documents, the Court should overrule the objection and direct them produced.

Defendants agree to provide a list of trainings for the individually named defendant officers.

---

[5] While not exactly a dispute, Defendants promised an explanation for what their objection about documents "pertaining to co-defendants represented by separate counsel" for Document Request 36 means, but have yet to provide one. *See* ECF No. 155-1 at 5.



Page 4 of 8

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



**Document Request No. 66[6] (Any Documents Showing Commissioner O'Neill's "Two-Way Streets" and Related Remarks About Precincts Are No Longer Accurate Reflections of Current City Policy):**  The parties are at an impasse on this issue, and have met and conferred on it.  In Plaintiff's view, there are likely no responsive documents to this request.  And she makes clear

> "Defendants need not produce documents in response to this request or otherwise object, if they state, in sum and substance, 'The O'Neill Remarks remain an accurate reflection of the City's current policies concerning station houses.' Following such a statement, Defendants may state, "Plaintiff has withdrawn the request in light of the preceding statement," and interpose no further response.'"

Instead, however, "Defendants are not searching for responsive documents."  Response at 7-8.  And Defendants say they have sought a protective order, but that protective order only seeks to stay *Monell* and policy discovery.  That reflects a fundamental misconception of both this request and the claims in this case.  No claim in this case challenges the policy reflected in Commissioner O'Neill's remarks.  Rather, this request seeks information directly relevant to the underlying First Amendment claims:  If it is true that the City's policy remains, as expressed, that stationhouses are all "shared public spaces," akin to traditional public forums like "blocks" and "parks," and explicitly designated as a "a two-way street" for speech (ECF No. 113-8 at 8), then the analysis of both the First Amendment claim proper is profoundly different.  Likewise, as the Court explained on an adjacent issue, the public forum status or not of the station bears on whether Defendants were "reasonable in how and when they effected Plaintiff's arrest," which is "relevant to Plaintiff's excessive force claim" regardless of whether she has a false arrest or First Amendment claim.  R&R at 7 (discussing the relevance of failure to provide any opportunity to comply with requests to disperse).  Defendants' claim this is covered by their motion for a protective order fails to address the fact that these documents have nothing at all to do with any policy claim.

Defendants do not believe this is ripe to discuss at the Court's status conference, as this issue is raised in defendants' motion for a protective order, for which Plaintiff's opposition is due February 22, 2024. ECF No. 165.

### IV. Outstanding Interrogatory.

Interrogatory No. 5 seeks to identify every order Defendants say they gave to Plaintiff.  Defendants have pointed Plaintiff to the video, and refused to respond further than that, standing on their objections.  *See* ECF No. 173-1 at 1.

#### Plaintiff's Position.

There does not appear to be any dispute that "Plaintiff[ is] entitled to discover information regarding orders to disperse and arrest."  *Vodak v City of Chicago*, 2004 US Dist LEXIS 8235, at *10-

---

[6] In Plaintiff's view, this request is very likely to moot out Doc. Reqs. 62-65 and Interrogatory 19, such that it makes the most sense to resolve this request first.



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



11 (ND Ill May 7, 2004).  And from Plaintiff's perspective, she has no issue to Defendants pointing to the portion of the video that has sound for the span of time the video is running.  That is, Defendants' response addresses the portion of the videos that have sound, and there is no live dispute there.

However, Defendants have asserted there were orders before the video started or before audio was on.  The information sought here — identifying "officers who … gave [Plaintiff] an order or command" and "the content or circumstances under which they gave orders or commands" is not some radical proposition — rather, it "is a standard interrogatory."  *Holloway v City of NY*, 2023 US Dist LEXIS 185013, at *31 (EDNY Sep. 28, 2023) (quotation marks omitted).  If Defendants, collectively, cannot identify or recall anyone who gave an order prior to the audio starting on the video after a "good faith investigation," "the City should revise its responses to state as much" — not stand on an objection.  *Id.*

Moreover, resolving this up front will be ***much*** more efficient than individual depositions, not less.  For example, if an officer later in the deposition schedule claims to have given an order no other officer testified about, Plaintiff will need to go back and ask other officers about that newly asserted order.  Nor resolving this upfront burdensome to Defendants:  an attorney can easily ask their clients, "did you give any orders, or hear them?"  On the other hand, it is burdensome for Plaintiff to have to do that across an unknown number of individual depositions, and ultimately then repeat individual depositions. *See generally, Vodak v City of Chicago*, 2004 US Dist LEXIS 8235, at *10-11 (ND Ill May 7, 2004).[7]  *Vodak* addressed this by requiring the municipal defendant to either answer the interrogatory, or produce a 30(b)(6) witness prepared to identify all orders given — a solution Plaintiff believes is less efficient than just getting interrogatory responses, but certainly more efficient than resolving this through individual depositions.  *See*, n. 7 below.

