Index No. 22-cv-1445 (LAK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA RODNEY,

Plaintiff,

-against-

CITY OF NEW YORK, et al.,

Defendant.

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

***HON. SYLVIA O. HINDS-RADIX***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  John Schemitsch*
*Tel:  (212) 356-3539*
*Matter No.:  2020-047341*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

STANDARD OF REVIEW ....................................................................................... 1

ARGUMENT

    POINT I

        PLAINTIFF'S CLAIM FOR FALSE ARREST
        FAILS AS DEFENDANTS HAD PROBABLE
        CAUSE TO ARREST PLAINTIFF ......................................................... 2

        A.  Officers Had Probable Cause to Arrest Plaintiff
            for Trespass and Criminal Trespass in the Third
            Degree ........................................................................................ 3

        B.  Defendants Issued a Lawful Order for Plaintiff
            to Leave the Premises .......................................................... 5

        C.  Plaintiff's Claimed Subjective Belief That She
            Could Remain Does not Vitiate Probable Cause ................. 6

        D.  Plaintiff's Had a Demonstrated Opportunity to
            Comply with the Lawful Request to Leave ........................ 7

        E.  Officers Had Probable Cause to Arrest Plaintiff
            for Obstruction of Governmental
            Administration ...................................................................... 7

        F.  Plaintiff's Supplemental Authority Cited in
            People v. Reyes does not Vitiate Probable
            Cause ........................................................................................ 9

        G.  Plaintiff's Claims that the No Recording in a
            Police Precinct Policy is Unlawful Does Not
            Vitiate The Probable Cause Officers had to
            Arrest Plaintiff for Other Offenses .................................... 10

        H.  Defendant Officers Are Entitled to Qualified
            Immunity ................................................................................ 13

**Page**

POINT II

      PLAINTIFF'S FIRST AMENDMENT CLAIMS
FAIL AS A MATTER OF LAW .............................................................. 14

POINT III

      PLAINTIFF'S MUNICIPAL LIABILITY CLAIM
IS NOT WELL PLED AND FAILS AS A
MATTER OF LAW ................................................................................. 20

CONCLUSION ..................................................................................................... 23

**TABLE OF AUTHORITIES**

**Cases**                                                                        **Page(s)**

Aquino v. City of New York,
   16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436
   (S.D.N.Y. Jan. 25, 2017) ................................................................. 21-22

Ark. Educ. Television Comm'n v. Forbes,
   523 U.S. 666 (1998) ........................................................................ 16

Basinski v. City of New York,
   706 F. App'x 693 (2d Cir. 2017) ..................................................... 9

Bd. of Higher Educ. v. Students for a Democratic Soc'y,
   60 Misc. 2d 114
   (Sup. Ct. Queens Cnty. 1969) ......................................................... 11

Brogdon v. City of New Rochelle,
   200 F. Supp. 2d 411 (S.D.N.Y. 2002) ............................................ 22

Caldarola v. Calabrese,
   298 F.3d 156 (2d Cir. 2002) ........................................................... 13

City of Canton v. Harris,
   489 U.S. 378 (1989) ........................................................................ 20, 21

City of St. Louis v. Praprotnik,
   485 U.S. 112 (1985) ........................................................................ 20

Codrington v. City of New York,
   12-CV-01650 (SLT) (SMG), 2015 U.S. Dist. LEXIS 24905
   (E.D.N.Y. Feb. 27, 2015) ................................................................. 3

Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,
   473 U.S. 788 (1985) ........................................................................ 15, 16

DeCarlo v. Fry,
   141 F.3d 56 (2d Cir. 1998) ............................................................. 21

Devenpeck v. Alford,
   543 U.S. 146 (2004) ........................................................................ 10

Dwares v. City of New York,
   985 F.2d 94 (2d Cir. 1993),
   overruled on other grounds by,
   Leatherman v. Tarrant County Narcotics Intell. & Coord. Unit,
   507 U.S. 163 (1993) ........................................................................ 22

**Cases**                                                     **Pages**

Ellis v. Allen,
  4 A.D.2d 343 (3d Dep't 1957) ......................................................................11

Fighting Finest v. Bratton,
  898 F. Supp. 192 (S.D.N.Y. 1995),
  aff'd, 95 F.3d 224 (2d Cir. 1996) ...............................................................19

Figueroa v. Mazza,
  825 F.3d 89 (2d Cir. 2016) ...........................................................................3

Gilk v. Cunniffe,
  655 F.3d 78 (1st Cir. 2011) .........................................................................21

Greene v. WCI Holdings Corp.,
  956 F. Supp. 509 (S.D.N.Y. 1997) ...............................................................2

Hayden v. City of New York,
  17-CV-1894 (RJS), 2019 U.S. Dist. LEXIS 234778
  (S.D.N.Y. Mar. 31, 2019) ....................................................................... 13-14

Hill v. Colorado,
  530 U.S. 703 (2000) ....................................................................................18

Hotel Emps. & Rest. Union, Loc. 100 of New York v. City of New York Parks &
  Recreation,
  311 F.3d 534 (2d Cir. 2002) .......................................................... 16, 17, 18

Jaegly v. Couch,
  439 F.3d 149 (2d Cir. 2006) ..........................................................................3

Jenkins v. City of New York,
  478 F.3d 76 (2d Cir. 2007) ..........................................................................21

Johnson v. City of New York,
  05 Civ. 7519 (PKC), 2008 U.S. Dist. LEXIS 78984
  (S.D.N.Y. Sept. 29, 2008) ..............................................................................8

Kirk v. Burge,
  646 F. Supp. 2d 534 (S.D.N.Y. 2009) ...........................................................1

Lennon v. Miller,
  66 F.3d 416 (2d Cir. 1995) .............................................................................8

Lubonty v. U.S. Bank Nat'l Ass'n,
  34 N.Y.3d 250 (2019) ..................................................................................12

**Cases**                                                                                                        **Pages**

Make The Road by Walking, Inc. v. Turner,
    378 F.3d 133 (2d Cir. 2004) .........................................................................16, 17

Marcavage v. City of New York,
    05 Civ. 4949 (RJS), 2010 U.S. Dist. LEXIS 107724
    (S.D.N.Y. Sept. 29, 2010),
    aff'd, 689 F.3d 98 (2d Cir. 2012) .............................................................................8

