| Case Name | DRI Set and Number | Description of each DRI | Defendants' Position | Plaintiff's Position |
|---|---|---|---|---|
| Rodney, v. City of New York, et al., 22-cv-1445 | Plaintiff's DR No. 25 | Produce all documents concerning each NYPD Internal Affairs Bureau ("IAB") complaint or investigation concerning Plaintiff related to the Incident. | Defendants have produced the IAB file pertaining to this incident. | Defendants' position fails to explain how Mr. Schemitsch (on July 13, 2023 and January 6, 2023) and Mr. Musso (on October 27, 2023) both falsely stated that there was no IAB investigation, beyond saying their client misled them.  ECF No. 178 at 3.  Plaintiff will discuss this issue in her monthly status letter today, but generally put, "counsel's representation that 'the [IAB files] were produced within a [short time] of counsels' learning of their existence,' strongly suggests that [City officials] failed to disclose the existence of these [] files even to his own attorneys."  Jenkins v Woody, 2017 US Dist LEXIS 9581, at *48-49 (ED Va Jan. 21, 2017) (awarding monetary sanctions for similar conduct to that here, next to sanctions for more severe misconduct)<br><br>With that said, assuming there are not still more documents Defendants are silently withholding, beyond the issue of Defendants' three false statements there was no IAB investigation, there is no remaining issue here. |
| | Plaintiff's DR No. 26 | Produce all documents concerning any other complaint received, or investigation or prosecution, whether actual or potential, concerning Plaintiff or the Incident undertaken by the City of New York or any of its agencies, including, but not limited to, all such documents related to any Individual Defendant. | Defendants have produced the IAB and CCRB files pertaining to this incident. Defendants are not aware of any other investigations into this incident or responsive documents. | Defendants' representation here appears inconsistent with their representation in the last joint letter that "Defendants' counsel has requested documents, but has not received them yet" (ECF No. 178 at 3) since at that time all of the IAB and CCRB files had been produced.  Given that a similar disconnect led Defendants to discover that they'd been incorrectly stating that there was no IAB investigation for a year, this shift requires a closer look.<br><br>Plaintiff asks the Court to direct Defendants to explain in an affidavit what documents they were saying they had requested but not received in the last letter, so the parties can figure out what the disconnect is here. |
| | Plaintiff's DR No. 28 | Produce each Individual Defendant's — including the Doe Defendants' — NYPD Academy transcript. | Defendants have produced the Academy transcripts for the individually named defendants. | Plaintiff received this production at the end of the day yesterday and has not had a chance to review it. Assuming there are not still more documents Defendants are silently withholding, there is no remaining issue here. |

| | | | | |
|---|---|---|---|---|
| | Plaintiff's DR No. 32 | Produce each Individual Defendant's — including the Doe Defendants' — current CCRB history and all underlying CCRB documents, including communications and documents reflecting the ultimate disposition of each IAB complaint or investigation. | Defendants have produced undreacted CCRB resumes for the individually named defendants. Plaintiff now seeks the full CCRB files. Defendants agree to produce the closing reports limited to similar incidents or incidents involving dishonesty. Defendants otherwise object as this request is not limited in scope, having no bearing on any of the claims or defenses in this amtter, and is overly burdensome in that it seeks records pertaining to unrelated incidents which do not involve the plaintiff, implicate privacy concerns of nonparties, and pertain to a number of incidents which were not substantiated. | Defendants' claim that "Plaintiff **now** seeks full CCRB files" (emphasis added) is false: The request always asked for "all underlying CCRB documents." It is Defendants who are "now" doing something different: Defendants repeatedly "state[d] they are not withholding documents on the basis of" their objections (putting aside the impermissible scope limitation) in their two most recent formal document responses. *See* ECF No. 117-2 at 47; Oct. 27, 2023 Responses at 49 (same).<br><br>On the merits of the objections, Defendants' sudden shift to refusing to produce documents is impermissible: Any objections to producing the "underlying CCRB documents" were waived long ago. Likewise, while Defendants already once seemingly withdraw their misguided "not substantiated" objections (see ECF No. 179; see also, ECF No. 173 at 2-3 (collecting cases that "emphatically reject[s] defendants' contention that 'unsubstantiated' complaints should, by virtue of that status, not be ordered produced")), they are now asserting those objections again. Finally, because Defendants produced documents after a motion, though they'd claimed an impasse before -- and since the limitation to five years and substantiated complaints that Defendants said they would never remove is not substantially justified (every court rejects it) -- the fees the court "must" award are outstanding under Rule 37. |
| | Plaintiff's DR No. 34 | Produce each Individual Defendant's — including the Doe Defendants — complete NYPD personnel file. | Defendants have produced performance evaluations for the indivudally named defendants and are withholding documents solely of a personal nature, such as change of address and marital status documentation. | Defendants' use of "such as" remains problematic. Rule 34 requires a party to "state whether any responsive materials are being withheld," and any "objection to part of a request must specify the part." Fed. R. Civ. P. 34(b)(2)(C). While the "such as" seems reasonable, particularly given the other issues detailed above (such as with the IAB documents), Plaintiff asks that the Court just have Defendants specify what it is they are actually withholding (by category is fine). |

