

**JOHN SCHEMITSCH**
*Senior Counsel*
Phone: (212) 356-3539
Fax: (212) 356-3509
jschemit@law.nyc.gov

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

**THE CITY OF NEW YORK**
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

April 9, 2024

<u>**VIA ECF**</u>
Honorable Ona T. Wang
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  <u>Patricia Rodney v. City of New York, et al.</u>, 22-cv-1445 (LAK)

Your Honor:

I am a Senior Counsel in the office of Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, for defendants. The parties write jointly to provide an agenda for the status conference on April 11, 2024:

I.  Outstanding Discovery Requests (<u>See</u> Dkt. Nos. 184, 184-1, 192, and 194)

Defendants' Position: Defendants have produced responsive documents and information following our last conference. (<u>See</u> Dkt. Nos 184). Defendants note that outstanding discovery requests remain with regard to plaintiff's request for prior CCRB disciplinary records and outstanding electronically stored information. With respect to plaintiff's request for prior CCRB disciplinary records, defendants produced to plaintiff CCRB indices of complaints, and plaintiff moved to compel production of certain redacted portions of CCRB indices of complaints. (<u>See</u> Dkt. No. 173). Plaintiff did not raise at that time or move to compel production of the underlying CCRB documents. Defendants' provided a response to plaintiff's motion to compel, (<u>See</u> Dkt. No. 179), and reproduced those CCRB indices without redaction, as these redacted incidents were publicly available. As to the underlying documents plaintiff seeks, defendants respectfully refer the Court to their status letter of March 29, 2024 (Dkt. No. 194), and note that defendants have proposed producing the closing reports limited to similar incidents or incidents involving dishonesty. Plaintiff has previously conceded that plaintiff "is fine limiting the collection to similar incidents or incidents involving dishonesty[.]" (Dkt. No. 173 at p.1). Defendants anticipate producing these closing reports in advance of the conference on April 11, 2024.

Plaintiff's Position:

As set out in the chart at Dkt. No. 184-1, the following requests remain to be resolved, for the reasons noted in that chart.

    a. Doc. Req. No. 26 ("documents concerning any other complaint received, or investigation or prosecution, whether actual or potential, concerning Plaintiff or the Incident undertaken by the City of New York or any of its agencies…");

    b. Doc. Req. No. 32 ("each Individual Defendant's — including the Doe Defendants' — current CCRB history and all underlying CCRB documents");

    c. Doc. Req. No. 34 ("Produce each Individual Defendant's — including the Doe Defendants — complete NYPD personnel file"); and

    d. Doc. Req. No. 37 ("any notices of claim, 50-h transcripts and exhibits, pleadings, discovery requests and responses, deposition transcripts and exhibits, settlement agreements, and judgments from each civil lawsuit against each Individual Defendant");

Finally, as noted in the chart, Defendants' "propos[al]" to limit CCRB disciplinary records for individual defendants above attempts to insert brand new objections and withholdings after multiple motions, including motions over Defendants' failure to state what it is they are withholding. Following that motion — and an agreement to "amend their discovery responses to state grounds for objections with specificity, including the reasons, whether they are withholding documents, and based on which objections, and stating the basis for that objection" (ECF No. 84) — Defendants, in no uncertain terms, "state[d] they are not withholding documents on the basis of" (ECF No. 117-2 at 47; Oct. 27, 2023 Responses at 49 (same)) their objections to the request seeking "each Individual Defendant's — including the Doe Defendants' — current CCRB history *and all underlying CCRB documents*" Doc. Req. 32 (emphasis added). Defendants already said they were "not withholding documents" (ECF No. 117-2 at 47); they do not get to change that now.[1],[2]

---

[1] This seemingly frequent practice of silent withholding responsive is troubling, particularly in conjunction with the IAB issue discussed below.

[2] The agreed-to subject matter limitation Defendants note — only collecting the full file for "similar incidents or incidents involving dishonesty" (Dkt. No. 173 at 1) — is irrelevant to the fact that Defendants falsely stated they were not withholding underlying documents: Defendants' attempt to limit production to just closing reports after (they now admit) falsely stating they were "not withholding documents" (ECF No. 117-2 at 47) is not tenable.