Finally, Defendants response below claiming "Plaintiff is, effectively, asking defendants to create a transcript of these videos" completely talks past Plaintiff's extensive efforts to resolve this issue and confer.  Again, Plaintiff has said she is completely fine with Defendants simply referring to the video ***for the period it covers***.  What is at issue is exactly that time a transcript ***cannot*** cover.

Therefore, the Court should compel either (1) a full response or a confirmation that the video contains all the orders Defendants claim were given; or (2) produce a 30(b)(6) witness prior to other depositions (*accord*, *Vodak*, 2004 US Dist LEXIS 8235, at *10-11).

**Defendants' Position.**

---

[7] "Plaintiffs are entitled to discover information regarding orders to disperse and arrest, and defendants do not contend otherwise. Defendants assert, however, that depositions, rather than interrogatories, are a more practical and efficient method for obtaining the information. Plaintiffs rightly respond that they should not have to depose hundreds of members of the police department to determine who gave orders to disperse and arrest and how the orders were given. If defendants wish to proceed by deposition, the Court believes that the use of a 30(b)(6) witness or witnesses to testify regarding orders to disperse and arrest will be more productive and efficient than a significant and uncertain number of individual police officer depositions."



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Defendants note that Plaintiff has the body worn camera footage of this incident and clearly intends to depose the defendant officers, where she will inquire into what statements, if any, they made during the incident.  Plaintiff is, effectively, asking defendants to create a transcript of these videos and is seeking an opportunity to **create** an inconsistency in future depositions.

### V.  ESI Custodians and Defendants' Protective Order Motion.

As noted in Plaintiff's letter (ECF No. 167) regarding Defendants' ESI protective order motion (ECF No. 165), Plaintiff's view is that she is, frankly, somewhat at a loss for how to respond to Defendants given their position on disclosing or gathering information on likely custodians beyond the individual Defendants.  ECF No. 167 at 1-3.  And given the Court's prior comments about meeting and conferring prior to appearances, Plaintiff is unsure how to frame this in advance of the conference.[8]

As to search terms for the individual Defendants — and collection period for those Defendants — the parties met and conferred on this issue and Defendants agreed to respond to Plaintiff's mid-December search term proposal at some point in the near future.  Likewise, Defendants agreed to provide their position on whether they will confirm individual Defendants have been asked whether they communicated about this incident outside of Defendants' proposed date range.  Plaintiff's position — as she has articulated repeatedly — is that Defendants' proposed date range appears reasonable assuming no individual Defendant has a recollection of sending texts or emails about the relevant incident outside of that date range.  But if any Defendant does, then the collection time period should include dates that aim to collect those messages too.[9]

Defendants note that the parties on February 5, 2024 have each provided counter designations for individually named defendants relative to the incident itself and not including any policy related search terms.  The parties continue to confer on this issue.

### VI. Payment for November 16, 2023 Transcript.

Plaintiff has been trying to get Defendants to pay her for their share (as ordered) of the November 16, 2023 transcript since November 17, 2023.  Though Plaintiff has sent more than a dozen emails following up on this issue and even had several phone calls on it, Defendants have not provided that payment yet.  Plaintiff's position is that the Court should set a date certain for payment, since that seems to be the only way to get this done.  Plaintiff has followed up countless times, and payment has not been received.  While Plaintiff does not quite agree with Defendants'

---

[8] In addition to the emails related to the Public Advocate's letter, Defendants' January 29, 2024 production revealed more emails about this incident from the Office of the Mayor, sent in July 2022, as well as a formal July 18, 2022 memorandum forwarding that email from the Police Commissioner's own office.  That intervention was apparently how the IAB investigation began.

[9] Or, if such a memory leads a Defendant to be able to simply pull up the relevant communications, Defendants could just collect those individual messages and those related to them without a separate collection that requires search terms at all.



Page 7 of 8

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



version of what has happened since new counsel took over, more to the point, Defendants' attempt to make their refusal to follow the Court's order Plaintiff's fault is inappropriate.

Counsel for defendants, upon appearing in this case has looked into this issue of reimbursement and has since followed up on it with his office.  He requested in January 2024 that plaintiff's counsel bring the issue to his attention if payment is not received promptly.  Plaintiff's counsel has not followed up since.

**VII.    Settlement**

The parties have exchanged offers of settlement and both written to the Court on its status. Defendants believe it would be beneficial to discuss with the Court the parties' views on settlement and have the Court's guidance.  Plaintiff doesn't entirely disagree, but believes (as noted in her monthly status letter for January) "either Defendants need to show significantly more movement, or a representative from the Comptroller's Office needs to personally attend" before any conference would be productive.  *See* ECF No. 174.

As always, we thank the Court for its time and consideration.

Respectfully submitted,

/s/
_____

J. Remy Green
*Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

COHEN&GREEN

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com