McCarthy v. Manson,
    554 F. Supp. 1275 (D. Conn. 1982),
    aff'd, 714 F.2d 234 (2d Cir. 1983) ............................................................................2

Monell v. Dep't of Social Services,
    436 U.S. 658 (1978) .................................................................................................20

Pearson v. Callahan,
    555 U.S. 231 (2009) .................................................................................................13

Pembaur v. City of Cincinnati,
    475 U.S. 469 (1986) .................................................................................................20

People v. Alderson,
    144 Misc. 2d 133
    (Crim. Ct. New York Cnty. 1989) ..........................................................................11

People v. Arbeiter,
    169 Misc. 2d 771 (1st Dep't 1996) ...........................................................................9

People v. Basch,
    36 N.Y.2d 154 (1975) ................................................................................................6

People v. Casey,
    95 N.Y.2d 354 (2000) ................................................................................................9

People v. Graves,
    76 N.Y.2d 16 (1990) ...............................................................................................10

People v. Jackson,
    46 Misc. 3d 142 (2015) .............................................................................................4

People v. Leonard,
    62 N.Y.2d 404 (1984) ................................................................................................5

People v. Martinez,
    43 Misc. 2d 94
    (Crim. Ct. New York Cnty. 1964) ..........................................................................11

**Cases**                                                              **Pages**

People v. Munroe,
  18 Misc. 3d 9 (N.Y. App. Term 2007)................................................................6, 11

People v. Pennisi,
  61 Misc. 3d 1224(A)
  (Crim. Ct. Queens Cnty. 2018) ................................................................5

People v. Ranieri,
  144 A.D.2d 1006 (4th Dep't 1988) ................................................................6

People v. Reape,
  22 Misc. 3d 615
  (Crim. Ct. Kings Cnty. 2008)................................................................4, 11, 12

Perry Educ. Ass'n v. Perry Local Educators' Ass'n,
  460 U.S. 37 (1983)................................................................16

Reyes v. City of New York,
  23-CV-6369 (JGLC), 2023 U.S. Dist. LEXIS 196602
  (S.D.N.Y. Nov. 2, 2023) ................................................1, 9, 10, 15, 16, 17, 18, 19

Rodney v. City of New York,
  22-CV-1445 (LAK) (OTW), 2023 U.S. Dist. LEXIS 223117
  (S.D.N.Y. Dec. 14, 2023)................................................................19

Smith v. City of Cumming,
  212 F.3d 1332 (11th Cir. 2000) ................................................................21

Smith v. New York City Dep't of Corr.,
  18-CV-7018 (AT) (OTW), 2019 U.S. Dist. LEXIS 99476
  (S.D.N.Y. June 13, 2019) ................................................................21

Smith v. Warden of N. Infirmary Command,
  18 Civ. 7018 (AT) (OTW), U.S. Dist. LEXIS 111560
  (S.D.N.Y. July 3, 2019) ................................................................21

Sorlucco v. New York City Police Dep't,
  971 F.2d 864 (2d Cir. 1992)................................................................20

Turner v. Driver,
  848 F.3d 678 (5th Cir. 2017) ................................................................21

Tyler v. City of Kingston,
  74 F.4th 57 (2d Cir. 2023) ................................................................15, 18, 19

**Cases**                                                                **Pages**

United States v. Male Juvenile,
    121 F.3d 34 (2d Cir. 1997)...................................................................1

Weyant v. Okst,
    101 F.3d 845 (2d Cir. 1996)..................................................................3

Wheelock v. Noonan,
    108 N.Y. 179 (1888) ...........................................................................11

Zellner v. Summerlin,
    494 F.3d 344 (2d Cir. 2007)..............................................................3, 13

**Statutes**

42 U.S.C. § 1983 ....................................................................1, 20, 21, 22, 23

C.P.L. § 100.40(1) ............................................................................................9

Fed. R. Civ. P. 12(b)(6).........................................................................1, 19, 23

Fed. R. Civ. P. 72(b)(3)..................................................................................1

N.Y. Civ. Rights Law § 79-P .......................................................................1, 12

N.Y. Civ. Rights Law § 79-P(1)(a)..................................................................12

N.Y. Civ. Rights Law § 79-P(2)......................................................................12

N.Y. Penal Law § 140.00(5) .......................................................................4, 11

N.Y. Penal Law § 140.05 ............................................................................4, 11

N.Y. Penal Law § 140.10(a) ............................................................................4

N.Y. Penal Law § 195.05 ............................................................................7, 8

**Other Authorities**

Restatement 2d of Torts § 168 ...................................................................10, 11

## PRELIMINARY STATEMENT

Plaintiff, through her Objections to Magistrate Judge Wang's Report and Recommendation, seeks to only relitigate and get a second bite at the apple with regard to her arguments against dismissal of Plaintiff's claims.  Accordingly the Court should review the Report and Recommendation for clear error, for which Plaintiff's arguments fail.  Moreover, plaintiff spends a significant portion of her brief mischaracterizing the Second Amended Complaint, asserting facts and documents not within the four corners of the SAC, addressing claims not the subject of Defendants' underlying Motion to Dismiss; or are not items Plaintiff is objecting to in the Report and Recommendation. Even if the Court determines that the Report and Recommendation is subject to a *de novo* review, Plaintiff's objections fail and for the reasons set forth below and in Defendants' underlying Motion papers, Defendants the Court should dismiss Plaintiff's claims under Section 1983 of false arrest, First Amendment/First Amendment retaliation, municipal liability, and ensuing state law claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[12]

## STANDARD OF REVIEW

Objections to a magistrate judge's report and recommendation should be specific and address only the portions of the proposed findings to which the party objects.  Kirk v. Burge, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009).  A district judge must determine *de novo* any part of the magistrate judge's disposition to which an objection has been properly filed.  Fed. R. Civ. P. 72(b)(3); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997).  However, objections

---

[1] The Report and Recommendation recommended that dismissal of Plaintiff's claims under New York Civil Rights Law § 79-P be denied without prejudice to reconsideration and supplemental briefing after the Second Circuit's anticipated decision in Reyes v. City of New York, No. 23-cv-6369 (S.D.N.Y.). See ECF No. 148.  To that end, Defendants reserve their right to address this issue following the Second Circuit's decision. Plaintiff further does not challenge the Report and Recommendation's decision regarding denial of right to a fair trial, which should be dismissed.