| | | | | |
|---|---|---|---|---|
| | Plaintiff's DR No. 37 | Produce any notices of claim, 50-h transcripts and exhibits, pleadings, discovery requests and responses, deposition transcripts and exhibits, settlement agreements, and judgments from each civil lawsuit against each Individual Defendant — including each Doe Defendant — identified in response to Interrogatory No. 12 above. | Defendants have produced a list of civil lawsuits that the individually named defendants have been named a party to. Notices of Claim, 50-H transcripts, and exhibits, are unduly burdensome to produce as they cannot be searched for by officer and must be searched for on a specific case by case basis. Moreover, these documents implicate privacy concerns of non-parties, and in the case of 50-H transcripts, are transcripts of testimony given by claimants, and not defendant officers. | Defendants' description of the burden is inadequate and at least as of now, hard to find plausible (I have, in more than one context, found out systems were text searchable after the City's attorneys said otherwise when a court has ordered a meet and confer).<br><br>The specific documents — 50-h transcripts and notices of claim — are virtually always stored as text-searchable PDFs. And as we discussed on the record at the last appearance, at least Plaintiff's counsel's interactions with the Comptroller's office have suggested this search is not quite as difficult as Defendants are suggesting. For this, we would suggest the Court direct a meet and confer with someone knowledgeable about the storage of these documents from the City present.<br><br>Relatedly, for transcripts from cases in suit, if those are not on the public docket, Plaintiff has no way to access them. Plaintiff is willing to spell out exactly what depositions and related documents are publicly available, but intends to specify to Defendants cases where they appear to be missing. |

| | | | | |
|---|---|---|---|---|
| | Plaintiff's DR No. 39 | whether each Individual Defendant — including each Doe Defendant — received training, at the NYPD Academy or afterward, including, but not limited to, any Strategic Response Group ("SRG") and/or Disorder Control Unit ("DCU") training, related to the following topics: a. The First Amendment, including as it relates to the right to record police; b. The No Recording Policy; c. The City Right to Record Act; d. The State Right to Record Act; e. Trespassing; f. The nature of stationhouses and the promise to New Yorkers that stationhouses were public; g. Dispersal orders; h. The need to give dispersal orders and a meaningful opportunity to comply with them before making certain arrests; i. Use of force, the force continuum, and de-escalation; j. Use of force reporting; k. NYPD body-worn camera use, including the circumstances under which body-worn cameras are meant to be activated; l. Probable cause to arrest or prosecute a person for a perceived violation of the No Recording Policy; m. Arrest | Defendants have produced training transcripts for the individually named defendants. | Plaintiff received this production at the end of the day yesterday and has not had a chance to review it. Assuming there are not still more documents Defendants are silently withholding, there is no remaining issue here. |
| | Plaintiff's DR No. 40 | Produce all documents reflecting the substance of the training each Individual Defendant — including each Doe Defendant — received, if any, whether at the NYPD Academy or afterward, whomever and wherever from, including, but not limited to, any command-level, in-service, executive level, or other training, related to the | Defendants have produced training transcripts for the individually named defendants. | Plaintiff received this production at the end of the day yesterday and has not had a chance to review it. Assuming there are not still more documents Defendants are silently withholding, there is no remaining issue here. |

| | | | | |
|---|---|---|---|---|
| | Plaintiff's DR No. 66 | If Defendants intend to assert the O'Neill Remarks are no longer an accurate reflection of City and NYPD policy concerning the status of a station house, produce all documents that in any way show that the O'Neill Remarks are no longer the City's and the NYPD's policy.1 Defendants need not produce documents in response to this request or otherwise object, if they state, in sum and substance, "The O'Neill Remarks remain an accurate reflection of the City's current policies concerning station houses." Following such a statement, Defendants may state, "Plaintiff has withdrawn the request in light of the preceding statement," and interpose no further response. | Defendants object as this request is overly broad, ambiguous, and vague. Moreover, this seeks policy discovery under Monell v. Dep't. of Soc. Svcs., 436 U.S. 658 (1978), which should be stayed, as detailed in defendants' motion for a protective order at ECF No. 165. | As explained on the record at the conference, this request has nothing at all to do with any *Monell* claim. No claim challenges the policy of open stationhouses reflected in the O'Neill Remarks, and these documents have nothing to do with the conduct then-Commissioner O'Neill engaged in that Plaintiff alleges gives rise to personal liability. At the risk of stating the obvious, as the Commissioner, he handled quite a few things. The O'Neill Remarks were given July 18, 2018 and other times around that date. ECF No. 113-10. The No Recording policy challenged in this case did not go into effect until a month later, around August 18, 2018. Simply put, no source -- NYPD or otherwise -- has ever described the O'Neill Remarks and the No Recording Policy as connected. It also seems very likely there are no responsive documents to this request, so the burden of simply saying so is minimal. Thus, since Defendants' only objection is to *Monell* and policy discovery (on the RTRA claims), that objection does not address -- much less provide a basis to resist -- this request. |