II.      Inaccurate IAB Document Responses (ECF Nos. 185, 194, 195 and 178 (at 2-3)).

Defendants' Position:  While it was not defendants' preference to get into a back and forth in this letter regarding proposed agenda items for the April 11, 2024 conference, in light of plaintiff's statements below and letter to the Court, dated April 1, 2024 (Dkt. No. 195), defendants provide the following response.

On or about May 14, 2022, a member of the public, unrelated to the parties, wrote to the NYPD concerning a video he watched on YouTube regarding the incident alleged in this action.  On July 18, 2022, this incident was referred to IAB from the Police Commissioner's office.  Subsequently, on January 3, 2023, an IAB investigation was opened regarding the complaint made.  In preparing responses to plaintiff's discovery requests in December 2022, the undersigned was informed that there was no IAB investigation into this incident, which was accurate, as the investigation was not opened until January 3, 2023.  As such, the information provided by NYPD to the undersigned was not false at the time it was provided.  Based on that understanding, the undersigned stated, on January 6, 2023, in response to plaintiff's discovery requests that "upon information and belief, there is no IAB investigation into this incident[,]" which unbeknownst to the undersigned was an inadvertently inaccurate statement at the time it was conveyed. However, based on the undersigned's experience, since it is entirely unexpected for IAB investigations to open years after an incident, the undersigned had no reason to believe that it was necessary to confirm the accuracy of this response. As such, this information was relayed to plaintiff's counsel in supplemental and amended discovery responses.

When the undersigned was reassigned to this case in January 2024, in accordance with ongoing discovery obligations, the undersigned double checked to confirm the continued accuracy of prior discovery responses, including this one. Only then did the undersigned learn that an IAB investigation had been started on January 3, 2023, prior to defendants' January 6, 2023 statement that there was no IAB investigation. Immediately upon learning that the prior response was not accurate, the undersigned requested the corresponding documentation to that investigation and promptly provided that information to plaintiff upon receipt. As such, plaintiff's attempt, *infra* at n. 5, to align this case with the facts of *Jenkins v Woody*, 2017 US Dist LEXIS 9581, at *48-49 (ED Va Jan. 21, 2017), is simply misplaced. There was no misconduct of any kind at issue here, rather following plaintiff's accusation that the NYPD withheld information regarding the IAB investigation, the undersigned further investigated and only this morning learned that the investigation was opened on January 3, 2024, unfortunate timing that led to defendants' prior inaccurate response. Despite plaintiff's claims of foul play, the facts are simply as stated.

Plaintiff's Position:   In their multiple previous responses on this issue, Defendants' counsel has admitted the client gave false information to counsel about the IAB investigation, and counsel acted in "reliance on that [false] representation."  ECF No. 194 at 1 n. 1.  This version of the position matches exactly those facts that warranted sanctions in *Jenkins v Woody*, 2017 US Dist LEXIS 9581, at *48-49 (ED Va Jan. 21, 2017).[3]

---

[3] *Compare, e.g.,* ECF No. 194 at 1 n. 1 ("the undersigned was informed that there was no IAB investigation," and "[i]In reliance on that representation … this information was relayed to

But then Defendants submitted a *new* position in the process of drafting this letter at 6:15 p.m. the day of the deadline.[4]  Below is Plaintiffs' last-minute attempt — not having availability all night to draft on the day of a deadline — to address this new position.

For the first time, Defendants claim an IAB "investigation was not opened until January 3, 2023," so their claim no documents responsive to the request seeking "all documents concerning each NYPD Internal Affairs Bureau ('IAB') complaint or investigation concerning Plaintiff [and] related to the Incident" existed was not untrue.  But in the same breath, they admit at least one document concerning that investigation existed:  The "July 18, 2022[ referral] to IAB from the Police Commissioner's office."  That document is as follows (plus the complaint itself):

---

plaintiff's counsel in supplemental and amended discovery responses" and noting "[t]he undersigned then promptly provided that information to plaintiff" as soon as he learned of it); *with Jenkins* at *48-49 ("counsel's representation that 'the audio recordings of the investigative interviews were produced within a week of counsels' learning of their existence,' strongly suggests that Sheriff Woody failed to disclose the existence of these audio files even to his own attorneys," warranting sanctions, even when the misconduct "did not prejudice" plaintiff).