[2] Defendants refer the Court to their Memorandum of Law in Support of their Motion to Dismiss for a recitation of the salient facts. ECF No. 40.

that are an attempt to "engage the district court in a rehashing of the same arguments set forth in the original petition," without more, trigger only a review of the magistrate judge's report for "clear error." <u>See</u> <u>Greene v. WCI Holdings Corp.</u>, 956 F. Supp. 509, 513 (S.D.N.Y 1997). A party may not have a "second bite at the apple" when filing objections to a Report and Recommendation, as the "goal of the federal statute providing for the assignment of cases to magistrates is to 'increas[e] the overall efficiency of the federal judiciary.' " <u>McCarthy v. Manson</u>, 554 F.Supp. 1275, 1285–86 (D.Conn.1982), <u>aff'd</u>, 714 F.2d 234 (2d Cir.1983) (citation omitted).

Here, Plaintiff merely seeks to engage the court in a rehashing to the same arguments set forth in her prior opposition to Defendants' Motion.[3]  As such, the Court should not afford Plaintiff a second bite at the apple, and her Objections to the Report and Recommendation should be reviewed under the clearly erroneous standard, however, even if subjected to *de novo* review, Plaintiff's objections should be dismissed.

## <u>ARGUMENT</u>

### POINT I

### <u>PLAINTIFF'S CLAIM FOR FALSE ARREST FAILS AS DEFENDANTS HAD PROBABLE CAUSE TO ARREST PLAINTIFF</u>

Plaintiff reiterates her arguments asserted in her opposition to defendant's motion as pertains to her false arrest claim, however these arguments do not vitiate probable cause to

---

[3] For example, in both Plaintiff's Objections here and her Opposition to Defendant's Motion to Dismiss Plaintiff argues that the arrest was made under an unlawful order (<u>compare</u> Dkt. No. 161 at I.A. <u>with</u> Dkt. No. 112 at I.A.), that plaintiff was not given an opportunity to comply with the order to disperse (<u>compare</u> Dkt. No. 161 at I.C. <u>with</u> Dkt. No. 112 at I.A.), that defendants' lacked probable cause to arrest for trespass (<u>compare</u> Dkt. No. 161 at I.D. <u>with</u> Dkt. No. 112 at I.A.), that Plaintiff's <u>Monell</u> policy claim is well pled (<u>compare</u> Dkt. No. 161 at I.E. <u>with</u> Dkt. No. 112 at VIII.), that Defendants did not have probable cause to arrest for obstruction of governmental administration (<u>compare</u> Dkt. No. 161 at II.B. <u>with</u> Dkt. No. 112 at I.B-C.), and that statements made by a former Police Commissioner somehow create a First Amendment right (<u>compare</u> Dkt. No. 161 at III.B. <u>with</u> Dkt. No. 112 at V.).  Moreover, plaintiff specifically refers the Court to arguments made in her opposition (<u>See</u> <u>e.g.</u>, Dkt. No. 161 at p. 21, 25).

arrest plaintiff for trespass, criminal trespass in the third degree, and obstruction of governmental administration.

   "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotations and citations omitted).   "Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007).   This inquiry is rooted in "whether the facts known by the arresting officer at the time objectively provided probable cause to arrest." Codrington v. City of New York, No. 12 CV 01650 (SLT) (SMG), 2015 U.S. Dist. LEXIS 24905, at *12 (E.D.N.Y. Feb. 27, 2015) (quoting Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006)).   When determining whether actual probable cause existed, we "look to the totality of the circumstances" as to what the officers knew at the time of the arrest; we "must consider those facts available to the officer at the time of the arrest and immediately before it." Figueroa v. Mazza, 825 F.3d 89, 115 (2d Cir. 2016) (internal citation omitted).

## A. Officers Had Probable Cause to Arrest Plaintiff for Trespass and Criminal Trespass in the Third Degree

   Plaintiff in her Objections to the Report and Recommendation argues that Defendants did not have probable cause to arrest her, reiterating the arguments asserted in her opposition to Defendants' Motion to Dismiss.   Here, officers had probable cause to arrest

plaintiff for trespass or criminal trespass in the third degree.[4]   Plaintiff concedes in the Second Amended Complaint that she was knowingly present on the premises of the police precinct stationhouse.  As documented in the body worn camera footage plaintiff's continued presence in the vestibule would block entry and exit to other areas of the stationhouse, and would interfere with the ordinary use of the property by members the Police Department and other members of the public.  See e.g., People v. Reape, 22 Misc. 3d 615, 618-19 (2008) (holding that an NYPD officer is the custodian of a stationhouse, and that trespass can occur in a municipal property generally open to the public). The body worn camera footage incorporated directly into the Second Amended Complaint shows plaintiff standing immediately behind an entryway door to the precinct and shows multiple uniformed officers and civilians unable to easily step through the door, and unable to fully open it due to plaintiff's physical location, a fact which plaintiff improperly attempts to circumvent by baldly alleging that "[p]laintiff was not blocking any access to the station." See generally, Dkt. No. 90 at ¶¶ 41-43.  As document in the body worn camera footage, while plaintiff was in the vestibule blocking the entrance and exit to the stationhouse, she was then given  a direct and lawful order to leave the premises based on her disruptive presence.  See Dkt. No. 90 at ¶ 45, link to body worn camera video provided.   In response, Plaintiff had opportunity to respond clearly and directly by responding both orally, stating "no," and physically, by shaking her head "no." As such, officers had probable cause to arrest plaintiff for trespass given the issuance of the lawful order to leave and revocation of her license to remain on premises. See People v. Jackson, 46 Misc. 3d 142, 142 (2015) (upholding a

---

[4] A person is guilty of trespass under New York Penal Law 140.05, when "he knowingly enters or remains unlawfully in or upon premises."  Pursuant to New York Penal Law 140.10(a), a person is guilty of criminal trespass in the third degree "when he knowingly enters or remains unlawfully in a building or upon real property [] which is fenced or otherwise enclosed in a manner designed to exclude intruders[.]"  Pursuant to New York Penal Law 140.00(5) "a person 'enters or remains unlawfully' in or upon premises when he is not licensed or privileged to do so."

criminal conviction for trespass when defendant refused to leave a precinct after being asked to do so while he was being disruptive); People v. Pennisi, 2018 N.Y. Misc. LEXIS 5585 (2018) (dismissing a count of criminal trespass in the third degree where there is no evidence of an officer ordering a defendant to leave).