[4] By way of background, the same day (April 2) the Court directed the parties to file this joint letter, Plaintiff asked if Defendants could take the lead on this letter, since Plaintiff has drafted essential all previous substantive joint letters. *See generally, e.g.*, ECF No. 129. In that same communication Plaintiff asked if Defendants could circulate a draft by the end of the night on April 4. Defendants responded on April 5, when they said they would send around a draft on April 8. That draft did not come on April 8.

Instead, on April 9 (that is, today), Plaintiff followed up again. It was not until the afternoon today that Defendants first sent a draft. And after multiple rounds, Defendants took a brand new position at 6:15 p.m. It is already extremely difficult to productively draft joint letters when regardless of requests or even their own commitments, Defendants do not send anything until late in the day on the day of a deadline for a joint letter. See, e.g., ECF No. 129 (Sept. 28 draft from Plaintiff, no response until 4:55 p.m. the day the joint letter was due).  Defendants unwillingness to pull their share of the laboring oar on joint projects is untenable, and Plaintiffs sincerely are at a loss for how to handle this.



DEF_001242.   Despite this obviously-responsive document having existed for months when Defendants initially produced documents, they secretly withheld it, without any notation — this, they admit, and even in the several-times-revised position above, provide no explanation

With Defendants' new position, either way there is problem.  One of two things is true:

(1) Defendants falsely stated there was no IAB investigation when there was one (that's the *Jenkins* problem);  or

(2) Defendants' statement "that, upon information and belief, there is no IAB investigation into this incident" was non-responsive to the request, and obscured the fact that documents existed.  ECF No. 117-2 at 39-40.

And either way, Defendants concede that there **were** documents that were responsive to the request seeking "all documents concerning each NYPD Internal Affairs Bureau … complaint or investigation concerning Plaintiff related to the Incident."  ECF No. 117-2 at 39-40.

Put simply, at **best** Defendants concede they did not follow the Rules and state they were withholding documents.  But Defendants say, they never gave false information by oh-so-cleverly stating "upon information and belief, there is no IAB investigation into this incident" when the investigation wasn't **technically** open (although the Commissioner, in writing, directed it to be opened months before[5]).  Instead, Plaintiff should have figured out the clever trick they

---

[5] It is at least questionable whether Defendants' new position is even the kind of highly-technically-correct they assert.  That is, it seems likely that, as a matter of law, an investigation

were playing, apparently. If whether an IAB investigation *exists* is not dispositive of whether there are documents "concerning [an IAB] ***complaint***" (ECF No. 117-2 at 39-40 (emphasis added)), then Defendants' formal response is not complete, misleading, and by their own admission fails to comply with the requirement to state whether documents are being withheld — an independent, admitted basis for sanctions.

If allowed to stand, Defendants' use of a hyper-technical non-responsive answer causes no end of chaos throughout the rest of discovery: Are there others of Defendants' responses where they give answers that ***appear*** to say there are no responsive documents, when really they are saying no such thing? Does Plaintiff need to spend months following up on every response of this kind? Sanctions in this context are important to bring the parties back to an equilibrium where they can rely on the other party not playing hide-the-ball with deceptive responses. Without that return, Plaintiff will need to follow up on each and every lexigrapic oddity in the responses: Each one could be hiding a similar cache of highly relevant documents.

So, a sanction is warranted: Defendants admit they falsely either (1) explicitly said or (2) implied heavily and deceptively that no responsive documents existed for Document Request 25. That statement was not true when they said it, not true when they repeated it twice, and it ***only came to light*** because Defendants' response said "upon information and belief," and Plaintiff's counsel thought that was a bit strange and doggedly followed up on what "upon information and belief" could mean for the City's own investigation for ***months***. *See e.g.,* ECF No. 155-1 at 4 ("As noted in the November 1 Email, Defendants state only 'upon information and belief' that no documents exist. As we explained, since these requests seek documents related to City investigations, it is troubling that personal knowledge was apparently unavailable — and highlighted that Defendants had no issue confirming documents did not exist based on personal knowledge in the similar Document Request 27"). Defendants did not discover this on their own; they meekly responded after Plaintiff repeatedly had to explain why "upon information and belief" was not adequate for a response about this City's own documents, and the City needed to say there were no responsive documents based on personal knowledge.[6]

Otherwise, the parties' positions are set out in the documents cited above.