**B.      Defendants Issued a Lawful Order for Plaintiff to Leave the Premises**

Plaintiff's claim for false arrest is defeated as officers delivered a lawful order to leave the premises, revoking her license to remain inside the police stationhouse. Plaintiff's claim that this was an unlawful order is wholly without merit. Officers observed plaintiff standing the way of a door to enter further into the precinct stationhouse, causing a disturbance that was making it difficult for other officers and member of the public to move through the building, and, thus, in asking plaintiff to leave, issued a lawful order to leave the premise.

In her Objections, plaintiff relies on People v. Leonard, for the proposition that criminal trespass requires a lawful order to leave the premises and that enforcement did not unlawfully inhibit or circumscribe the person from engaging in constitutionally or statutorily protected conduct. See 62 NY2d 404, 408, 411 (1984).  Plaintiff's presumption here that the officers issued an order for plaintiff to leave was unlawful directly ignores the body worn camera footage and factual assertions in her own Second Amended Complaint.  Here, as discussed *supra*, the body worn camera footage shows plaintiff was not being cooperative and was blocking doorways in the vestibule area. Officers observed plaintiff standing in the way of a door to enter further into the precinct stationhouse, causing a disturbance that was making it difficult for other officers and member of the public to move through the building, and, thus, in asking plaintiff to leave, issued a lawful order to leave the premise.  Moreover, plaintiff's purpose for being on premises of the police stationhouse was to receive paperwork, as she stated in the Second Amended Complaint, once she was informed she could not obtain it, there was a

legitimate basis to issue a lawful order to leave. See e.g., People v. Munroe, 18 Misc. 3d 9 (2d Appellate Term  2007) (finding that once a defendant was informed that he could not be given files he requested, there was a legitimate basis and accordingly a lawful order for him to leave, and in his refusal to do so, he committed trespass).

## C.    Plaintiff's Claimed Subjective Belief That She Could Remain Does not Vitiate Probable Cause

Plaintiff's allegation in her Objections that she honestly believed she could remain on premises after her license to remain was revoked and she was given a lawful order to leave is contradicted by the body worn camera video, not pled in the Second Amended Complaint and not relevant to the analysis of probable cause.  Criminal trespass requires that a person must "knowingly" enter the premises. See People v. Basch, 36 NY2d 154 (1975).  Here, plaintiff stretches the holding in Basch beyond belief, claiming that this stands for the proposition that a person may be allowed to remain on premises if they believe they can remain on premises. This is far afield of the holding in Basch, which only stands for the proposition that a person "knowingly" entered onto premises when he "honestly believe that he is licensed or privileged to enter[.]" Id.  Indeed, plaintiff's citation to People v. Ranieri highlights this, noting that for trespass, unlawfully remaining on the property "requires that the actor have knowledge that remaining is unlawful." 144 AD2d 1006, 1008 (4th Dept. 1988). Plaintiff's claims that she did not understand this to be an order to leave entirely lack merit – plaintiff is documented on video stating that she would not leave.  Plaintiff's stated purpose for being on premises of the police stationhouse was to receive paperwork, which she was informed she could not obtain there, as such there was a legitimate basis for her to be asked to leave on that basis alone.

Accordingly, as further discussed in defendants Motion to Dismiss, probable cause justifiably existed for the arrest of plaintiff for trespass.[5]

## D.   Plaintiff's Had a Demonstrated Opportunity to Comply with the Lawful Request to Leave

Plaintiff further claims that she had no opportunity to comply with the order to leave, and second by arguing that asking someone to leave is not an order and should go to a jury.   As to the first claim, this argument does not hold water as plaintiff was able to verbally respond to this request stating that she would not leave.   As to the second, this is a frivolous argument.   The officer whose body worn camera is operating turns to plaintiff and asks "Ma'am, we're asking you to leave, you're not leaving?"   No. 90 at ¶ 45, link to body worn camera video provided.   Plaintiff shakes her no, and says "no" in response.   Id.   It is clear that plaintiff understood this to be an order to leave and that her response was a refusal to do so.   Further, Plaintiff had a reasonable opportunity to comply – in fact, she explicitly, both orally and physically, refused to do so.

## E.   Officers Had Probable Cause to Arrest Plaintiff for Obstruction of Governmental Administration

Defendant officers also had probable cause to arrest plaintiff for obstruction of governmental administration.[6]   As discussed above, plaintiff concedes in the Second Amended Complaint that she was present in the vestibule entranceway of the stationhouse, and the body worn camera footage documents that while in conversation with officers, plaintiff was blocking

---

[5] Further, Plaintiff attempts to mislead the Court by misquoting the Report and Recommendation, stating that, "[Plaintiff] believed the reason for the direction was based on an [unlawful] N[YP]D Policy." Plaintiff's Opposition at 13 (stet), purportedly quoting Dkt. No. 148 at 6-7.  The Report and Recommendation **actually** states that "a close reading of the SAC suggests that they *did* direct her to leave, but that she believed the reason for the direction was based on an unconstitutional NPYD Policy[.] Dkt. No. 148 at 6-7 (emphasis in original).  Defendants address Plaintiff's First Amendment claims *infra* Section II.

[6] Pursuant to New York Penal Law 195.05, it is a misdemeanor crime when a person "intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference[.]"

other officers and potential members of the public from being able to enter or exit other areas of the stationhouse.   "An officer has probable cause to arrest for obstructing governmental administration where a person refuses to comply with an order from a police officer." Marcavage v. City of New York, No. 05-CV-4949 (RJS), 2010 U.S. Dist. LEXIS 107724, at **29-30 (S.D.N.Y. Sept. 29, 2010), aff'd, 689 F.3d 98, 110 (2d Cir. 2012) (quoting Johnson v. City of New York, No. 05-cv-7519, 2008 WL 4450270 (S.D.N.Y. Sept. 29, 2008), and citing Lennon v. Miller, 66 F.3d 416 (2d Cir. 1995)).