_____

exists once the Commissioner sends it to IAB to investigate "BY DIRECTION OF THE POLICE COMMISSIONER." DEF_001242. The NYPD is a paramilitary organization, and is structured hierarchically with a chain of command. If something is sent "BY DIRECTION OF THE POLICE COMMISSIONER," the inferior officer receiving lacks any discretion to disregard that "DIRECTION." So, Defendants' assertion that the investigation did not exist after the Commissioner ordered it — but only after a lower level officer performed the purely ministerial task of noting that an investigation had been ordered — is likely wrong.

[6] Defendants still have not explained what they meant by "upon information and belief." Given the above, it seems possible the NYPD insisted on the phrase, knowing the investigation had long since been directed open by the Commissioner at the time the response was drafted.

III.     ESI related discovery (See Dkt. Nos. 184, 190, 192, and 194)

Defendants' Position: With respect to outstanding ESI discovery, defendants respectfully refer the Court to their status letter of March 29, 2024 (Dkt. No. 194), Defendants have begun collection of documents and are in the process of reviewing to determine if any of them are responsive.  Defendants anticipate providing a response to plaintiff with regard to e-mail collection and an update as to the collection of text messages for the agreed upon terms by April 12, 2024.

Plaintiff's Position: As set out in Dkt. No. 190, Plaintiff still is waiting to hear from  Defendants beyond their informal representation that they are still "working to confirm with all defendants whether they sent any text messages outside that range," without any further explanation of where that process stands, or whether any Defendants remember communications outside of the time range proposed.[7]

IV.     Mandatory Costs and Fees under Rule 37 related to the Motion at ECF No. 173 a (See Dkt. Nos. 173, 179, 184-1, 185 (at 3-4), 194 (at 2));

The parties' positions are set out in the documents cited above.

V.      Status of depositions

Defendants' Position: Defendants are prepared to proceed with plaintiff's deposition, but the parties have not yet begun scheduling depositions.

Plaintiff's Position:   Defendants have never asked to schedule Plaintiff's deposition.  Plaintiff, as she has repeatedly said, needs to get the basic discovery still outstanding — disciplinary histories for individual Defendants, their communications about the incident, etc. — before starting Defendants' depositions.

VI.     Settlement

Defendants' Position: The parties have exchanged offers of settlement and both written to the Court on its status. Defendants believe it would be beneficial to discuss with the Court the parties' views on settlement and have the Court's guidance.

---

[7] The rest of what is set out in Dkt. No. 190 remains applicable as well (that is, that Plaintiff is still asking for a hit report — "which will impose no burden at all if done at the same time as collection — for the terms Defendants still object to, so that the parties can see if there are even any documents in dispute" and Plaintiff "wants to make clear Defendants still have not provided basic custodian investigation [information], or for that matter, even produced the materials accompanying and response to the Public Advocate's letter, and she intends to move on those issues after reviewing this initial phase of production."

Plaintiff's Position:  Defendants have not responded to Plaintiff's latest move over the course of several months.  At the last conference, the Court noted "I don't think you are there" with regard to discussing settlement.  2024-02-08 Tr. at 41.  Nothing has happened since then, so Plaintiff's position remains unchanged since the last two times she's stated it: "Plaintiff believes (as noted in her monthly status letter for January) 'either Defendants need to show significantly more movement, or a representative from the Comptroller's Office needs to personally attend' before any conference would be productive." Dkt. No. 178 at 8, *quoting* Dkt. No. 174.

If Defendants seriously wanted to settle this case, nothing stops them from making a serious offer on their own.

Thank you for your consideration herein.

Respectfully submitted,
/s/
John Schemitsch
*Senior Counsel*

cc:     **VIA ECF**
        Gideon Oliver, Esq.
        Remy Green, Esq.
        *Attorneys for Plaintiff*