Here, the body worn camera footage shows plaintiff was standing behind a door and officers and members of the public were not able to fully open the door to move through.  A police stationhouse is not a nonpublic forum or an agency such as the Department of Motor Vehicles, where someone standing in the way of a door could only have a minor effect on the ability of employees to operate. It is axiomatic that police officers who are on duty, working in a police stationhouse, are performing an official function within that stationhouse, which would include the need to be able to enter or exit the location without impediment. Here plaintiff was causing a disturbance by her continued presence and in the location where she was.  Moreover, obstruction of governmental administration, pursuant to New York Penal Law 195.05, is when a person "intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference[.]"  Here plaintiff clearly was interfering with the administration of law and governmental function of the NYPD officers in the area and, as discussed above, was given a lawful order to leave, which she acknowledged and refused.

Plaintiff's arguments that she did not 'prevent' officers from entering or exiting the stationhouse is unsupported by her cited caselaw and lacks common sense.  Plaintiff argues that 'prevent' means 'create an insurmountable obstacle,' citing to People v. Arbeiter, 169 Misc.2d 771 (1st Dept. 1996). This argument fails.  First, the case cited is specific to criminal case involving resisting arrest – **not** obstruction of governmental administration.  See Basinski v. City of New York, 706 Fed. Appx. 693, 698 (2d. Cir. 2017) (noting that New York courts have construed "physical interference" required by obstruction of governmental administration broadly, including inappropriate and disruptive conduct, and that an individual need not make physical contact). Second, obstruction of governmental administration requires that an individual prevents or **attempts to prevent**" an official function. Plaintiff's argument that prevent in this context requires an insurmountable obstacle is speculative at best and ignores the very caselaw she cites at the least.

## F.   Plaintiff's Supplemental Authority Cited in <u>People v. Reyes</u> does not Vitiate Probable Cause

Plaintiff further claims that the state court's decision in People v. Reyes, dismissing charges against the defendant rejects all of the state law theories adopted by the Report and Recommendation here.  This argument falls flat.

Plaintiff implicitly assumes, to start, that the standard for facial sufficiency of a criminal information is the same standard here, namely for probable cause in a civil action. Facial sufficiency of an accusatory instrument must be evaluated under CPL 100.40(1), with an instrument facially sufficient "so long as the factual allegations of an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offence. People v. Casey, 95 NY2d 354, 360 (2000).  In Reyes, the Court found that the information was not sufficient. Moreover, the arguments made in

Reyes were fact specific to that case and not applicable here.  Defendant there was charged with Criminal trespass in the third degree, however the Court found that the information was lacking factual allegations as to whether the defendant could remain in a precinct – here, as discussed *supra*, Plaintiff was given a lawful order to leave the precinct based on her disruption in the vestibule area.  The charge in Reyes as to trespass was dismissed as the information was found lacking on an allegation that he remained unlawfully in the precinct – this is again, distinct from the facts set forth in this matter.  Finally, the charge in Reyes as to obstruction of governmental administration was dismissed as the allegations in the information were conclusory.  Put simply, the standard for dismissal of a criminal information is not the same standard for a motion to dismiss the complaint.

### G.  Plaintiff's Claims that the No Recording in a Police Precinct Policy is Unlawful Does Not Vitiate The Probable Cause Officers had to Arrest Plaintiff for Other Offenses

Plaintiff addresses, in great detail, in her brief claims that the No Recording Policy as pertains to police stationhouses is unlawful.  Defendants note, as discussed *supra*, that officers had probable cause to arrest Plaintiff for multiple offenses, which are documented in body worn camera footage.  See generally Devenpeck v. Alford, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.").  As such, this argument as to the No Recording Policy is irrelevant.

Defendants maintain that the no recording policy was not unlawful, however. A foundational principle of property law prescribes that "a person is licensed or privileged to enter private premises [only] when [they have' obtained the consent of the owner[.]" People v. Graves, 76 N.Y.2d 16, 20 (1990) (cleaned up). A property owner may impose conditions on this license to enter. See Restatement 2d of Torts §168. When a licensee exceeds those conditions, consent

may be revoked, and the licensee thereby becomes a trespasser. See Id. §§168 cmt d, 171; Wheelock v. Noonan, 108 N.Y. 179, 183-84 (1888); Penal Law §§ 140.00(5), 140.05.

Subject to constitutional constraints, governmental property owners enjoy the same right to exclude. See People v. Munroe, 18 Misc.3d 9, 10-11 (N.Y. App. Term, 2d Dep't 2007) (community college); People v. Alderson, 144 Misc. 2d 133, 145 (N.Y. Crim. Ct., N.Y. Cty. 1989) (Department of Health building). The fact that the government chooses to open certain facilities to the public, for certain purposes, does not mean that "the use thereof may be demanded as a matter of right by any individual[.]" Ellis v. Allen, 4 A.D.2d 343, 344 (3d Dep't 1957) (school building); see Bd. of Higher Ed. v. Students for a Democratic Soc'y, 60 Misc.2d 114, 118 (N.Y. Sup. Ct., Queens Cty. 1969) (college campus).

Thus, New York courts have long understood that the NYPD, as a proprietor, may exclude individuals from its buildings. In People v. Martinez, 43 Misc.2d 94 (N.Y. Crim. Ct., N.Y. Cty. 1964), the court found defendants guilty of trespass after they occupied a "public corridor" at Police Headquarters and ignored instructions to leave. Id., at 96-98. As the court explained, a government building, "especially one which houses so vital a functioning department as the Police Department, may not be used in a manner which suits the whim or caprice of every citizen, without reducing our government to chaos[.] Id., at 97. In so holding, Martinez relied heavily on common-law precepts, namely, the NYPD's "right … to exclude" individuals from "property owned by the City of New York." Id.

Similarly, in People v. Reape, 22 Misc.3d 615 (N.Y. Crim. Ct., Kings Cty. 2008), the court denied a motion to dismiss a trespass count where the defendant ignored an order to leave a police precinct. The court explained that the police, as the "custodian[s]" of such premises, were in the best position to know whether the defendant had acted in a way that

11

required him to be asked to leave." Id., at 619. The Court underscored that precincts are used by "citizens who seek to give or obtain information about public safety," and "[t]hose who enter in order to use the facilities…need to know that their safety is being protected while they are present there." Id., at 618-19.

Nothing in NY Civil Law Section 79-P purports to displace the NYPD's common law privileges as proprietor. While the Acts guarantee a substantive right to record the police and enumerate *conduct* based exceptions to this right, Civ. Rights L. § 79-p(2); its text says nothing about *where* such recordings are permitted. Given the Acts' silence on this point, they cannot be read to impliedly supersede the NYPD's proprietary authority to require visitors at its precincts to observe its rules. In other words, the City does not propose an unwritten "exception" to the Acts, but rather use of settled canons of construction to identify their intended boundaries.

It cannot be that the statutory right to record is unrestricted as to location. A contrary reading would lead to the sort of "absurd application[s]" that courts construing New York legislation must avoid. Lubonty v. U.S. Bank Nat'l Ass'n, 34 N.Y.3d 250, 255 (2019) (cleaned up). For example, if NY Civil Law Section 79-P did not import the government's traditional prerogative as a proprietor, there would be no textual basis to bar courtroom spectators from bringing their cellphones into State courthouses and recording court security officers. See N.Y. Civ. Rights L. § 79-p(1)(a) (defining "Officer" to include "security officer, security guard or similar official"). And if the police were called to a home on a sensitive matter, officers would be barred from assisting a homeowner who sought removal of a guest who insisted on recording over the owner's express objection. Furthermore, under plaintiff's view, even civilians in *non-public* areas of police precincts (or other government buildings) would, presumably, be entitled to bring their recording devices and film any police or security officers

they see. There is no reason to assume the State Legislature and City Council intended such sweeping but unannounced policy changes.

## H.     Defendant Officers Are Entitled to Qualified Immunity

Even if the Court were to find that defendants did not have probable cause for the arrest of Plaintiff, Defendant Officers are nevertheless entitled to qualified immunity. A police officer is entitled to qualified immunity from a claim for arrest without probable cause if: (1) it was objectively reasonable for the officer to believe that probable cause existed; or (2) officers of reasonable competence could disagree on whether there was probable cause. See Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007). "[I]n situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity." Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002). Qualified immunity is applicable regardless of "whether a government actor's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson, 555 U.S. at 231 (citations omitted).

At a minimum, it was objectively reasonable for the individually named defendants to believe that there was probable cause to arrest plaintiff, and/or reasonable officers could disagree, based upon the facts alleged in the Second Amended Complaint.  As stated above, given plaintiff's presence blocking the doorway and refusing to leave the premises when given an order to do so, it was objectively reasonable for defendants to believe there was probable cause to arrest plaintiff for obstruction of governmental administration, trespass, and criminal trespass in the third degree.  Further, while plaintiff alleges the NYPD was engaging in an illegal policy prohibiting the public from filming inside of a precinct, it was objectively reasonable for defendants to believe that plaintiff was not permitted to film inside of a precinct. See e.g. Hayden v. City of New York, 2019 U.S. Dist. LEXIS 234778, at *13-14 (S.D.N.Y. Mar.

31, 2019) (finding defendants were entitled to qualified immunity where plaintiff was obstructing a sidewalk filming officers and plaintiff refused to comply with an order to "move back").   As such defendants had probable cause to arrest plaintiff, and in the alternative, reasonable officers could disagree as to the existence of probable cause.

## POINT II

### PLAINTIFF'S FIRST AMENDMENT CLAIMS
### FAIL AS A MATTER OF LAW

Plaintiff's arguments that her First Amendment claim should not be dismissed lack merit.  Plaintiff first claims that the burden for a preliminary injunction is different than that for a motion to dismiss.  Plaintiff also argues that a NYPD Commissioner's statements as to a stationhouse being 'shared public spaces' somehow creates a First Amendment right. Finally, Plaintiff baldly asserts that defendants are somehow estopped from arguing the classification of stationhouse for First Amendment analysis.[7]

First, Plaintiff's claim that the standard for a preliminary injunction is different than that of a motion to dismiss does not apply here.  The Report and Recommendation tracks the analysis and applicability of the First Amendment, noting that police precinct houses are limited public fora.  Moreover, the analysis in the report and recommendation follows that the NYPD policy was reasonable and viewpoint neutral, which plaintiff does not challenge.  As such, plaintiff's objections should be dismissed.

Second, Plaintiff's arguments that a former NYPD Commissioner made statements that "Our message to New Yorkers going forward, [is that police stations] are your station houses" and should be viewed as "shared public spaces[,]" has no bearing on the

---

[7] Defendants' further note that Plaintiff does not challenge the rationale of the Report and Recommendation finding that precinct stationhouses are limited public fora, and not nonpublic fora.  To that extent, Plaintiff has abandoned any objection to this finding and her First Amendment claims should be dismissed.

existence of her First Amendment claims.  First, plaintiff does not allege that she heard or relied on those comments in any way in going to the stationhouse or refusing a lawful order to leave, and as such, they would have no bearing on her actions.  Second, these statement are irrelevant to the legal question of how stationhouses would be classified for a First Amendment analysis.

Finally, plaintiff's First Amendment claims fail as the policy pertaining to not permitting recording in a police stationhouse (the "Facilities Policy") does not violate the Constitution. The Southern District in Reyes has already held, in the context of plaintiff's motion for a preliminary injunction, that the plaintiff failed to show that the Facilities Policy likely violates the First Amendment.  See Reyes v. City of N.Y., 23 Civ. 6369 (JGLC), 2023 U.S. Dist. LEXIS 196602, at *14-*30 (S.D.N.Y. Nov. 2, 2023).

In line with this decision, this Court should dismiss plaintiff's First Amendment claim.  "Although the right to record police conducting official duties in public places is a constitutional right, '[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities.'" Reyes, at *16 (quoting  Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 799-800 (1985)).  Instead, speech restrictions are subject to a "forum based" analysis.  Id., at *16. "[F]ora for expression are classified into four categories, which fall along a spectrum extending from those deserving the greatest constitutional protection to those deserving the least constitutional protection: 1) the traditional public forum; 2) the designated public forum; 3) the limited public forum; and 4) the non-public forum."  Id., at *16-*17 (quoting Tyler v. City of Kingston, 74 F.4th 57, 61 (2d Cir. 2023)).

"In determining the type of forum, courts 'examine the forum's physical characteristics and the context of the property's use, including its location and purpose.'" Id., at *19 (quoting Hotel Emps. & Rest. Union, Loc. 100 of New York v. City of New York Parks and Recreation, 311 F.3d 534, 547 (2d Cir. 2002)). "Courts additionally consider the 'government's intent in constructing the space and its need for controlling expressive activity on the property, evidenced by its policies or regulations.'" Id. "Finally, courts 'consider whether the property in question is part of a class of property which by history or tradition has been open and used for expressive activity.'" Id. "The fact that members of the public are permitted freely to visit a forum…does not abrogate its nonpublic status if the visitors are not permitted to express themselves freely in that forum." Id., at *20 (quoting Make The Rd. by Walking, Inc. v. Turner, 378 F.3d 133, 144 (2d Cir. 2004)). "Courts 'will not find that a public forum has been created in the face of clear evidence of a contrary intent,' nor will courts 'infer that the government intended to create a public forum when the nature of the property is inconsistent with expressive activity.'" Id., at *22 (quoting Cornelius, supra, at 803).

"The first category of public property — 'traditional' public fora — are places such as streets and parks which have 'immemorially been held in trust for the use of the public, and time out of mind, have been used for purposes of assembly, communicating between citizens, and discussing public questions.'" Id., at *17 (quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983)). The second category, a "designated public forum," is one in which the government "intentionally open[s] a nontraditional public forum for public discourse[.]" Id., at *18 (quoting Ark. Educ. Television Comm'n v. Forbes 523 U.S. 666, 677 (1998). The third category, a "limited public forum," exists "where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of

certain subjects." Id. (citing Hotel Emps. & Rests. Emps. Union, Loc. 100 of New York, N.Y. & Vicinity, AFL CIO v. City of N.Y. Dep't of Parks & Recreation, 311 F.3d 534, 545 (2d Cir. 2002)).  The fourth category, a "nonpublic" forum, "is public property that the government has not opened for expressive activity by members of the public." Id., at *19 (citing Hotel Emps., 311 F.3d at 546).

Here, as the Court held in Reyes, precinct vestibules are not traditional public fora because they are not historically used for "unrestricted expressive activities" such as assembly, communications between citizens, or discussion of public questions. Id. at *22.  Nor are they designated public fora as dedicated to such expressive activity, as "[t]here is no evidence that the government intended to open up police precinct lobbies for expressive activities, like peaceful protesting and leafleting, beyond being open to members of the public seeking assistance from the police." Id.  Instead, these lobbies are best characterized as nonpublic fora, akin to "waiting rooms at a city agency." Id.; see Make the Rd. by Walking, supra, at 145 ("Job Center waiting rooms must be categorized as nonpublic forums.").  At most, as the Court in Reyes held, police precinct vestibules are limited public fora dedicated to interactions between civilians and police on matters of public safety, such as reporting crimes, filing complaints, and obtaining information from law enforcement. See Reyes, at *20-*21.

Regardless of whether precinct lobbies or vestibules are classified as limited public fora or nonpublic fora, the constitutional test, at a minimum, is the same: the Facilities Policy should be upheld if it is reasonable and viewpoint neutral. See id. at *24; Make The Rd. by Walking, Inc., supra, at 143 ("Restrictions on speech not within the type of expression allowed in a limited public forum must only be reasonable and viewpoint neutral."); id. ("Restrictions on speech in a nonpublic forum need only be reasonable and viewpoint

neutral."). This Court rightly rejected plaintiff's argument that, "[e]ven if a police precinct were a limited public forum dedicated to discussions of public safety, [p]laintiff's reporting on police activity is squarely within that dedication." Reyes, at *23. As this Court held, "in limited public fora, 'government entities are permitted to restrict the form or manner of speech offered by members of the public, even if such speech addresses the topic or agenda of that forum.'" Reyes, at *23 (quoting Tyler, supra, at 63). Thus, even if "reporting" must be allowed, the use of recording devices need not be. See id. Even more fundamentally, while communications regarding public safety between civilians and law enforcement may fall within the designated purpose of precinct lobbies, see id. at *20-*21, there is no evidence that the City intends these lobbies to be used for civilians to "report[]" on what goes on inside there. Hence, even if precinct lobbies are characterized as limited public fora, recording police activities—even for "reporting" purposes—may be proscribed in any manner that is reasonable and viewpoint neutral. See Hotel Emps., 311 F.3d at 546.

And indeed, the Facilities Policy satisfies both of those requirements. Plaintiff does not dispute that the policy is viewpoint neutral on its face. See Reyes, at *30. And, as this Court has already suggested, it is a reasonable restriction in light of the "privacy, safety and security interests that are implicated by video recordings in police precinct lobbies." Cf. id. at *29-30. "Indeed, there is a legitimate state interest in protecting the safety of citizens." Id. at *25 (citing Hill v. Colorado, 530 U.S. 703, 715 (2000)). "Victims and witnesses of crime may be less willing to go to a precinct to make a report if they know that they may be captured on camera doing so ... especially when that recording may be posted online for anyone to access." Id.

While people and objects in a precinct lobby can already be seen by others, "being able to view or listen to these occurrences is different from being able to record them and post them to the internet for anyone to view." Id. at *28.  Indeed, by seeking to vindicate a supposed right to record the police, plaintiff implicitly acknowledges that recording an event *is* different from seeing it.  The very same aspects of audiovisual recordings that can make them useful to independent journalists like plaintiff can also make them invasive, even dangerous, when they compromise someone's privacy.  "Recording creates a permanent image," and "[a]udio may pick up on conversations or noises that a person's ear cannot hear." Id. NYPD's policy is a reasonable balancing of these concerns, establishing a broad right to record in public spaces like "streets, sidewalks, and parks" while narrowly restricting this right in precinct buildings where privacy and security risks are elevated.

Although the Reyes Court's previous conclusion that the Facilities Policy is reasonable arose in a different procedural posture, the reasonableness of the policy is apparent from the pleadings themselves and may therefore be resolved on a Rule 12(b)(6) motion.  See Tyler, supra, at 63-66 (affirming Rule 12(b)(6) dismissal of First Amendment claim on grounds that challenged regulation was reasonable); Fighting Finest v. Bratton, 898 F.Supp. 192, 197-98 (S.D.N.Y. 1995), aff'd 95 F.3d 224 (2d Cir. 1996) (same); Rodney, supra, 2023 U.S. Dist. LEXIS 223117, at *14, *16 (recommending dismissal under Rule 12(b)(6) of First Amendment claims challenging Facilities Policy).  As such, Plaintiff's First Amendment claim should be dismissed.

## POINT III

## PLAINTIFF'S MUNICIPAL LIABILITY CLAIM IS NOT WELL PLED AND FAILS AS A MATTER OF LAW

Plaintiff's <u>Monell</u> claim should be dismissed as not well pled.  Plaintiff claims that the Court misconstrued her <u>Monell</u> claim as being solely limited to the First Amendment and pertaining to training. Plaintiff seems to now allege that her municipal liability claim here is due to officers causing arrests because "the City defines filming as interference" with government administration.[8]

In order to state a Section 1983 claim against a municipality, a plaintiff must allege that the municipality itself caused the alleged constitutional deprivation. <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989).  To state a claim for municipal liability, a plaintiff must alleged at least one of the following: (1) the existence of a formal policy, officially promulgated or adopted by a municipality, <u>see</u> <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 690 (1978); (2) the official responsible for establishing policy, with respect to the subject matter in question to the specific action, caused the alleged violation of the plaintiff's rights, <u>see</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 482-84 (1986) (plurality opinion); (3) the existence of an unlawful practice by subordinate officials so permanent and well settled to constitute "custom or usage," with proof that this practice was so manifest as to imply the acquiescence of policy-making officials, <u>see</u> <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127-30 (1985) (plurality opinion), <u>Sorlucco v. New York City Police Dep't</u>, 971 F.2d 864, 871 (2d Cir. 1992); or (4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the

---

[8] Plaintiff apparently concedes the insufficiency of her <u>Monell</u> pleading, recognizing that the Court may have had a "misconception about what was pled" and recognizing that the pleading could not stand by itself as Plaintiff apparently needed oral argument "to clear up" what claims Plaintiff was purporting to assert.  This is a clear moving target that Plaintiff has no intention of setting down, and for which the Court should not give deference for claims in the Second Amended Complaint which Plaintiff acknowledges that the Court itself apparently could not even understand.

municipality's employee's interact, see City of Canton, at 388 (1989); Jenkins v. City of New York, 478 F.3d 76, 94 (2d Cir. 2007).

Here, even to the extent plaintiff purports to now assert her claim under the First Amendment as well as under false arrest and excessive force theories, plaintiff's arguments fail. Plaintiff solely asserts conclusory allegations in the Second Amended Complaint and argues one incident supports the Monell claim.   One incident cannot support a Monell claim. See, e.g., Smith v. NYC Dep't of Corr., No. 18-CV-7018 (AT) (OTW), 2019 WL 2473524, at *5 (S.D.N.Y. June 13, 2019), report and recommendation adopted sub nom. Smith v. Warden of N. Infirmary Command, No. 18-CV-7018 (AT) (OTW), 2019 WL 2866729 (S.D.N.Y. July 3, 2019) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.") (quoting DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998)).   As such Plaintiff's Monell claim on these bases are not well pled and thus fails.

Plaintiff's First Amendment Monell claim is similarly poorly pled. Where there is a right to film government officials engaged in their duties in a public place, including police officers, that right, "is not without limitations." See Turner v. Driver, 848 F.3d 678, 689-690 (5th Cir. 2017) (citing Gilk v. Cunniffe, 655 F.3d 78, 84 (1st Cir. 2011)).   The right to record the police on public property exists subject only to reasonable time, place, and manner restrictions, which must be narrowly tailored to serve a significant governmental interest.   Id. at 688-90; Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000).  As discussed supra Section II, while there is no dispute that plaintiff has plausibly alleged that the Facilities Policy is an "official policy or custom," plaintiff's § 1983 claims nevertheless fail because the policy does not violate the Constitution. See Aquino v. City of New York, 16 Civ. 1577 (GHW), 2017 U.S.

Dist. LEXIS 10436, at *8 (S.D.N.Y. Jan. 25, 2017) (to hold the City of New York liable under 42 U.S.C. § 1983 for an alleged constitutional violation, plaintiff must plead: "(1) an official policy or custom that (2) cause[d] [plaintiff] to be subjected to (3) a denial of a constitutional right."). Accordingly, plaintiff's municipal liability claim against defendant City of New York under the First Amendment should be dismissed.

Plaintiff's second basis for a Monell claim is an alleged lack of supervision, specifically a failure to select, train, supervise, investigate, promote, and discipline police officers. Here plaintiff has only pled a single instance of unconstitutional conduct, detailing her own alleged incident. Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). One occurrence is a far cry from creating a  or "custom," or any repeated failure to train, or supervise. Id.

Moreover, mere allegations, without evidence, will not satisfy the high burden of proof required in municipal liability claims. See Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir.1993) ("The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.") overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993). Likewise, "…the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." Id. Accordingly, plaintiff's municipal liability claim against defendant City of New York for the alleged lack of training should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons and those set forth in Defendants' Motion to Dismiss, the Court should dismiss plaintiff's claims under Section 1983 of false arrest, denial of right to a fair trial, First Amendment retaliation, and municipal liability claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Date:        New York, New York
             February 9, 2024

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the
  City of New York
*Attorney for Defendants*
New York, New York 10007
(212) 356-3539
jschemit@law.nyc.gov

By:        _____/s/_____

             John Schemitsch
             *Senior Counsel*

cc:   **BY ECF**
        ALL COUNSEL OF RECORD